## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ARLEEN KOSAK,                                )
individually and on behalf of all others     )
similarly situated,                          )
               Plaintiff,            )   Case No. 2:22-cv-11850-MFL-EAS
                              )
    vs.                                  )   Hon. Matthew F. Leitman
                              )
NEW YORK MEDIA HOLDINGS, LLC.    )   **ORAL ARGUMENT**
               Defendant.            )   **REQUESTED**
                              )
_____   )

### DEFENDANT NEW YORK MEDIA HOLDINGS, LLC'S
### MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant New York Media Holdings, LLC ("NYMH") respectfully moves this Court to dismiss Plaintiff's Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2) and 12(b)(6) because: (1) this Court does not have personal jurisdiction over NYMH; (2) Plaintiff lacks Article III and statutory standing; (3) Plaintiff's lawsuit is untimely; and (4) the Amended Complaint fails to state a claim.

Pursuant to Local Rule 7.1(a), Defendant's counsel certifies that on January 11, 2023 they communicated in writing and via teleconference with Plaintiff's counsel, explaining the nature of the relief sought in this Motion and seeking concurrence in that relief. Plaintiff's counsel stated that Plaintiff opposes the relief sought in this Motion.

Dated: January 12, 2023            Respectfully submitted,


                                   /s/ *Kristen C. Rodriguez*
                                   DENTONS US LLP
                                   Kristen C. Rodriguez
                                   Emily A. Golding
                                   233 S. Wacker Drive, Suite 5900
                                   Chicago, Illinois 60606-6404
                                   Tel: (312) 876-8000
                                   kristen.rodriguez@dentons.com
                                   emily.golding@dentons.com

                                   Deborah H. Renner
                                   1221 Avenue of the Americas
                                   New York, New York 10020-1089
                                   Tel: (212) 398-5793
                                   deborah.renner@dentons.com

                                   CLARK HILL PLC
                                   Peter B. Kupelian (P31812)
                                   Carol G. Schley (P51301)
                                   151 South Old Woodward Avenue,
                                   Suite 200
                                   Birmingham, Michigan 48009
                                   Tel: (248) 530-6336
                                   pkupelian@clarkhill.com
                                   cschley@clarkhill.com

                                   *Counsel for Defendant*
                                   *New York Media Holdings, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| ARLEEN KOSAK, | ) | |
| individually and on behalf of all others | ) | |
| similarly situated, | ) | |
| Plaintiff, | ) | Case No. 2:22-cv-11850-MFL-EAS |
| | ) | |
| vs. | ) | Hon. Matthew F. Leitman |
| | ) | |
| NEW YORK MEDIA HOLDINGS, LLC. | ) | **ORAL ARGUMENT** |
| Defendant. | ) | **REQUESTED** |
| | ) | |
| _____ | ) | |

## BRIEF IN SUPPORT OF DEFENDANT NEW YORK MEDIA HOLDINGS, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

# TABLE OF CONTENTS

TABLE OF CONTENTS............................................................... ii

TABLE OF AUTHORITIES ........................................................ iii

STATEMENT OF ISSUES PRESENTED........................................ vii

STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITYviiiviii

INTRODUCTION ....................................................................1

STATEMENT OF FACTS ............................................................3

I.      The Michigan PPPA. .........................................................3

II.     NYMH Is Not And Has Never Been The Publisher Of *New York* Magazine, Does Not Conduct Business In Michigan, And Was Served In Delaware. ....5

III.    Plaintiff's Untimely Claims.................................................5

IV.     Plaintiff Makes Conclusory Allegations Of PPPA Violations.......................6

ARGUMENT ..........................................................................7

I.      This Court Lacks Personal Jurisdiction Over NYMH....................................7

II.     Plaintiff Lacks Statutory And Article III Standing To Assert Her Claims. ....9

        A.      Plaintiff Lacks Statutory Standing to Sue NYMH.............................. 10

        B.      Plaintiff Lacks Article III Standing to Sue NYMH. .......................... 11

III.    Plaintiff's Claims Are Untimely, And Her Time To File Was Not Tolled...11

        A.      The COVID-19 Orders are Inapplicable. ........................................... 12

        B.      The Three-Year Limitations Period Applies, Rendering Plaintiff's Claims Time-Barred Even if Tolling were Permitted........................ 16

IV.     Plaintiff's Amended Complaint Is Inadequately Pled.....................................18

CONCLUSION ......................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ABG Prime Group, Inc. v. Mixed Chicks, LLC*,
  No. 17-13257, 2018 WL 7134647 (E.D. Mich. May 16, 2018)...........................1

*Anwar v. Dow Chemical Co.*,
  876 F.3d 841 (6th Cir. 2017) ...............................................................................9

*Arent v. Hatch*,
  349 N.W.2d 536 (Mich. Ct. App. 1984)............................................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................18, 20, 21, 23

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................18, 23

*Bishop v. Lucent Technologies, Inc.*,
  520 F.3d 516 (6th Cir. 2008) ...............................................................18, 19, 21

*Bowles v. Sabree*,
  No. 20-cv-12838, 2022 WL 141666 (E.D. Mich. Jan. 14, 2022)......................14

*Bownes v. Borroughs Corp.*,
  No. 20-cv-964, 2021 WL 1921066 (W.D. Mich. May 13, 2021) ......................14

*Browning v. Buko*,
  No. 163538, 2022 WL 4117478 (Mich. Sept. 9, 2022).....................................16

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)...........................................................................................7, 8

*Cartwright v. Garner*,
  751 F.3d 752 (6th Cir. 2014) ...............................................................................9

*In re Certified Questions from the U.S. District Court for the Western
District of Michigan*,
  958 N.W.2d 1 (Mich. 2020)...............................................................................15

*Coulter-Owens v. Time Inc.*,
   695 Fed. App'x 117 (6th Cir. 2017) .................................................................5

*Dabish v. McMahon*,
   818 F. App'x 423 (6th Cir. 2020) ...................................................................17

*Derderian v. Genesys Health Care Systems*,
   689 N.W.2d 145 (Mich. Ct. App. 2004)..........................................................17

*Dickey v. Hoff*,
   No. 21-0859, 2022 WL 12127101 (Iowa Oct. 21, 2022) .................................15

*Donovan v. FirstCredit, Inc.*,
   983 F.3d 246 (6th Cir. 2020) ...........................................................................14

*Fisher v. Perron*,
   30 F.4th 289 (6th Cir. 2022) ............................................................................23

*Garg v. Macomb County Community Mental Health Services*,
   696 N.W.2d 646 (Mich. 2005)..........................................................................10

*Green v. Lansing Automakers Federal Credit Union*,
   No. 342373, 2019 WL 3812108 (Mich. Ct. App. Aug. 13, 2019) ..............16, 17

*Haddock v. State Farm Fire & Casualty Co.*,
   No. 21-CV-12395, 2022 WL 16625964 (E.D. Mich. Nov. 1, 2022) ................10

*Halaburda v. Bauer Publishing Company, LP*,
   No. 12-CV-12831, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013) ..................10

*Hall v. Farm Journal, Inc.*,
   No. 2:21-cv-11811 (E.D. Mich. April 5, 2022)..................................................17

*Hige v. Turbonetics Holdings, Inc.*,
   662 F. Supp. 2d 821 (E.D. Mich. 2009) .............................................................8

*Homfeld II, L.L.C., v. Comair Holdings, Inc.*,
   53 F. App'x 731 (6th Cir. 2002) .......................................................................11

*Huggett v. Departmentt of Natural Resources*,
   629 N.W.2d 915 (Mich. 2001)..........................................................................10

*Krassick v. Archaeological Institute of America*,
No. No. 2:21-cv-180, 2022 WL 2071730 (W.D. Mich. June 9,
2022) ................................................................................................17

*League of United Latin American Citizens v. Bredesen*,
500 F.3d 523 (6th Cir. 2007) ...............................................18

*Loftus v. Outside Integrated Media, LLC*,
No. 21-cv-11809 (E.D. Mich. Aug. 12, 2021)...................................11

*Loren v. Blue Cross & Blue Shield of Michigan*,
505 F.3d 598 (6th Cir. 2007) ...............................................11

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...............................................................11

*Mackey v. Rising*,
No. 20-cv-13408, 2021 WL 4034226 (E.D. Mich. Sept. 3, 2021) ....................14

*Marks v. Hulstrom*,
No. 294453, 2010 WL 2134303 (Mich. Ct. App. May 27, 2010)......................17

*McCree v. Continental Management, LLC*,
No. 351171, 2021 WL 1050115 (Mich. Ct. App. Mar. 18, 2021)......................18

*Nashel v. The New York Times Company*,
2:22-CV-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022) ..............*passim*

*People v. Tennyson*,
790 N.W.2d 354 (Mich. 2010).........................................................14

*PNC Bank, National Association v. Page*,
186 NE.3d 633 (Ind. Ct. App. 2022) .................................................15

*Pratt v. KSE Sportsman Media, Inc.*,
No.1:21-cv-11404, 2022 WL 469075 (E.D. Mich. Feb. 15, 2022)...................17

*Standard Fire Insurance Co. v. Knowles*,
568 U.S. 588 (2013)...............................................................11

*Theunissen v. Matthews*,
935 F.2d 1454 (6th Cir. 1991) ...........................................9

*Wenkel v. Farm Bureau General Insurance Company of Michigan*,
  No. 358526, 2022 WL 17364773 (Mich. Ct. App. Dec. 1, 2022).....................13

**Statutes**

Michigan Emergency Management Act of 1976.....................................................16

M.C.L. § 445.1711 (1989), *et seq.*...................................................................*passim*

M.C.L. § 600.5805(2) ...........................................................................16, 17, 18

M.C.L. § 600.5813............................................................................................17

MCL § 600.711 .................................................................................................8

MCL § 600.715 .................................................................................................8

**Other Authorities**

Michigan Executive Order No. 2020-4.................................................................13

Michigan Executive Order No. 2020-58...............................................................12

Michigan Executive Order No. 2020-122........................................................12, 13

Michigan Supreme Court, Administrative Order No. 2020-3 .................................12

Michigan Supreme Court, Administrative Order No. 2020-8 .................................12

Michigan Supreme Court, Administrative Order No. 2020-18 ..........................12, 13

Federal Rule of Civil Procedure 8 .....................................................................18

Federal Rule of Civil Procedure 12(b)...........................................................1, 9, 23

## STATEMENT OF ISSUES PRESENTED

1. Whether this Court has personal jurisdiction over Defendant, which is a holding company that has not conducted business in Michigan and which was served outside of Michigan?

   Defendant's Answer: NO.

2. Whether Plaintiff has Article III and statutory standing to sue Defendant, a holding company with which she did not transact business and by which she could not have been harmed?

   Defendant's Answer: NO.

3. Whether Plaintiff's claims under the Michigan Preservation of Personal Privacy Act ("PPPA") are facially untimely?

   Defendant's Answer: YES.

4. Whether Plaintiff's deadline for filing her PPPA claims was tolled pursuant to Orders issued by Governor Gretchen Whitmer and the Michigan Supreme Court extending filing deadlines in 2020 due to Covid?

   Defendant's Answer: NO.

5. Whether Plaintiff's claims under the PPPA should be dismissed because Plaintiff fails to plausibly allege that Defendant unlawfully disclosed her Private Reading Information in violation of the PPPA in 2016?

   Defendant's Answer: YES.

**STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY**

The controlling authority for this Motion includes:

1. Federal Rule of Civil Procedure 12(b)(1).

2. Federal Rule of Civil Procedure 12(b)(2).

3. Federal Rule of Civil Procedure 12(b)(6).

4. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

5. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

6. Michigan Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-445.1715 (1989) (amended eff. July 31, 2016).

7. *Wenkel v. Farm Bureau General Insurance Company of Michigan*, No. 358526, 2022 WL 17364773 (Mich. Ct. App. Dec. 1, 2022).

8. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

9. *Nashel v. The New York Times Company*, No. 2:22-cv-10633-SJM-DRG, 2022 WL 6775657 (E.D. Mich. October 11, 2022).

10. *Dabish v. McMahon*, 818 F. App'x 423 (6th Cir. 2020).

## INTRODUCTION

Plaintiff Arleen Kosak alleges that Defendant New York Media Holdings, LLC ("NYMH" of "Defendant") wrongfully disclosed her "Private Reading Information" during some undefined period in 2016, in violation of the pre-July 31, 2016 version of Michigan's Preservation of Personal Privacy Act, M.C.L. § 445.1711, *et seq.* (the "PPPA"). This action should be dismissed for four independent reasons:

*First*, Plaintiff lacks personal jurisdiction over NYMH.[1] As its very name implies, NYMH is only a holding company. (**Exhibit 1**, Declaration of Ellis Jones, dated January 11, 2023 (the "Jones Dec."), ¶ 2.) It is not and never has been the publisher of *New York* magazine, contrary to the allegations in the Amended Complaint. (*Id.* ¶ 5.) As a mere holding company, NYMH cannot conduct and has not conducted business in Michigan. (*See id.* ¶ 6.) And NYMH was served outside of Michigan. (*Id.* ¶ 7.) For these reasons, this Court lacks personal jurisdiction over NYMH.

---

[1] By making other arguments for dismissal of this action, NYMH does not waive its right to assert lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). *See ABG Prime Grp., Inc. v. Mixed Chicks, LLC*, No. 17-13257, 2018 WL 7134647, at *4 (E.D. Mich. May 16, 2018) (a party only waives personal jurisdiction when failing to raise the issue in a responsive pleading or dispositive motion); *see also* ECF No. 12, PageID.1076 (stipulation entered into by the parties on the date NYMH appeared stated that "[t]he Parties do not waive any  rights or defenses by entering into this Stipulation.")

*Second*, Plaintiff lacks statutory and Article III standing to sue NYMH. NYMH is not a publisher *(see id.* ¶ 5)—meaning it is not "engaged in the business of selling at retail, renting, or lending books or other written materials" under the PPPA—which it must be for the statute to apply. *See* M.C.L. § 445.1712 (1989). More fundamentally, with no relationship between Plaintiff and NYMH, NYMH could not have harmed Plaintiff. She thus lacks Article III standing to sue NYMH.

*Third*, even if Plaintiff could establish personal jurisdiction and standing to sue NYMH, Plaintiff's original complaint was filed too late. Plaintiff alleges that a six-year limitation period applies to PPPA claims. Under Plaintiff's claimed limitations period, the last day to file a claim for a violation of the pre-July 31, 2016 version of the PPPA was July 30, 2022. (*See* ECF No. 6, Amended Complaint ("AC") ¶ 1 n. 2.) But Plaintiff filed her original complaint on August 10, 2022—11 days too late. (*See* ECF No. 1, Complaint.) Plaintiff will no doubt argue that she should be entitled to "COVID tolling." That argument is predicated on certain of Governor Gretchen Whitmer's Executive Orders and the Michigan Supreme Court's Administrative Orders implemented in response to the COVID-19 pandemic (the "COVID-19 Orders"). However, the COVID-19 Orders only tolled filing **deadlines** in 2020 that fell within the declared state of emergency. Plaintiff's deadline to file— by July 30, 2022—did not fall within the requisite state of emergency period in 2020.

2

*Finally*, even if Plaintiff were to overcome all of the threshold issues outlined above, which she cannot, the Amended Complaint should be dismissed because it is inadequately pled, as it consists of nothing more than vague and conclusory allegations, pled for the most part on information and belief, that fail to state a claim for a violation of the PPPA.  Subject to certain exceptions, the PPPA prohibits disclosures of "information concerning the purchase" of written materials by a customer "that indicates the identity of the customer." M.C.L. § 445.1712 (1989).  But the Amended Complaint contains no specific allegations of the actual disclosure of any customer's information, let alone Plaintiff's information.  Significantly, in a substantially similar case in this District, Judge Stephen J. Murphy, III recently dismissed a PPPA action with prejudice for failing to adequately plead disclosure, even when the allegations supporting disclosure were more detailed than here. *See Nashel v. The New York Times Company*, 2:22-cv-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022).

NYMH respectfully requests that this Court dismiss this action with prejudice.

## STATEMENT OF FACTS

### I.   The Michigan PPPA.

The PPPA was passed in the wake of a federal statute, the "Video Privacy Protection Act," which was enacted following the disclosure of Supreme Court nominee Judge Robert Bork's video rental choices in a newspaper.  (*See* AC, ECF 6, Ex. B at PageID.567.)  However, Michigan's law went further than the federal

Act.  In addition to video rental records, its scope includes "books or other written materials," proscribing certain "disclosures" of records or information "concerning the purchase, lease, rental, or borrowing of those materials."  M.C.L. § 445.1712 (1989).  But the PPPA applies only to persons or entities who are "engaged in the business of selling at retail, renting, or lending books or other written materials." M.C.L. § 445.1712(1).

The Michigan statute sat on the books largely forgotten for nearly 30 years until plaintiffs' counsel started bringing a series of class actions against magazine publishers over "direct marketing" mailing practices.  The allure of class actions under the PPPA was a statutory damages provision that permitted an action for actual damages *or* $5,000 in statutory damages, whichever was greater.  M.C.L. § 445.1715 (1989).  Not surprisingly, the prior PPPA class action suits (filed against publishers by the same plaintiffs' lawyers here, in or around 2013-2015) elected to pursue the statutory damages of $5,000 per subscriber in lieu of seeking actual damages, threatening *in terrorem* class action damages.

In view of these potentially crippling class action lawsuits, the Michigan Legislature amended the PPPA in 2016 (the "2016 Amendment").[2]  Among other things, the 2016 Amendment expressly removed the provision for $5,000 statutory

---

[2] S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (codified at M.C.L. § 445.1711, *et seq.* (2016)).

damages and, in its place, provided only for actual damages. *See* MCL § 445.1715(2) (2016). The 2016 Amendment took effect July 31, 2016. Thus, July 30, 2016, was the last day the $5,000 statutory damages provision was in place.[3]

## II.    NYMH Is Not And Has Never Been The Publisher Of *New York* Magazine, Does Not Conduct Business In Michigan, And Was Served In Delaware.

NYMH is a holding company formed in 2003. (Jones Dec. ¶ 2.) It is not and has never been the publisher of *New York* magazine. (*Id.* ¶ 5.) It has merely been the holding company for the publisher. (*See id.* ¶¶ 2-5.)

NYMH does not maintain any office in Michigan, is not incorporated in Michigan and has never transacted business in Michigan. (*Id.* ¶ 6.) NYMH does not produce any goods or provide any services. (*Id.* ¶ 3.) NYMH's status as a holding company is not only implicit in its name, but publicly available information shows that NYMH is a holding company that did not and currently does not produce or sell anything, including *New York* magazine—instead, it owns interests in various media companies. *See* https://www.bloomberg.com /profile/company/279868Z:US.

## III.   Plaintiff's Untimely Claims.

Plaintiff filed her original Complaint on August 10, 2022—11 days after the expiration of the six-year limitations period that she contends is applicable. (*See*

---

[3] The Sixth Circuit ruled that the 2016 Amendment applies only prospectively. *Coulter-Owens v. Time Inc.*, 695 Fed. App'x 117, 121 (6th Cir. 2017).

ECF 1, Complaint.)  Her original complaint named New York Media Holdings *Corp*. as the Defendant. (*See id.* at PageID.1.)  There is no record of service of the original complaint on the docket.  Instead, Plaintiff amended her complaint nearly three months later, on November 2, 2022, and then served it on New York Media Holdings, *LLC's* statutory agent in Delaware via email on November 4, 2022.[4] (ECF 9, Service of Summons, at PageID.1070; Jones Dec. ¶ 7.)

## IV.   Plaintiff Makes Conclusory Allegations Of PPPA Violations.

In her Amended Complaint, Plaintiff's allegations are made on "information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge."  (AC, Preamble.)  Plaintiff broadly and baldly claims NYMH "rented, exchanged, and/or otherwise disclosed detailed information" about its customers' "Private Reading Information,"—*i.e.*, names, home addresses, and the "titles of publications subscribed to"—to third parties without consent or notice, and that such alleged disclosures violated the PPPA. (*See e.g.*, *id.* ¶¶ 1, 5.)

Plaintiff offers no facts whatsoever to support her sweeping allegations that Defendant disclosed identifying information about any customer—much less the Plaintiff—at any time, let alone some undefined time in 2016.  Although Plaintiff

---

[4] Plaintiff alleges that her Amended Complaint relates back to the filing of her original Complaint under Rule 15.  (AC, Caption, n.1). However, she ignores the fact that her original Complaint was filed too late.

alleges she has "[d]ocumented evidence" that Defendant "rented, exchanged, and/or otherwise disclosed" her Private Reading Information prior to July 31, 2016 (*id.* ¶ 1, 2), that "evidence" is a recent third-party data card from NextMark, Inc. ("NextMark") dated April 28, 2022, which says nothing about 2016.  (*Id.* ¶ 2, Ex. A.)  Tellingly, there is no allegation tying anything on the third-party data card to any disclosure by NYMH.

Plaintiff seeks to represent a class of all Michigan residents who allegedly had their PRI disclosed to third parties by Defendant without their consent during an undefined "relevant time period" in 2016.  (*Id.* ¶ 49.)  She explicitly brings her claims under the prior version of the PPPA in order to seek $5,000 in statutory damages per subscriber.  (*See id.* ¶ 1, n.2.)

## ARGUMENT

## I.    This Court Lacks Personal Jurisdiction Over NYMH.

Where, as here, a plaintiff pleads specific jurisdiction over a defendant based on a defendant's conduct in the forum (AC ¶ 12), the plaintiff must establish that the "defendant has purposefully directed his activities at residents of the forum,[] and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations and citations omitted).  Similarly, under Michigan's long-arm statute, Plaintiff needs to demonstrate that Michigan could exercise either general or limited

jurisdiction over NYMH under MCL § 600.711 and MCL § 600.715 and that jurisdiction "meets constitutional due process standards." *See Hige v. Turbonetics Holdings, Inc.*, 662 F. Supp. 2d 821, 827 (E.D. Mich. 2009).

General jurisdiction under M.C.L. § 600.711 requires that a corporation "is (1) incorporated in Michigan, (2) has consented to jurisdiction in Michigan, or (3) carries on a 'continuous and systematic part of its general business within the state.'" *Id.* (quoting M.C.L. § 600.711.)  Limited jurisdiction "is authorized in Michigan by MCL § 600.715, which . . . provides for personal jurisdiction over corporations for suits arising out of the act or acts constituting the transaction of any business within the state." *Id.*

Plaintiff has not met her burden in satisfying the requirements of jurisdiction under either federal precedent or the Michigan long-arm statute.  Nor can she.  While Plaintiff makes conclusory allegations that NYMH published *New York* magazine and sold it in Michigan (AC ¶¶ 10, 12-13), these allegations are wrong.  (*See* Jones Dec. ¶¶ 5-6.)  NYMH maintains no office in Michigan and does not do any business in Michigan.  (*Id.* ¶ 6.)  Due process prohibits the exercise of jurisdiction over NYMH because it has not purposefully availed itself "of the privilege of conducting activities within the forum State." *Burger King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Moreover, NYMH was not even served in Michigan (Jones Dec. ¶ 7), and thus did not consent to jurisdiction in Michigan

through service.

Under Fed. R. Civ. P. 12(b)(2), a defendant can submit evidence of lack of personal jurisdiction on a motion to dismiss. *See, e.g., Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Again, that evidence shows that NYMH is a holding company that did not maintain an office in Michigan or transact business in Michigan. Nor was NYMH served in Michigan or purposefully avail itself of the laws of Michigan. (*See generally* Jones Dec.)[5]

Plaintiff has thus failed to adequately plead jurisdiction over NYMH and the case should be dismissed in this Court.

## II. Plaintiff Lacks Statutory And Article III Standing To Assert Her Claims.

Under Rule 12(b)(1), a defendant can submit evidence that the Court lacks Article III standing. *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014). Here, that evidence shows that Plaintiff lacks both Article III and statutory standing to sue NYMH.

---

[5] If Plaintiff were to take the position that this Court has jurisdiction over NYMH because it is somehow a corporate "parent" of the publisher of *New York* magazine, that argument, too, would fail. Under Michigan law, "absent some abuse of corporate form, parent and subsidiary corporations are separate and distinct entities" unless plaintiff shows that one company "is a 'mere instrumentality'" of the other. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 850–51 (6th Cir. 2017) (quoting *Seasword v. Hilti*, Inc., 537 N.W.2d 221, 224 (Mich. 1995)).

**A.     Plaintiff Lacks Statutory Standing to Sue NYMH.**

Plaintiff does not have standing to sue NYMH under the PPPA.  This Court's inquiry begins and ends with the cardinal rule of statutory interpretation that clear, unambiguous statutes "must be enforced exactly as written."  *Haddock v. State Farm Fire & Cas. Co.*, No. 21-CV-12395, 2022 WL 16625964, at *5 (E.D. Mich. Nov. 1, 2022) (quoting *Garg v. Macomb County Community Mental Health Services*, 696 N.W.2d 646, 657 (Mich. 2005)); *Huggett v. Dep't of Nat. Res.*, 629 N.W.2d 915, 919 (Mich. 2001) ("If the statutory language is clear and unambiguous…the statute is enforced as written.  No further judicial construction is necessary or permitted.").

Here, the PPPA plainly states that a defendant must be "engaged in the business of selling at retail, renting, or lending books or other written materials" for the statute to apply.  *See* M.C.L. § 445.1712 (1989).  As a holding company and a non-publisher, NYMH is not engaged in any such business (*see, e.g.*, Jones Dec. ¶¶ 2, 5), and thus cannot be liable under the PPPA.  *See, e.g., Halaburda v. Bauer Pub. Co., LP*, No. 12-CV-12831, 2013 WL 4012827, at *7 (E.D. Mich. Aug. 6, 2013) (the statute requires that PPPA defendants "are in the business of publishing magazines [or other written materials], and sell them to the ultimate consumer of the products.") Plaintiff has failed to plead statutory standing.

**B.     Plaintiff Lacks Article III Standing to Sue NYMH.**

For the same reason, Plaintiff also lacks constitutional standing to sue NYMH. In order to establish her right to be before this Court, it is Plaintiff's burden to show, among other things, that she has suffered concrete injuries traceable to NYMH's actions. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). But Plaintiff's only claim is that she has suffered a statutory injury under a statute that does not apply to the Defendant. Plaintiff cannot claim an injury from an entity on purely statutory grounds when the statute is inapplicable to that entity. *See, e.g.*, *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607-08 (6th Cir. 2007). Accordingly, she lacks Article III standing to sue NYMH.[6]

**III.    Plaintiff's Claims Are Untimely, And Her Time to File Was Not Tolled.**

This action was filed on August 11, 2022—11 days after the expiration of the six-year limitation period Plaintiff claims applies here. (*See* AC ¶ 1 n. 2.) Even

---

[6] Plaintiff has also failed to adequately plead subject matter jurisdiction. Actions brought under C.A.F.A. still require that "the parties are minimally diverse." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). Plaintiff has sued a limited liability company defendant but has not properly identified its citizenship to allow the Court to make such a determination. A limited liability company has the citizenship of each of its members. *See Homfeld II, L.L.C., v. Comair Holdings, Inc.*, 53 F. App'x 731, 732 (6th Cir. 2002). But Plaintiff has not identified the citizenship of NYMH's members and, instead, simply alleges the location of NYMH's "headquarters and principal place of business." (AC ¶ 10.) Courts in this District have found this type of pleading insufficient with respect to identical claims brought against other PPPA defendants. *See Loftus v. Outside Integrated Media, LLC*, No. 21-cv-11809 (E.D. Mich. Aug. 12, 2021), ECF 3.

crediting Plaintiff's contention that a six-year limitations period applies, the Amended Complaint must be dismissed with prejudice as untimely.

### A.    The COVID-19 Orders are Inapplicable.

Despite the facial untimeliness of her action, Plaintiff will argue that her case is timely because the limitations period was tolled for roughly 101 days based on the COVID-19 Orders.  Like other PPPA plaintiffs filing suit after the July 30, 2022 deadline—all of whom are represented by the same counsel as here—Plaintiff will likely assert that there are two potential sources of law for such tolling: (a) Executive Orders 2020-58 and 2020-122 issued by the Governor of Michigan on April 22, 2020 and June 12, 2020, respectively; and (b) Administrative Orders 2020-3, 2020-8, and 2020-18, promulgated by the Michigan Supreme Court on March 23, 2020, May 1, 2020, and June 12, 2020, respectively. But the COVID-19 Orders only apply to certain deadlines in 2020, none of which apply to Plaintiff.

The explicit intent of the COVID-19 Orders was "to extend **all deadlines** pertaining to case initiation and the filing of initial responsive pleadings in civil and probate matters **during the state of emergency** declared by the Governor related to COVID-19."  Mich. Sup. Ct., Administrative Order No. 2020-3 (March 23, 2020) (emphasis added);  *see also* Executive Order No. 2020-58.  When the Michigan Supreme Court and Governor Whitmer rescinded their initial COVID-19 Orders on June 12, 2020, the subsequent Orders providing for COVID-tolling periods

12

contained the same tolling limitation: "all **deadlines** applicable to the commencement of all civil and probate actions and proceedings . . . are tolled from March 10, 2020 to June 19, 2020."[7]  Executive Order No. 2020-122 (emphasis added); *see also* Mich. Sup. Ct., Administrative Order No. 2020-18 (June 12, 2020).

The plain language of the COVID-19 Orders allow only for the tolling of deadlines that fall within the declared states of disaster and emergency, which spanned from March 10, 2020 to June 19, 2020.  *Id.*  Indeed, the Michigan Court of Appeals recently clarified that it interpreted one of the administrative orders "as tolling the statute of limitations for the commencement of actions and a concomitant tolling of the filing of responsive pleadings during the state of emergency."  *Wenkel v. Farm Bureau Gen. Ins. Co. of Michigan*, No. 358526, 2022 WL 17364773, at *4 (Mich. Ct. App. Dec. 1, 2022).  Tolling of the filing deadlines during the short period in 2020 makes sense based on, as the *Wenkel* court described it, "the reluctance of litigants and their attorneys to engage with the court during [the height of the COVID pandemic]."  *Id.*

Moreover, applying the COVID-19 Orders only to claims with deadlines falling during the short tolling period in 2020 is the more sensible and equitable way to interpret COVID-19 Orders.  Otherwise, under Plaintiff's logic, any plaintiff with

---

[7] Governor Whitmer's first executive order was issued on March 10, 2020, which declared the state of emergency across the state of Michigan. Executive Order No. 2020-4.

a statute of limitations period that expires after the close of Michigan's state of emergency would still be entitled to 101 more days to file their complaint pursuant to the COVID-19 Orders.  For example, under her theory, if an individual breached a contract in Michigan on March 1, 2020—just prior to the declared state of emergency—the plaintiff would receive the benefit of an additional 101 days beyond the close of the six-year statute of limitations on March 1, 2026 to file a claim, even though years have passed after the state of emergency was rescinded.  This makes no sense, and the COVID-19 Orders must be interpreted in a way that avoids absurd results.[8]  *See e.g.*, *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 254 (6th Cir. 2020); *People v. Tennyson*, 790 N.W.2d 354, 361 (Mich. 2010)

Here, Plaintiff had no filing deadlines between March 10, 2020 and June 19, 2020.  Her deadline to file her claims fell over two years after the end of the COVID-

---

[8] Although some courts have applied the COVID-19 Orders to allow for additional time to file even when the limitations period did not end during the declared state of emergency, those cases are not instructive here because those courts did not have the benefit of briefing on this issue.  *See e.g.*, *Bownes v. Borroughs Corp.*, No. 20-cv-964, 2021 WL 1921066, at *2 (W.D. Mich. May 13, 2021) (defendant's motion to dismiss admitted the COVID-19 Orders applied but argued the orders only allowed for a "60-day grace period" not 101 days); *Bowles v. Sabree*, No. 20-cv-12838, 2022 WL 141666, at *9 (E.D. Mich. Jan. 14, 2022) (defendant failed to address the COVID tolling argument); *Mackey v. Rising*, No. 20-cv-13408, 2021 WL 4034226, at *2 (E.D. Mich. Sept. 3, 2021) (defendant's only argument against application of the COVID-19 Orders was that they do not apply to federal cases, and court found, relying on Second Circuit precedent, that federal courts borrow state tolling orders for 42 U.S.C. §1983 claims).

19 tolling period.  Moreover, Plaintiff's counsel has been filing PPPA class actions for years and were not prevented from commencing this action before the July 30, 2022 deadline.  The COVID-19 Orders simply do not apply to Plaintiff's claim.

Plaintiff's counsel's attempt to extend the enforcement of the pre-July 31, 2016 version of the PPPA through COVID tolling is not only nonsensical, but it also subverts the Michigan Legislature's decision to put an end to no-injury suits like this one that are brought solely to cash in on the $5,000 statutory penalty that no longer exists.  For this reason, too, this Court should reject the COVID tolling theory.

Finally, while the Court need not decide the constitutionality of the COVID-19 Orders to rule them inapplicable on their face, NYMH notes that several states have found such orders unconstitutional in violation of the separation of powers provisions in state constitutions.[9]  In fact, one of the COVID Orders at issue here has already been held unconstitutional.  *See In re Certified Questions from the U.S. District Court for the Western District of Michigan*, 958 N.W.2d 1, 24 (Mich. 2020)

---

[9] *See, e.g.*, *Dickey v. Hoff*, No. 21-0859, 2022 WL 12127101 (Iowa Oct. 21, 2022) (affirming district court ruling that COVID-19 Supervisory Orders tolling statute of limitations violated the Iowa's separation of powers doctrine); *PNC Bank, Nat'l Ass. v. Page*, 186 NE.3d 633, 638-39 (Ind. Ct. App. 2022) (holding the Indiana Supreme Court could not change substantive law and, therefore, the Emergency Order could not be construed as suspending accrual of non-discretionary interest).

(holding the executive orders issued pursuant to the Emergency Powers of the Governor Act of 1945 exceeded state statutory and constitutional authority).[10]

Accordingly, Plaintiff's claims are untimely and should be dismissed with prejudice.

### B. The Three-Year Limitations Period Applies, Rendering Plaintiff's Claims Time-Barred Even if Tolling were Permitted.

In any event, a three-year limitations applies here, so the case could not be saved by any theory of tolling. M.C.L. § 600.5805(2) provides that "the period of limitations is 3 years after the time of the death or injury for *all* actions to recover damages for the death of a person or for injury to a person or property." Michigan courts consistently apply Section 600.5805(2)'s three-year statute of limitations to common law privacy-based claims. *See, e.g., Green v. Lansing Automakers Fed.*

---

[10] Governor Whitmer also issued Executive Orders pursuant to the Emergency Management Act of 1976 (the "EMA"). The Governor usurped legislative powers through the EMA, too, in violation of the Michigan constitution, because tolling statutes of limitation does not assist with the Governor's ability to respond to a disaster or emergency, as required for a constitutional implementation of the EMA. M.C.L. § 30.405(1)(a) (allowing the governor to "[s]uspend a regulatory statute, order, or rule prescribing the procedures for conduct of state business, when strict compliance with the statute, order, or rule would prevent, hinder, or delay necessary action in coping with the disaster or emergency.") And at least one Michigan Supreme Court Justice, in dissent, has cast doubt on the constitutionality of the judiciary's COVID order as violating the separation of powers provision of the state constitution. *Browning v. Buko*, No. 163538, 2022 WL 4117478, at *197 (Mich. Sept. 9, 2022) (Viviano, J., dissenting) (separation of powers issue was not considered, but should have been given the substantive nature of statutes of limitation.)

*Credit Union*, No. 342373, 2019 WL 3812108, at *5 (Mich. Ct. App. Aug. 13, 2019) (three-year limitation period applied to invasion of privacy, unlawful intrusion claim); *Derderian v. Genesys Health Care Sys.*, 689 N.W.2d 145, 159-60 (Mich. Ct. App. 2004) (three-year limitations period applied to invasion of privacy, false-light claim); *Arent v. Hatch*, 349 N.W.2d 536, 539 (Mich. Ct. App. 1984) (three-year limitations period applied to invasion of privacy claim).

Nevertheless, Plaintiff will contend that a PPPA claim should be subject to the catch-all six-year limitations period in M.C.L. § 600.5813 because the PPPA does not contain an express limitations period.[11] (AC ¶ 1 n.1.) But there are decades of Michigan cases that have applied the three-year limitations in Section 600.5805(2) to statutory claims that, as here, allege injury to persons, even when the statute was otherwise silent on a limitations period. *See e.g.*, *Dabish v. McMahon*, 818 F. App'x 423, 427 (6th Cir. 2020) (three-year limitations period applies to claims brought under Michigan's Ethnic Intimidation statute, M.C.L. § 750.147b, a specific right not found in common law); *Marks v. Hulstrom*, No. 294453, 2010 WL 2134303, at

_____

[11] Although three judges in this District and one judge in the Western District of Michigan agree with Plaintiff's position, holding the "catch all" six-year limitations period under M.C.L. § 600.5813 applies to PPPA claims, there has yet to be a Sixth Circuit or Michigan Supreme Court holding on the applicable limitations period for a PPPA claim. *See Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-cv-11404, 2022 WL 469075 (E.D. Mich. Feb. 15, 2022) (Ludington, J.); *Hall v. Farm Journal, Inc.*, No. 2:21-cv-11811 (E.D. Mich. April 5, 2022) (Lawson, J.), ECF 26, slip op.; *Krassick v. Archaeological Inst. of Am.*, No. 2:21-cv-180, 2022 WL 2071730 (W.D. Mich. June 9, 2022) (Jarbou, J.); *Nashel*, 2022 WL 6775657.

*1 (Mich. Ct. App. May 27, 2010) (applying Section 600.5805(2)'s limitations period to statutory nuisance claim under M.C.L. § 600.2940(1)); *McCree v. Cont'l Mgmt., LLC*, No. 351171, 2021 WL 1050115, at *7 (Mich. Ct. App. Mar. 18, 2021) (holding that the three-year limitations period applies to the Housing Act of Michigan and Truth in Renting Act). In light of these precedents, this Court should review this issue anew and find a three-year period applies.

## IV. Plaintiff's Amended Complaint Is Inadequately Pled.

Even if she had timely sued the correct defendant and her claims were not time-barred, Plaintiff's claims would still fail because she has not alleged facially plausible facts to support her claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]he Court will not presume the truth of legal conclusions in the complaint." *Nashel*, 2022 WL 6775657 at *2. Importantly, "a complaint containing a statement of facts that merely creates a *suspicion* of a

legally cognizable right of action is insufficient." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (emphasis in original).

The Amended Complaint is devoid of any actual facts supporting Plaintiff's allegations that NYMH unlawfully disclosed her PRI in violation of the PPPA. To plead a claim under the PPPA, a plaintiff must allege facts that, if proved, would show both that (i) the defendant disclosed the relevant information about the plaintiff without the plaintiff's consent, and (ii) the information specifically identified the plaintiff to the party receiving that information. M.C.L. § 445.1712 (1989) (prohibiting disclosure "to any person, other than the customer, a record or information concerning the purchase . . . of [written] materials by a customer that indicates the identity of the customer"). In other words, Plaintiff must plead plausible facts demonstrating that, during some undefined time period in 2016, Defendant unlawfully disclosed her PRI—her full name, the specific title of the publication subscribed to, and her home address—to third parties. (AC ¶ 9.) But she has failed to adequately plead any such disclosure whatsoever.

Plaintiff's PPPA claims are broad and conclusory, cut and paste allegations, pled largely on information and belief, that Defendant disclosed subscriber names and addresses to unnamed "data aggregators, data appenders, data cooperatives, and list brokers . . . during the relevant pre-July 31, 2016 time period." (*Id.* at ¶ 1.) She does not substantiate this barebones statement, and thus fails to provide sufficient

facts from which this Court could draw a plausible inference that NYMH violated her rights under the PPPA prior to pre-July 31, 2016. *See Iqbal*, 556 U.S. at 678; *Nashel*, 2022 WL 6775657, at *4-6.

In *Nashel*, a PPPA action filed by Plaintiff's same counsel, Judge Murphy granted the defendant's motion to dismiss for failure to plead a plausible claim under the PPPA. *Id.* Just as Plaintiff attempts to do here with her citation to a 2022 data card published by a third party, the *Nashel* plaintiffs supported the allegations in their complaint with third-party data cards from a different time period. *Nashel*, 2022 WL 6775657, at *4 (submitting data cards from nearly a decade before the relevant 2016 time period). The *Nashel* plaintiffs went even further and made allegations about the defendant's privacy policy and cited a case study concerning the City of Virginia Beach's rental of a list of defendant's subscribers' email addresses. *Id.* at *4-6.

The *Nashel* court found that the "[p]laintiffs' allegations, even in light of that evidence, fail to clear the plausibility threshold." *Nashel*, 2022 WL 6775657, at *4. At best, Judge Murphy concluded that the plaintiffs' supporting allegations—the third-party data cards, the defendant's privacy policy, and the Virginia Beach case study—"create[d] only suspicion as to whether Defendant violated the PPPA during the pre-July 31, 2016 period." *Id.* "[A] complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient."

*Id.* (citing *Bishop*, 520 F.3d at 520).   The plaintiffs did not appeal the *Nashel* decision.

Plaintiff's allegations here are weaker than in *Nashel*.  The only piece of so-called "documented evidence" she relies upon is a 2022 third-party data card published by NextMark, similar to the one attached to the *Nashel* complaint.  (AC ¶ 2, Ex. A.)  Neither the timing nor the content of this data card supports her allegations that NYMH violated the PPPA in the pre-July 31, 2016 time period.  Indeed, Plaintiff's allegations regarding the subscriber data that NextMark purportedly offers for sale makes it clear that the alleged information is that of current subscribers in 2022.  It says nothing about data or information pertaining to subscribers prior to July 31, 2016.  Just as in *Nashel*, because the data card Plaintiff relies upon is from an irrelevant time period, it does not create any plausible inference of disclosure in the relevant pre-July 31, 2016 time period.  *See* 2022 WL 6775657, at *4-6; *Iqbal*, 556 U.S. at 678.  As in *Nashel*, Plaintiff's allegations rely "on a legal-conclusion inference" that NYMH systematically and continuously violated the PPPA from 2022 backwards to 2016.  2022 WL 6775657, at *5.  But this Court cannot "presume the truth of legal conclusions," and because "[Plaintiff] cannot otherwise account for the . . . time gap, the data cards make the complaint's allegations merely possible rather than plausible."  *Id.* (internal citation omitted) (emphasis in original).

Furthermore, the content of this data card does not plausibly establish that NYMH violated the PPPA. The data card provides no suggestion as to what information was allegedly disclosed through the mailing list. (AC ¶ 2; Ex. A.) The data card merely purports to contain information about subscribers to *New York* magazine without specifying what that information is—a necessary prerequisite to establishing that her PRI, pursuant to Plaintiff's own definition, was disclosed to anyone. (AC ¶ 5.) Nor does the data card explain the source of any information about subscribers, meaning that there is no connection between the data card and any alleged conduct by NYMH.[12]

Just as the *Nashel* court found, "nothing on the data card[] explains how [NextMark] received [NYMH's] subscription list" and it therefore "fail[s] to support a crucial element of [Plaintiff's] alleged action: that [NYMH] engaged in the business of selling written material to disclose information personally identifying the customer." 2022 WL 6775657, at *5 (internal citation omitted). This is a "gaping omission" that requires a "large inferential leap" to connect NYMH's alleged conduct to the data cards, and Plaintiff fails to "create a reasonable inference of [NYMH's] culpability." *Id.*

---

[12] The data card reprinted in the Amended Complaint also erroneously lists NYMH as the publisher of *New York* magazine. (*See* AC, ¶ 2, Ex. A.) This error casts further doubt on the accuracy of the data card.

Finally, Plaintiff alleges she saw a "barrage of unwanted" junk mail during the undefined relevant timeframe. (AC ¶ 1.) But she does not specify any causal connection between her subscription to *New York* magazine and junk mail. *See id.* There could be numerous reasons for such junk mail, all unrelated to NYMH.[13] This implausible allegation cannot support Plaintiff's claims. *See Iqbal*, 556 U.S. at 678; *see also Nashel*, 2022 WL 6775657 at *1 (plaintiffs made same "uptick in junk mail" arguments, which did not sway the court).

Without factual allegations facially supporting the conclusion that NYMH wrongfully disclosed Plaintiff's personal information to a third party, Plaintiff has not pled a valid claim under the PPPA. The Sixth Circuit has consistently found that bare allegations of purported disclosures are insufficient in cases alleging illegal disclosures of private information. *Fisher v. Perron*, 30 F.4th 289, 397 (6th Cir. 2022) (bare allegations of disclosure insufficient in case alleging disclosure of private information).

Plaintiff's allegations have not and cannot cross the "line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557 (internal citation omitted). Her claims must be dismissed with prejudice under Rule 12(b)(6).

---

[13] *See* AC ¶¶ 23, 25 (describing a vast "information marketplace" where "data aggregators purchase, trade, and collect massive databases of information about consumers" from "numerous offline and online sources.").

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

Date: January 12, 2023

Respectfully submitted,

/s/ *Kristen C. Rodriguez*
DENTONS US LLP
Kristen C. Rodriguez
Emily A. Golding
233 S. Wacker Drive, Suite 5900
Chicago, Illinois 60606-6404
Tel: (312) 876-8000
kristen.rodriguez@dentons.com
emily.golding@dentons.com

Deborah H. Renner
1221 Avenue of the Americas
New York, New York 10020-1089
Tel: (212) 398 5793
deborah.renner@dentons.com

CLARK HILL PLC
Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
151 South Old Woodward Avenue,
Suite 200
Birmingham, Michigan 48009
Tel: (248) 530-6336
pkupelian@clarkhill.com
cschley@clarkhill.com

*Counsel for Defendant*,
*New York Media Holdings, LLC*

**<u>Certificate of Service</u>**

I hereby certify that on January 12, 2023, a copy of the foregoing document was filed electronically and served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ *Kristen C. Rodriguez*
Kristen Rodriguez