# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| ARLEEN KOSAK, | **)** | |
| individually and on behalf of all others | **)** | |
| similarly situated, | **)** | |
| Plaintiff, | **)** | Case No. 2:22-cv-11850-MFL-EAS |
| | **)** | |
| vs. | **)** | Hon. Matthew F. Leitman |
| | **)** | |
| NEW YORK MEDIA HOLDINGS, LLC, | **)** | **ORAL ARGUMENT** |
| Defendant. | **)** | **REQUESTED** |
| | **)** | |
| _____ | **)** | |

## DEFENDANT NEW YORK MEDIA HOLDINGS, LLC'S
## OPPOSITION TO PLAINTIFF'S LEAVE TO AMEND

# TABLE OF CONTENTS

TABLE OF CONTENTS....................................................................... i

TABLE OF AUTHORITIES……………………………………………...iii

STATEMENT OF ISSUES PRESENTED............................................. vii

STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY ... viii

INTRODUCTION ...................................................................................1

STATEMENT OF FACTS ......................................................................3

I.      The Michigan PPPA. ..................................................................3

II.     Plaintiff's Untimely Claims.........................................................5

III.    Plaintiff Makes Conclusory Allegations Of PPPA Violations.......5

ARGUMENT ..........................................................................................7

I.      Courts Deny Amendments Because Of Futility. ...........................7

II.     Amendment Would Be Futile Because Plaintiff's Claims Are
        Untimely, And Her Time To File Was Not Tolled. .......................8

        A.      The COVID-19 Orders are Inapplicable. .........................8

                1.      The COVID-19 Orders Only Apply to 2020 Filing
                        Deadlines.............................................................. 9

                2.      The State COVID-19 Orders Are Inapplicable to Federal
                        Class Actions Under *Carter*................................. 11

        B.      The Three-Year Limitations Period Applies, Rendering
                Plaintiff's Claims Time-Barred Even if Tolling were Permitted....... 14

III.    Amendment Would Be Futile Because Plaintiff Inadequately Pleads
        Her Second Amended Complaint...............................................16

IV.     Plaintiff Should Not Be Rewarded For Her Lack Of Diligence,
        Resulting In Undue Delay And Prejudice. ..................................22

i

CONCLUSION .................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arent v. Hatch*,
    349 N.W.2d 536 (Mich. Ct. App. 1984)............................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................16, 18, 19, 21

*Barnes v. Sun Chemical Corp.*,
    164 F. Supp. 3d 994 (W.D. Mich. 2016)..........................................................12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................16, 21

*Bishop v. Lucent Technologies, Inc.*,
    520 F.3d 516 (6th Cir. 2008) .....................................................................17, 19

*Bowles v. Sabree*,
    No. 20-cv-12838, 2022 WL 141666 (E.D. Mich. Jan. 14, 2022)......................13

*Bownes v. Borroughs Corp.*,
    No. 20-cv-964, 2021 WL 1921066 (W.D. Mich. May 13, 2021) ......................13

*Carter v. DTN Management Co.*,
    No. 360772, 2023 WL 439760 (Mich. Ct. App. Jan. 26, 2023)............10, 11, 13

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800 (2018)......................................................................................14

*Coulter-Owens v. Time Inc.*,
    695 Fed. App'x 117 (6th Cir. 2017) ..................................................................4

*Dabish v. McMahon*,
    818 F. App'x 423 (6th Cir. 2020)......................................................................15

*Derderian v. Genesys Health Care Systems*,
    689 N.W.2d 145 (Mich. Ct. App. 2004)............................................................15

*Donovan v. FirstCredit, Inc.*,
    983 F.3d 246 (6th Cir. 2020) ............................................................................11

*In re FCA US LLC Monostable Electric Gearshift Litigation*,
    446 F. Supp. 3d 218 (E.D. Mich. 2020) ...........................................................14

*Fisher v. Perron*,
    30 F.4th 289 (6th Cir. 2022) .............................................................................21

*Green v. Lansing Automakers Federal Credit Union*,
    No. 342373, 2019 WL 3812108 (Mich. Ct. App. Aug. 13, 2019) ....................15

*Halaburda v. Bauer Publishing Company, LP*,
    No. 12-CV-12831, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013) ...................22

*Hall v. Farm Journal, Inc.*,
    No. 2:21-cv-11811 (E.D. Mich. April 5, 2022)..................................................15

*Hanna v. Plumer*,
    380 U.S. 460 (1965)...........................................................................................12

*Horizon Lawn Maintenance, Inc. v. Columbus-Kenworth, Inc.*,
    188 F. Supp. 3d 631 (E.D. Mich. 2016) ............................................................10

*Horton v. Dow Jones*,
    804 Fed. App'x 81 (2d Cir. 2020) .....................................................................14

*Krassick v. Archaeological Institute of America*,
    No. 2:21-cv-180, 2022 WL 2071730 (W.D. Mich. June 9, 2022) ....................15

*League of United Latin American Citizens v. Bredesen*,
    500 F.3d 523 (6th Cir. 2007) .............................................................................16

*Linna v. Ticket Fulfillment Services, LP*,
    No. 20-CV-12200, 2020 WL 13577562 (E.D. Mich. Nov. 5, 2020) ...........22, 23

*Mackey v. Rising*,
    No. 20-cv-13408, 2021 WL 4034226 (E.D. Mich. Sept. 3, 2021)....................13

*Marks v. Hulstrom*,
    No. 294453, 2010 WL 2134303 (Mich. Ct. App. May 27, 2010).....................16

*McCree v. Continental Management, LLC*,
    No. 351171, 2021 WL 1050115 (Mich. Ct. App. Mar. 18, 2021).....................16

*Moore v. City of Paducah*,
    790 F.2d 557 (6th Cir. 1986) ................................................................7

*Nashel v. The New York Times Company*,
    No. 2:22-cv-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022).........*passim*

*People v. Tennyson*,
    790 N.W.2d 354 (Mich. 2010).............................................................11

*Poole v. Valley Industries*,
    No. 05-CV-74163-DT, 2006 WL 2883126 (E.D. Mich. Oct. 6,
    2006) ..................................................................................................23

*Pratt v. KSE Sportsman Media, Inc.*,
    No. 1:21-cv-11404, 2022 WL 469075 (E.D. Mich. Feb. 15, 2022)..................15

*Riverview Health Institute LLC v. Medical Mutual of Ohio*,
    601 F.3d 505 (6th Cir. 2010) ...............................................................7

*Russell v. GTE Government Systems Corp.*,
    141 F. App'x 429 (6th Cir. 2005)..........................................................7

*Wenkel v. Farm Bureau General Insurance Company of Michigan*,
    No. 358526, 2022 WL 17364773 (Mich. Ct. App. Dec. 1, 2022).....................9

**Statutes**

28 United States Code
    § 1367......................................................................................................14
    § 2072...............................................................................................12, 13

42 United States Code §1983................................................................................13

Michigan Compiled Laws
    § 445.1711, *et seq.* .....................................................................*passim*
    § 600.5805(2)...................................................................14, 15, 16
    § 600.5813....................................................................................15

**Rules and Regulations**

Executive Order
    No. 2020-4 ................................................................................9
    No. 2020-58 ..........................................................................8, 9
    No. 2020-122 ........................................................................8, 9

Federal Rule of Civil Procedure
    Rule 8 ...................................................................................16
    Rule 12(b)(6)...........................................................................7
    Rule 15 ...................................................................................5
    Rule 23 ..............................................................................12, 13

Michigan Court Rules
    1.108......................................................................................11
    3.501(A)(5) ............................................................................12

Michigan Superior Court, Administrative Order
    No. 2020-3 ...........................................................................8, 9
    No. 2020-18 .........................................................................8, 9

**Other Authorities**

Pub. L. No. 109-2, 199 Stat. 4 ...................................................13

S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92............................................4

Stephen B. Burbank & Tobias Barrington Wolff,
    *Class Actions, Statutes of Limitations and Repose, and Federal*
    *Common Law*, 167 Penn. L. Rev. 1 (Dec. 2018)........................................12, 13

## STATEMENT OF ISSUES PRESENTED

1.  Whether this Court should permit Plaintiff to amend her complaint a second time when the identity of the correct defendant was readily available to Plaintiff when she filed her original complaint, and where such an amendment would be futile because: (i) Plaintiff filed her original Complaint after the six-year limitations period she herself deems applicable had expired; and also (ii) has not adequately pled her proposed Second Amended Complaint, which is virtually identical to a complaint recently dismissed with prejudice by Judge Stephen Murphy III. *Nashel v. The New York Times Company*, No. 2:22-cv-10633-SJM-DRG, 2022 WL 6775657 (E.D. Mich. October 11, 2022).

    Defendant's Answer: No.

**STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY**

The controlling authority for this Motion includes:

1. Federal Rule of Civil Procedure 12(b)(6).

2. Michigan Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-445.1715 (1989) (amended eff. July 31, 2016).

3. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

4. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

5. *Nashel v. The New York Times Company*, No. 2:22-cv-10633-SJM-DRG, 2022 WL 6775657 (E.D. Mich. October 11, 2022).

6. *Russell v. GTE Government Systems Corp.*, 141 F. App'x 429 (6th Cir. 2005).

7. *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505 (6th Cir. 2010).

**INTRODUCTION**

Plaintiff Arleen Kosak seeks to amend her Complaint a second time, now naming New York Media, LLC ("NYM") as the Defendant. In the prior iterations of the Complaint, Plaintiff twice named a holding company as the Defendant. Her lawyers have brought nearly 100 similar actions against different publishers.[1] They know full well that a holding company is not a publisher and is thus not an appropriate defendant under the Preservation of Personal Privacy Act, M.C.L. § 445.1711, *et seq.* (the "PPPA"). Moreover, while they claim in Plaintiff's brief that they undertook "exhaustive research" to figure out what entity published *New York* magazine in 2016, that information was and is readily available on the Internet, even on New York magazine's Wikipedia page.[2] Their supposed claim of exhaustive research, unsupported by a sworn declaration, should not be credited.

Plaintiff's lack of meticulousness is reflected not only in the fact that she named the wrong defendant twice despite public information telling her who published *New York* magazine in 2016, but also by the timing and contents of her pleading. The Court should deny Plaintiff's motion for leave to amend because amendment would be futile.

---

[1] *See* Exhibit A hereto.

[2] https://en.wikipedia.org/wiki/New_York_(magazine).

*First*, Plaintiff's original Complaint (and thus her proposed Second Amended Complaint ("SAC")) was untimely. Plaintiff alleges that NYM wrongfully disclosed her "Private Reading Information" during some undefined period in 2016, in violation of the pre-July 31, 2016 version of the PPPA. Plaintiff's original Complaint was filed too late. Plaintiff alleges that a six-year limitation period applies to PPPA claims. Under Plaintiff's claimed limitations period, the last day to file a claim for a violation of the pre-July 31, 2016 version of the PPPA was July 30, 2022. (*See* ECF No. 6, AC ¶ 1 n. 2; ECF No. 17-1, Proposed SAC, ¶ 1 n. 2.) But Plaintiff filed her original Complaint on August 10, 2022—11 days too late. (*See* ECF No. 1, Complaint.) Plaintiff will no doubt argue that she should be entitled to "COVID tolling." That argument is predicated on certain of Governor Gretchen Whitmer's Executive Orders and the Michigan Supreme Court's Administrative Orders implemented in response to the COVID-19 pandemic (the "COVID-19 Orders"). But the state's COVID-19 Orders simply are not applicable here by their very terms, and also because, as procedural orders, they have no bearing on this federal action.

*Second*, amendment is also futile because Plaintiff's proposed SAC remains inadequately pled, as it consists of nothing more than vague and conclusory allegations, pled for the most part on information and belief, that fail to state a claim for a violation of the PPPA. Subject to certain exceptions, the PPPA prohibits disclosures of "information concerning the purchase" of written materials by a customer "that

indicates the identity of the customer." M.C.L. § 445.1712 (1989). But the proposed SAC contains no specific allegations of the actual disclosure of any customer's information, let alone Plaintiff's information. Significantly, in a substantially similar case in this District, Judge Stephen J. Murphy, III recently dismissed a PPPA action with prejudice for failing to adequately plead disclosure, even when the allegations supporting disclosure were more detailed than here. *See Nashel v. The New York Times Company*, No. 2:22-cv-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022).

Accordingly, NYM respectfully requests that the Court deny Plaintiff's motion for leave to further amend her Complaint.

## STATEMENT OF FACTS

### I.     The Michigan PPPA.

The PPPA was passed in the wake of a federal statute, the "Video Privacy Protection Act," which was enacted following the disclosure of Supreme Court nominee Judge Robert Bork's video rental choices in a newspaper. (*See* AC, ECF 6, Ex. B at PageID.567.) However, Michigan's law went further than the federal Act. In addition to video rental records, its scope includes "books or other written materials," proscribing certain "disclosures" of records or information "concerning the purchase, lease, rental, or borrowing of those materials." M.C.L. § 445.1712 (1989). But the PPPA applies only to persons or entities who are "engaged in the

3

business of selling at retail, renting, or lending" such materials.   M.C.L. §

445.1712(1) (1989).

The Michigan statute sat on the books largely dormant for nearly 30 years

until plaintiffs' counsel started bringing a series of class actions against magazine

publishers over "direct marketing" mailing practices. The allure of class actions

under the PPPA was a statutory damages provision that permitted an action for actual

damages *or* $5,000 in statutory damages, whichever was greater.  M.C.L. § 445.1715

(1989). Not surprisingly, the prior PPPA class action suits (filed against publishers

by the same plaintiffs' lawyers here, in or around 2013-2015) elected to pursue the

statutory damages of $5,000 per subscriber in lieu of seeking actual damages,

threatening *in terrorem* class action damages.

In view of these potentially crippling class action lawsuits, the Michigan

Legislature amended the PPPA in 2016 (the "2016 Amendment").[3] Among other

things, the 2016 Amendment expressly removed the provision for $5,000 statutory

damages and, in its place, provided only for actual damages. *See* MCL § 445.1715(2)

(2016). The 2016 Amendment took effect July 31, 2016. Thus, July 30, 2016, was

the last day the $5,000 statutory damages provision was in place.[4]

---

[3] S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (codified at M.C.L. § 445.1711, *et seq.* (2016)).

[4] The Sixth Circuit ruled that the 2016 Amendment applies only prospectively. *Coulter-Owens v. Time Inc.*, 695 Fed. App'x 117, 121 (6th Cir. 2017).

## II.   Plaintiff's Untimely Claims.

Plaintiff filed her original Complaint on August 10, 2022—11 days after the expiration of the six-year limitations period that she contends is applicable. (*See* ECF 1.) Her original Complaint named New York Media Holdings *Corp.* as the Defendant. (*See id.* at PageID.1.) There is no record of service of the original Complaint on the docket. Instead, Plaintiff amended her Complaint nearly three months later, on November 2, 2022, and then served it via email on another holding company's, New York Media Holdings, *LLC's,* statutory agent in Delaware via email on November 4, 2022.[5]  (ECF 9, Service of Summons, at PageID.1070; ECF No. 16-2, Jones Dec., ¶ 7.)

On February 2, 2023, almost six months after filing her original Complaint, Plaintiff sought leave to amend to name NYM as the Defendant. (ECF. No. 17.)

## III.   Plaintiff Makes Conclusory Allegations Of PPPA Violations.

Just as in the other two versions of her Complaint, in her proposed SAC, Plaintiff's allegations are made on "information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal

---

[5] Plaintiff alleges that her First Amended Complaint ("FAC") relates back to the filing of her original Complaint under Rule 15.  (ECF No. 17-1 ¶ 1, n.1). However, she ignores the fact that her original Complaint was filed too late.

knowledge." (ECF No. 17-1, Preamble.) Plaintiff broadly and baldly claims NYM[6] "rented, exchanged, and/or otherwise disclosed detailed information" about its customers' "Private Reading Information,"—*i.e.*, names, home addresses, and the "titles of publications subscribed to"—to third parties without consent or notice, and that such alleged disclosures violated the PPPA.  (*See e.g.*, *id.* ¶¶ 1, 5.)

Plaintiff offers no facts whatsoever to support her sweeping allegations that NYM disclosed identifying information about any customer—much less the Plaintiff—at any time, let alone some undefined time in 2016. Although Plaintiff alleges she has "[d]ocumented evidence" that NYM "rented, exchanged, and/or otherwise disclosed" her Private Reading Information prior to July 31, 2016 (*id.* ¶ 1, 2), that "evidence" is a recent third-party data card from NextMark, Inc. ("NextMark") dated April 28, 2022, which says nothing about 2016.  (*Id.* ¶ 2, Ex. A.) Tellingly, there is no allegation tying anything on the third-party data card to any disclosure by NYM.

Plaintiff seeks to represent a class of all Michigan residents who allegedly had their PRI disclosed to third parties by NYM without their consent during an undefined "relevant time period" in 2016. (*Id.* ¶ 49.) She explicitly brings her claims

---

[6] The substantive allegations against NYM in the proposed SAC have not changed from those asserted against NYMH in the FAC.

under the prior version of the PPPA in order to seek $5,000 in statutory damages per subscriber. (*See id.* ¶ 1, n.2.)

## ARGUMENT

### I.   Courts Deny Amendments Because Of Futility.

While leave to amend is generally freely granted, leave should be denied, where, as here, an amendment would be futile. *See Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (amendment should be denied when futile).

An amendment is futile when the suit, as originally filed, was untimely. *See, e.g.*, *Russell v. GTE Gov't Sys. Corp.*, 141 F. App'x 429, 437 (6th Cir. 2005) (determining that amendment was futile when original claims were untimely). Such is the case here. Amendment is also futile where, as here, an amended complaint could not withstand dismissal on Rule 12(b)(6) pleading grounds. *Riverview Health Inst. LLC*, 601 F.3d at 512 (finding that "[a] proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss") (quotations and citations omitted).[7]

---

[7] Plaintiff argues that prejudice is absolutely required to deny a motion for leave to amend, but that is not so. In *Moore v. City of Paducah*, 790 F.2d 557 (6th Cir. 1986), on which Plaintiff relies, the Sixth Circuit only required the defendant to demonstrate prejudice because that defendant argued delay as its sole grounds for denial of the motion to amend. That is not the case here, where, as discussed below, amendment would be futile.

## II.     Amendment Would Be Futile Because Plaintiff's Claims Are Untimely, And Her Time To File Was Not Tolled.

This action was filed on August 10, 2022—11 days after the expiration of the six-year limitation period Plaintiff claims applies here. (*See* ECF No. 17-1 ¶ 1 n. 2.) Even crediting Plaintiff's contention that a six-year limitations period applies, the proposed SAC, as was true of the original Complaint and the FAC, is untimely.

### A.     The COVID-19 Orders are Inapplicable.

Despite the facial untimeliness of her action, Plaintiff will argue that her case is timely because the limitations period was tolled for roughly 101 days based on the COVID-19 Orders. Like other PPPA plaintiffs filing suit after the July 30, 2022 deadline—all of whom are represented by the same counsel as here—Plaintiff will likely assert that there are two potential sources of law for tolling: (a) Executive Orders 2020-58 and 2020-122 issued by the Governor of Michigan on April 22, 2020 and June 12, 2020, respectively; and (b) Administrative Orders 2020-3, 2020-8, and 2020-18, promulgated by the Michigan Supreme Court on March 23, 2020, May 1, 2020, and June 12, 2020, respectively. But the COVID-19 Orders are inapplicable on two grounds: (1) they only apply to deadlines that fell in a narrow period of time in 2020, not applicable here; and (2) as procedural orders, they do not apply to federal actions.

### 1. The COVID-19 Orders Only Apply to 2020 Filing Deadlines.

The explicit intent of the COVID-19 Orders was "to extend all deadlines pertaining to case initiation and the filing of initial responsive pleadings in civil and probate matters during the state of emergency declared by the Governor related to COVID-19." Mich. Sup. Ct., Administrative Order No. 2020-3 (March 23, 2020) (emphasis added); *see also* Executive Order No. 2020-58. When the Michigan Supreme Court and Governor Whitmer rescinded their initial COVID-19 Orders on June 12, 2020, the subsequent Orders providing for COVID-tolling periods contained the same tolling limitation: "all **deadlines** applicable to the commencement of all civil and probate actions and proceedings . . . are tolled from March 10, 2020 to June 19, 2020."[8] Executive Order No. 2020-122 (emphasis added); *see also* Mich. Sup. Ct., Administrative Order No. 2020-18 (June 12, 2020).

Thus, the plain language of the COVID-19 Orders allow only for the tolling of deadlines that fall within the declared states of disaster and emergency, which spanned from March 10, 2020 to June 19, 2020. *Id.*; *see also Wenkel v. Farm Bureau Gen. Ins. Co. of Michigan*, No. 358526, 2022 WL 17364773, at *4 (Mich. Ct. App. Dec. 1, 2022) (the need to toll deadlines during the pandemic was as result of "the

---

[8] Governor Whitmer's first executive order was issued on March 10, 2020, which declared the state of emergency across the state of Michigan. Executive Order No. 2020-4.

reluctance of litigants and their attorneys to engage with the court" during the pandemic). Here, Plaintiff had no filing deadlines between March 10, 2020 and June 19, 2020. Her deadline to file her claims fell over two years after the end of the COVID-19 tolling period. Moreover, Plaintiff's counsel has been filing PPPA class actions for years and were not prevented from commencing this action before the July 30, 2022 deadline. The COVID-19 Orders simply do not apply to Plaintiff's claim.

One intermediate state court has held that COVID tolling applies beyond the narrow window of the 2020 deadlines. *See Carter v. DTN Mgmt. Co*., No. 360772, 2023 WL 439760 (Mich. Ct. App. Jan. 26, 2023). But that case, an individual slip and fall case, was wrongly decided, and is not binding on this Court in any event. *Horizon Lawn Maint., Inc. v. Columbus-Kenworth, Inc.*, 188 F. Supp. 3d 631, 635 (E.D. Mich. 2016) (while intermediate state appellate court decisions may provide guidance on state law, "they are not binding on federal courts."). Moreover, the *Carter* court's ruling makes little sense. Under the logic of the *Carter* court, any plaintiff with a limitations period that expires after the close of Michigan's state of emergency would still be entitled to 101 more days to file their complaint pursuant to the COVID-19 Orders. For example, under the *Carter* theory, if an individual breached a contract in Michigan on March 1, 2020—just prior to the declared state of emergency—the plaintiff would receive the benefit of an additional 101 days

beyond the close of the six-year statute of limitations on March 1, 2026 to file a claim, even though years have passed after the state of emergency was rescinded. The COVID-19 Orders must be interpreted in a way that avoids such an absurd result. *See e.g.*, *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 254 (6th Cir. 2020); *People v. Tennyson*, 790 N.W.2d 354, 361 (Mich. 2010).[9]

Extending the enforcement of the pre-July 31, 2016 version of the PPPA through COVID tolling is not only nonsensical, it also subverts the Michigan Legislature's decision to put an end to no-injury suits like this one that are brought solely to cash in on the $5,000 statutory penalty that no longer exists.  For this reason, too, this Court should reject any COVID tolling theory.

### 2. The State COVID-19 Orders Are Inapplicable to Federal Class Actions Under *Carter*.

Even if the Court were to follow the logic of the *Carter* case, that case also holds that tolling is a procedural, not a substantive, matter. 2023 WL 439760, at *4 (the Michigan Supreme Court's administrative order "modifying the computation of days under MCR 1.108 for purposes of determining filing deadlines[] [was] plainly

---

[9] The *Carter* court also rejected the notion that the COVID-19 Orders are unconstitutional. 2023 WL 439760 at *6.  However, the court acknowledged that it did not necessarily have the power to decide the constitutionality of the COVID-19 Orders. *Id.* The *Carter* court merely determined that because the COVID-19 Orders are procedural in nature, they are not unconstitutional. *Id.* NYMH (and NYM—if Plaintiff is allowed to file the SAC) reserves its right to argue that the COVID-19 Orders are unconstitutional, among other reasons, because they violate the separation of powers doctrine.

a procedural matter"). As such, the COVID-19 Orders would not apply to federal court actions, even when courts are sitting in diversity. *See Barnes v. Sun Chem. Corp.*, 164 F. Supp. 3d 994, 999 (W.D. Mich. 2016) ("State rules of *procedure*, particularly those promulgated by a state supreme court, usually have no effect in federal courts because they do not embody a 'substantial policy of the state;' and even where a state statute is 'procedural in nature,' the Court will apply the federal procedural rule.") (quoting *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501 (6th Cir. 2002)) (emphasis in original).

Federal procedural rules pertain to this action because Michigan does not permit plaintiffs to bring class actions for statutory damages in Michigan state court unless the statute explicitly authorizes a class, which the PPPA does not. MCR 3.501(A)(5). To circumvent this prohibition, Plaintiff invoked federal jurisdiction through CAFA in all the iterations of her Complaint. (*See, e.g.,* ECF No. 17-1 ¶ 11.) Rule 23 thus governs here by Plaintiff's own choice. Through the Rules Enabling Act, 28 U.S.C. § 2072, Congress delegated its "power to prescribe general rules of practice and procedure" for cases in the federal courts to the Supreme Court. As the Supreme Court made clear in *Hanna v. Plumer*, 380 U.S. 460 (1965), "the Federal Rules have the status of 'Acts of Congress' through the grant of delegated lawmaking authority that Congress made to the Supreme Court in the [Rules Enabling Act]." Stephen B. Burbank & Tobias Barrington Wolff, *Class Actions,*

*Statutes of Limitations and Repose, and Federal Common Law*, 167 Penn. L. Rev. 1, 35 (Dec. 2018) (citing 380 U.S. 460 (1965); 28 U.S.C. § 2072(a)). Rule 23 is thus an Act of Congress, and CAFA—which extends Rule 23 and the Court's jurisdiction to this case—is *itself* an Act of Congress. Pub. L. No. 109-2, 199 Stat. 4.

Accordingly, because this case is governed by the Federal Rules of Civil Procedure, state court procedures, such as those embodied in the COVID-19 Orders, do not apply.[10] Notably, the *Carter* court also stated that the COVID-19 Orders stemmed from the Michigan Supreme Court's "clear[] concern[] with limiting in person interactions and protecting court staff and the public from COVID-19" — concerns that do not apply in federal courts, given the e-filing system.  *See Carter*, 2023 WL 439760, at *4.

Finally, the *Carter* decision says nothing about tolling as to absent class members. Under analogous tolling principles in the class action context, tolling is

---

[10] Although other federal courts have applied the COVID-19 Orders, those cases are not instructive because those courts did not have the benefit of briefing on this issue, they are not PPPA or class action cases, and also pre-date *Carter's* determination that the COVID-19 Orders are procedural in nature. *See e.g.*, *Bownes v. Borroughs Corp.*, No. 20-cv-964, 2021 WL 1921066, at *2 (W.D. Mich. May 13, 2021) (defendant's motion to dismiss admitted the COVID-19 Orders applied but argued the orders only allowed for a "60-day grace period" not 101 days); *Bowles v. Sabree*, No. 20-cv-12838, 2022 WL 141666, at *9 (E.D. Mich. Jan. 14, 2022) (defendant failed to address the COVID tolling argument); *Mackey v. Rising*, No. 20-cv-13408, 2021 WL 4034226, at *2 (E.D. Mich. Sept. 3, 2021) (relying on Second Circuit precedent that specifically related to 42 U.S.C. §1983 claims, the court determined that federal courts borrow state tolling orders for those specific claims).

only available to individual plaintiffs, not absent class members. *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1808 (2018) (holding an absent class member's class claims "would not be preserved by the prior plaintiff's timely filed class suit" and making clear that tolling for absent class member claims, rather than just individual claims, would allow "limitless" tolling); *In re FCA US LLC Monostable Elec. Gearshift Litig*., 446 F. Supp. 3d 218, 224 (E.D. Mich. 2020) (Lawson, J.) (holding that while tolling may apply to a class member's individual claims, class tolling "cannot be applied to rescue untimely *class* claims") (emphasis in original).

For these reasons, COVID tolling should not apply and the motion for leave to amend should be denied because the action is untimely.[11]

### B. The Three-Year Limitations Period Applies, Rendering Plaintiff's Claims Time-Barred Even if Tolling were Permitted.

In any event, a three-year limitations applies here, so the case could not be saved by any theory of tolling. M.C.L. § 600.5805(2) provides that "the period of limitations is 3 years after the time of the death or injury for *all* actions to recover damages for the death of a person or for injury to a person or property." Michigan courts consistently apply Section 600.5805(2)'s three-year statute of limitations to

---

[11] If the Court allows the SAC to be filed based on COVID-tolling, only the named Plaintiff should be permitted to proceed and the class action allegations should be stricken. If the named Plaintiff is allowed to proceed, this Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367 because CAFA jurisdiction would no longer be met, and the case should be remanded to state court. *See, e.g., Horton v. Dow Jones*, 804 Fed. App'x 81, 85 (2d Cir. 2020).

common law privacy-based claims. *See, e.g., Green v. Lansing Automakers Fed. Credit Union*, No. 342373, 2019 WL 3812108, at \*5 (Mich. Ct. App. Aug. 13, 2019) (three-year limitation period applied to invasion of privacy, unlawful intrusion claim); *Derderian v. Genesys Health Care Sys.*, 689 N.W.2d 145, 159-60 (Mich. Ct. App. 2004) (three-year limitations period applied to invasion of privacy, false-light claim); *Arent v. Hatch*, 349 N.W.2d 536, 539 (Mich. Ct. App. 1984) (three-year limitations period applied to invasion of privacy claim).

Nevertheless, Plaintiff will contend that a PPPA claim should be subject to the catch-all six-year limitations period in M.C.L. § 600.5813 because the PPPA does not contain an express limitations period.[12] (ECF 17-1 ¶ 1 n.2.)  But there are decades of Michigan cases that have applied the three-year limitations in Section 600.5805(2) to statutory claims that, as here, allege injury to persons, even when the statute was otherwise silent on a limitations period. *See e.g.*, *Dabish v. McMahon*, 818 F. App'x 423, 427 (6th Cir. 2020) (three-year limitations period applies to claims brought under Michigan's Ethnic Intimidation statute, M.C.L. § 750.147b, a

---

[12] Although three judges in this District and one judge in the Western District of Michigan agree with Plaintiff's position, holding the "catch all" six-year limitations period under M.C.L. § 600.5813 applies to PPPA claims, there has yet to be a Sixth Circuit or Michigan Supreme Court holding on the applicable limitations period for a PPPA claim. *See Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-cv-11404, 2022 WL 469075 (E.D. Mich. Feb. 15, 2022) (Ludington, J.); *Hall v. Farm Journal, Inc.*, No. 2:21-cv-11811 (E.D. Mich. April 5, 2022) (Lawson, J.), ECF 26, slip op.; *Krassick v. Archaeological Inst. of Am.*, No. 2:21-cv-180, 2022 WL 2071730 (W.D. Mich. June 9, 2022) (Jarbou, J.); *Nashel*, 2022 WL 6775657.

specific right not found in common law); *Marks v. Hulstrom*, No. 294453, 2010 WL 2134303, at *1 (Mich. Ct. App. May 27, 2010) (applying Section 600.5805(2)'s limitations period to statutory nuisance claim under M.C.L. § 600.2940(1)); *McCree v. Cont'l Mgmt., LLC*, No. 351171, 2021 WL 1050115, at *7 (Mich. Ct. App. Mar. 18, 2021) (holding that the three-year limitations period applies to the Housing Act of Michigan and Truth in Renting Act).

Because a three-year limitations period properly applies to Plaintiff's claims, her original Complaint, filed in 2022, was untimely, and amendment would thus be futile.

## III.   Amendment Would Be Futile Because Plaintiff Inadequately Pleads Her Second Amended Complaint.

Even if she had timely sued the correct Defendant and her claims were not time-barred, Plaintiff's claims would still fail because she has not alleged facially plausible facts to support her claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]he Court will not presume the truth of

legal conclusions in the complaint." *Nashel*, 2022 WL 6775657 at *2. Importantly, "a complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (emphasis in original).

The proposed SAC is devoid of any actual facts supporting Plaintiff's allegations that NYM unlawfully disclosed her PRI in violation of the PPPA. To plead a claim under the PPPA, a plaintiff must allege facts that, if proved, would show both that (i) the defendant disclosed the relevant information about the plaintiff without the plaintiff's consent, and (ii) the information specifically identified the plaintiff to the party receiving that information. M.C.L. § 445.1712 (1989) (prohibiting disclosure "to any person, other than the customer, a record or information concerning the purchase . . . of [written] materials by a customer that indicates the identity of the customer"). In other words, Plaintiff must plead plausible facts demonstrating that, during some undefined time period in 2016, Defendant unlawfully disclosed her PRI—her full name, the specific title of the publication subscribed to, and her home address—to third parties. (ECF No. 17-1 ¶ 9.) But she has failed to adequately plead any such disclosure whatsoever.

Plaintiff's PPPA claims are broad and conclusory, cut and paste allegations, pled largely on information and belief, that NYM disclosed subscriber names and addresses to unnamed "data aggregators, data appenders, data cooperatives, and list

brokers . . . during the relevant pre-July 31, 2016 time period." (*Id.* at ¶ 1.) She does not substantiate this barebones statement, and thus fails to provide sufficient facts from which this Court could draw a plausible inference that NYM violated her rights under the PPPA prior to pre-July 31, 2016. *See Iqbal*, 556 U.S. at 678; *Nashel*, 2022 WL 6775657, at *4-6.

In *Nashel*, a PPPA action filed by Plaintiff's same counsel, Judge Murphy granted the defendant's motion to dismiss for failure to plead a plausible claim under the PPPA. *Id.* Just as Plaintiff attempts to do here with her citation to a 2022 data card published by a third party, the *Nashel* plaintiffs supported the allegations in their complaint with third-party data cards from a different time period. *Nashel*, 2022 WL 6775657, at *4 (submitting data cards from nearly a decade before the relevant 2016 time period). The *Nashel* plaintiffs went even further and made allegations about the defendant's privacy policy and cited a case study concerning the City of Virginia Beach's rental of a list of defendant's subscribers' email addresses. *Id.* at *4-6.

The *Nashel* court found that the "[p]laintiffs' allegations, even in light of that evidence, fail to clear the plausibility threshold." *Nashel*, 2022 WL 6775657, at *4. At best, Judge Murphy concluded that the plaintiffs' supporting allegations—the third-party data cards, the defendant's privacy policy, and the Virginia Beach case study—"create[d] only suspicion as to whether Defendant violated the PPPA during

the pre-July 31, 2016 period." *Id.* "[A] complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient." *Id.* (citing *Bishop*, 520 F.3d at 520). The plaintiffs did not appeal the *Nashel* decision.

Plaintiff's allegations here are weaker than in *Nashel*. The only piece of so-called "documented evidence" she relies upon is a 2022 third-party data card published by NextMark, similar to the one attached to the *Nashel* complaint. (ECF No. 17-1 ¶ 2, Ex. A.) Neither the timing nor the content of this data card supports her allegations that NYM violated the PPPA in the pre-July 31, 2016 time period. Indeed, Plaintiff's allegations regarding the subscriber data that NextMark purportedly offers for sale makes it clear that the alleged information is that of current subscribers in 2022. It says nothing about data or information pertaining to subscribers prior to July 31, 2016. Just as in *Nashel*, because the data card Plaintiff relies upon is from an irrelevant time period, it does not create any plausible inference of disclosure in the relevant pre-July 31, 2016 time period. *See* 2022 WL 6775657, at *4-6; *Iqbal*, 556 U.S. at 678. As in *Nashel*, Plaintiff's allegations rely "on a legal-conclusion inference" that NYM systematically and continuously violated the PPPA from 2022 backwards to 2016. 2022 WL 6775657, at *5. But this Court cannot "presume the truth of legal conclusions," and because "[Plaintiff] cannot otherwise account for the . . . time gap, the data cards make the complaint's

allegations merely possible rather than plausible." *Id.* (internal citation omitted) (emphasis in original).

Furthermore, the content of this data card does not plausibly establish that NYM violated the PPPA. The data card provides no suggestion as to what information was allegedly disclosed through the mailing list. (ECF No. 17-1 ¶ 2; Ex. A.) The data card merely purports to advertise that certain information about subscribers to *New York* magazine is available, without specifying what that information is—a necessary prerequisite to establishing that her PRI, pursuant to Plaintiff's own definition, was disclosed to anyone. (*Id.* ¶ 5.) Nor does the data card explain the source of any information about subscribers, meaning that there is no connection between the data card and any alleged conduct by NYM.

Just as the *Nashel* court found, "nothing on the data card[] explains how [NextMark] received [NYM's] subscription list" and it therefore "fail[s] to support a crucial element of [Plaintiff's] alleged action: that [NYM] engaged in the business of selling written material to disclose information personally identifying the customer." 2022 WL 6775657, at *5 (internal citation omitted). This is a "gaping omission" that requires a "large inferential leap" to connect NYM's alleged conduct to the data cards, and Plaintiff fails to "create a reasonable inference of [NYM's] culpability." *Id.*

Finally, Plaintiff alleges she saw a "barrage of unwanted" junk mail during the undefined relevant timeframe. (ECF No. 17-1 ¶ 1.) But she does not specify any causal connection between her subscription to *New York* magazine and junk mail. *See id*. There could be numerous reasons for such junk mail, all unrelated to NYM.[13] This implausible allegation cannot support Plaintiff's claims. *See Iqbal*, 556 U.S. at 678; *see also Nashel*, 2022 WL 6775657 at *1 (plaintiffs made same "uptick in junk mail" arguments, which did not sway the court).

Without factual allegations facially supporting the conclusion that NYM wrongfully disclosed Plaintiff's personal information to a third party, Plaintiff has not pled a valid claim under the PPPA. The Sixth Circuit has consistently found that bare allegations of purported disclosures are insufficient in cases alleging illegal disclosures of private information. *Fisher v. Perron*, 30 F.4th 289, 397 (6th Cir. 2022) (bare allegations of disclosure insufficient in case alleging disclosure of private information).

Plaintiff's allegations have not and cannot cross the "line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557 (internal citation omitted).

For these reasons, allowing Plaintiff to amend her Complaint would be futile.

---

[13] *See* ECF No. 17-1 ¶¶ 25, 39 (describing a vast "information marketplace" where "data aggregators purchase, trade, and collect massive databases of information about consumers" from "numerous offline and online sources.").

## IV. Plaintiff Should Not Be Rewarded For Her Lack Of Diligence, Resulting In Undue Delay And Prejudice.

Plaintiff relies on *Linna v. Ticket Fulfillment Servs., LP*, No. 20-CV-12200, 2020 WL 13577562 (E.D. Mich. Nov. 5, 2020), to argue that because she is merely amending to change the defendant, her motion should be granted. But *Linna* is not analogous. Here, unlike *Linna*, the Plaintiff knew or should have known she had the wrong defendant because the PPPA only applies to publishers. M.C.L. § 445.1712 (1989). *See, e.g., Halaburda v. Bauer Pub. Co., LP*, No. 12-CV-12831, 2013 WL 4012827, at *7 (E.D. Mich. Aug. 6, 2013) (the statute requires that PPPA defendants "are in the business of publishing magazines [or other written materials], and sell them to the ultimate consumer of the products"). Publicly available information shows that NYMH, the defendant in the FAC, is a holding company that did not and currently does not produce or sell anything, including *New York* magazine—instead, it owns interests in various media companies.[14] A simple Internet search would have shown Plaintiff that NYM published New York magazine. *See, e.g.*, https://en.wikipedia.org/wiki/New_York_(magazine);

https://web.archive.org/web/20160703221651/http://nymag.com/.

---

[14] *See* https://www.bloomberg.com/profile/company/279868Z:US#xj4y7vzkg (New York Media Holdings, LLC), *compare with* https://www.bloomberg.com/profile/company/2901670Z:US#xj4y7vzkg (New York Media, LLC).

Plaintiff here, unlike *Linna*, simply failed to exercise diligence. Moreover, Plaintiff did so knowing full well the looming outer limits for the statute of limitations under the pre-amendment PPPA. She should not be rewarded for that lack of diligence, which has resulted in a six-month delay of an already untimely lawsuit and which, if allowed to continue, will prejudice NYM in unnecessary expenditures of time and money, because, as discussed above, the SAC, like the FAC before it, is subject to dismissal on its face. *See Poole v. Valley Indus.*, No. 05-CV-74163-DT, 2006 WL 2883126, at *6 (E.D. Mich. Oct. 6, 2006) (finding that an amendment that is a product of undue delay and will require the expenditure of more unnecessary time and money on motion practice or other briefing prejudices a defendant).

## CONCLUSION

Accordingly, Plaintiff's motion for leave to amend should be denied.

Date: February 16, 2023                          Respectfully submitted,


                                                 /s/ *Kristen C. Rodriguez*
                                                 DENTONS US LLP
                                                 Kristen C. Rodriguez
                                                 Emily A. Golding
                                                 233 S. Wacker Drive, Suite 5900
                                                 Chicago, Illinois 60606-6404
                                                 Tel: (312) 876-8000
                                                 kristen.rodriguez@dentons.com
                                                 emily.golding@dentons.com

                                                 Deborah H. Renner

1221 Avenue of the Americas
New York, New York 10020-1089
Tel: (212) 398 5793
deborah.renner@dentons.com

CLARK HILL PLC
Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
151 South Old Woodward Avenue,
Suite 200
Birmingham, Michigan 48009
Tel: (248) 530-6336
pkupelian@clarkhill.com
cschley@clarkhill.com

*Counsel for Defendant*,
*New York Media Holdings, LLC*

## <u>Certificate of Service</u>

I hereby certify that on February 16, 2023, a copy of the foregoing document was filed electronically and served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

<u>/s/ *Kristen C. Rodriguez*        </u>
Kristen C. Rodriguez