# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ARLEEN KOSAK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEW YORK MEDIA HOLDINGS, LLC.<br><br>Defendant. | Case No. 2:22-cv-11850-MFL-EAS<br><br>Hon. Matthew F. Leitman |

**REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF
ARLEEN KOSAK'S MOTION FOR LEAVE TO AMEND TO FILE
<u>A SECOND AMENDED COMPLAINT</u>**

## STATEMENT OF ISSUES PRESENTED

1. Whether justice requires granting Plaintiff leave to amend her complaint where she mistakenly named the wrong entity as the defendant and seeks to substitute the correct entity promptly after discovering the error?

    **Plaintiff's Answer: Yes.**

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

- Federal Rule of Civil Procedure 15(a)(2)

- Federal Rule of Civil Procedure 15(c)

- *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010)

- *Tefft v. Seward*, 689 F.2d 637 (6th Cir. 1982)

- *Moore v. City of Paducah*, 790 F.2d 557 (6th Cir. 1986)

- *Ringrose v. Engelberg Huller Co.*, 692 F.2d 403 (6th Cir. 1982)

- *Linna v. Ticket Fulfillment Servs., LP*, 2020 WL 13577562 (E.D. Mich. Nov. 5, 2020)

- *State Farm Mut. Auto. Ins. Co. v. BMW of N. Am., LLC*, 2009 WL 2447574 (E.D. Mich. Aug. 7, 2009)

Plaintiff Arleen Kosak submits this reply to Defendant's Opposition[1] (("Opp.") ECF No. 18) to her Motion for Leave to Amend to File a Second Amended Complaint (("SAC") ECF No. 17).[2]

## ARGUMENT

**I.      FEDERAL RULE OF CIVIL PROCEDURE 15(A)(2) SETS FORTH A LIBERAL STANDARD FOR GRANTING LEAVE TO AMEND**

---

[1]   As a preliminary matter, New York Media Holdings, LLC ("NYMH") lacks standing to oppose Plaintiff's motion for leave to amend because, if the motion is granted, NYMH will no longer be a defendant in the case. It is well established that "[d]efendants only possess standing to oppose a motion to amend to add new parties on the grounds that they themselves will be unduly delayed or prejudiced by such an amendment." *Phillips v. Hinds*, 2020 WL 11029920, at *1 (W.D. Mich. Oct. 19, 2020) (citing *Chesler v. City of Jersey City*, 2019 WL 6318301, at *4 (D.N.J. Nov. 26, 2019) (listing cases). Because NYMH could not possibly suffer any undue prejudice or delay by the proposed amendment – and, instead, would actually be the biggest beneficiary of the proposed amendment – NYMH lacks standing to oppose the motion. The motion should be granted on this basis alone.

[2]   Plaintiff filed her Motion to Amend on February 2, 2023, within weeks of receiving Defendant's Motion to Dismiss (ECF No. 16, filed Jan. 12, 2023) and learning that Plaintiff mistakenly named Defendant New York Media Holdings, LLC in its First Amended Class Action Complaint (("FAC") ECF No. 6). Plaintiff seeks leave to amend to substitute the correct publisher, New York Media, LLC, ("NYM") as defendant. The substantive allegations otherwise remain the same.
Defendant's lengthy opposition to this garden-variety motion reads exactly like a motion to dismiss, which is improper for several reasons. For one thing, the Motion to Amend seeks to amend the complaint to remove, and effectively dismiss all claims against, NYMH – and to add another defendant, NYM, in its place. There is thus no basis for addressing the misguided arguments for dismissal raised in the opposition brief. Even if that were not the case, proper court process would be for NYM (not the current, mistakenly named defendant, NYMH) to wait for the Court to grant Plaintiff's motion for leave to amend and to then file its own Rule 12 motion. Defendant's gamesmanship threatens to prejudice Plaintiff, individually and on behalf of the proposed Class, because Defendant is attempting to force Plaintiff to reply to a full-blown 12(b)(6) motion to dismiss in the seven pages allotted to her.

Plaintiff seeks to bring her claims against the publisher and seller of *New York* magazine—New York Media, LLC ("NYM"). *See* Mot. at 1, ECF No. 17, PageID.1131. The proposed SAC alleges that NYM violated the PPPA by disclosing, without her consent, information that identified her as a subscriber to NYM's *New York* magazine.

Rule 15(a)(2) governs requests for leave to amend, setting forth a **liberal standard** for granting them "when justice so requires." Here, justice warrants granting leave to amend because amendment would allow the proper party to be substituted and for Plaintiff's PPPA claim to be adjudicated on the merits, which is the intent of Rule 15. *See Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982); *Broughton v. St. John Health Sys.*, 246 F. Supp. 2d 764, 775 (E.D. Mich. 2003). Further, courts in this District have found that justice requires that leave to amend be granted where the plaintiff seeks to substitute the correct defendant for a defendant erroneously named. *See, e.g.*, *Linna v. Ticket Fulfillment Servs., LP*, 2020 WL 13577562, at *1 (E.D. Mich. Nov. 5, 2020).

There are also no mitigating circumstances justifying a denial of leave to amend. First, it is well settled in the Sixth Circuit that leave to amend cannot be denied without "at least some significant showing of prejudice to the opponent." *Ziegler v. Aukerman*, 512 F.3d 777, 786 (6th Cir. 2008). Here, Plaintiff seeks to substitute NYM as the Defendant in place of NYMH. NYMH will only benefit, and

2

plainly could not suffer any prejudice, from its removal from the case. This should be the beginning and the end of the Court's analysis. *See Ziegler*, 512 F.3d at 786.

<u>Second</u>, even if the Court were to reach the issue, Plaintiff has not unduly delayed seeking amendment and is acting in good faith. Plaintiff moved to amend to substitute NYM in place of NYMH on February 2, 2023, within weeks of receiving Defendant's motion to dismiss on January 12, 2023 and for the first time learning that NYMH is not the proper defendant. <u>Third</u>, Plaintiff's proposed amendment is not futile because this action was timely filed and Plaintiff has alleged a strong PPPA claim against the entity who sold subscriptions to *New York* magazine to her and Class members during the relevant pre-July 31, 2016 time period, now known to be NYM.

## II.  PLAINTIFF'S CLAIM IS TIMELY AS IT IS GOVERNED BY A SIX-YEAR LIMITATION PERIOD THAT WAS TOLLED FOR 101 DAYS

Defendant argues that the proposed amendment would be futile because the claims alleged in Plaintiff's proposed SAC (which rests on the same underlying disclosure-related allegations as both the original complaint and the FAC) are time-barred by either a three-year or six-year statute of limitations ("SOL"). Opp. at 11, 23, PageID.1683, 1695.

First, it is well established that the six-year SOL in M.C.L. § 600.5813 governs a PPPA claim. *See, e.g., Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 673 (E.D. Mich. Feb. 15, 2022) (Ludington, J.). No court has ever decided this

3

question—i.e., whether a PPPA claim is governed by a six-year limitation period or a three-year period—in favor of the three-year period.

Moreover, the SOL was extended by 101 days from March 10, 2020, through June 20, 2020, pursuant to the COVID-19 Orders.[3] Courts in both Michigan District Courts have held that the COVID-19 Orders toll the SOL for Michigan state-law claims. *See, e.g.*, *Bownes v. Borroughs Corp.,* 2021 WL 1921066, at *2 (W.D. Mich. May 13, 2021) ("filers shall have the number of days [101] to submit their filings on

---

[3] *See* Mich. Executive Order 2020-58; Mich. Supreme Court Administrative Order 2020-3; *see also* Mich. Executive Order 2020-122; Mich. Supreme Court Administrative Order 2020-18 (collectively, "COVID-19 Orders"). Contrary to Defendant's argument that the COVID-19 Orders "only apply to deadlines" that fell during the state of emergency (Opp. at 17, PageID.1689)—they "more broadly excluded *any day* within the state of emergency[.]'" *Carter v. DTN Mgmt. Co.*, --- N.W.2d ----, 2023 WL 439760, at *3 (Mich. Ct. App. Jan. 26, 2023); *Linstrom v. Trinity Health-Michigan*, --- N.W.2d ----, 2023 WL 1482428, at *6 (Mich. Ct. App. Feb. 2, 2023) (same). Also, under Michigan law "the Governor's action [in issuing an Executive Order] has the status of enacted legislation." *Straus v. Governor*, 592 N.W.2d 53, 57 (Mich. 1999). "Pursuant to the Erie doctrine, state statutes of limitations must be applied by federal courts sitting in diversity." *Blaha v. A.H. Robins & Co.*, 708 F.2d 238, 239 (6th Cir. 1983). "Just as limitations periods are taken from state law, so are the rules regarding tolling." *Smith v. Hilliard*, 578 F. App'x 556, 562 (6th Cir. 2014). Thus, this Court is compelled to apply the COVID-19 Orders and find that the SOL was tolled from March 10 to June 20, 2020.

Furthermore, the U.S. Supreme Court's decision in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806 (2018), Opp. at 23, PageID.1695, has no applicability in this case because *China Agritech*'s holdings are limited to federal causes of action (this is because statutes of limitation and the tolling doctrines that go along with them are matters of state substantive law), and because even in that limited context, the decision's holdings are inapplicable unless the prior action was dismissed following a denial of class certification. Here, the statute is a Michigan state statute, and class certification was not denied, so *China Agritech* is not applicable.

4

June 20, 2020, as they had when the exclusion went into effect on March 23, 2020"); *Mackey v. Rising*, 2021 WL 4034226, at *2 (E.D. Mich. Sept. 3, 2021) (same).

Thus, any disclosures of Plaintiff's Personal Reading Information (PRI) that occurred between May 2, 2016[4] and July 30, 2016 (the last date that the unamended version of the PPPA which applies here was in effect) are actionable in this case.

### III. THE SAC ADEQUATELY ALLEGES THAT NYM DISCLOSED PLAINTIFF'S PRI IN VIOLATION OF THE PPPA AND THUS PLAINTIFF'S MOTION TO AMEND IS NOT FUTILE

Defendant further argues that Plaintiff, in the proposed SAC, "offers no facts whatsoever to support her sweeping allegations that NYM disclosed identifying information about any customer—much less the Plaintiff—at any time, let alone some undefined time in 2016." Opp. at 15, PageID.1687. The argument is without merit.[5]

The proposed SAC alleges that during the relevant pre-July 31, 2016 time period, NYM disclosed "time and time again" the PRI of its Michigan-based subscribers, including Plaintiff and Class members, to various third-parties,

---

[4] Six years is 2,190 days plus 101 days is 2,291 days. And the 2,291st day prior to August 10, 2022 (the date the original Complaint was filed) was May 2, 2016. *See Pratt*, 586 F. Supp. 3d at 675 n.6 (calculating SOL period the same way).

[5] Review of the SAC is governed by the liberal Rule 8 pleading standard. Plaintiff is not required to prove her claim with evidence at this time. She must merely allege facts that plausibly suggest the defendant violated the PPPA. *See, e.g.*, *Zimmerman v. 3M Co.*, 542 F. Supp. 3d 673, 681 (W.D. Mich. 2021).

5

including data appenders, data aggregators, list brokers, marketing companies, and many others. SAC ¶¶ 1-2, 5-7, 9, 41-48, 55-72. Their PRI was advertised by NYM for rental and exchange on the open market since as far back as 2015 and throughout the relevant pre-July 31, 2016 time period. *Id*.

Plaintiff bolsters these factual allegations by including a screenshot of a data card posted on data-broker Nextmark's website that offers renters access to the mailing list titled "New York Magazine Mailing List" which contains the PRI of all of NYM's "[s]ubscribers to New York magazine." SAC ¶ 2 & Ex. A. The data card entices renters to purchase this list by describing subscribers to *New York* magazine as "influential and affluent," "responsive" and "ideal prospects" for a range of renters like "consumer magazines and books, apparel and gift catalogs, credit card and financial offers, as well as non-profit appeals." *Id*. This data card indicates that the data is cumulative of all subscribers, with "COUNTS THROUGH 04/28/2022." *Id*. Numerous courts across the country, including in this District, have held such factual allegations sufficient to state a claim under the PPPA. *See, e.g.*, *Horton v. GameStop Corp.*, 380 F. Supp. 3d 679, 682 (W.D. Mich. 2018); *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 642 (E.D. Mich. 2017). The SAC goes further to allege that because of NYM's practices of disclosing Plaintiff's PRI during the relevant pre-July 31, 2016 time period, Plaintiff "received a barrage of unwanted junk mail" over the same time period. SAC ¶ 1. Taken together, these factual allegations—which are

well-pled and must be accepted as true—more than adequately state a claim for relief under the PPPA.[6]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant her leave to amend to substitute New York Media, LLC as the defendant in this action in place of New York Media Holdings, LLC.

Dated: February 23, 2023

Respectfully submitted,

/s/ *E. Powell Miller*
E. Powell Miller (P39487)
THE MILLER LAW FIRM, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248-841-2200
epm@millerlawpc.com

---

[6] Defendant relies heavily on *Nashel* and argues Plaintiff's facts are "virtually identical" to those in *Nashel*. Opp. at 27-30, PageID.1699-1702. This is wrong. First, unlike in *Nashel*, where the plaintiff's allegations of 2015-16 disclosures were unsupported by a data card that post-dated that timeframe, here the SAC includes a screenshot of the "New York Magazine Mailing List" on NextMark's website, which shows that NYM's practices of systematically disclosing all of its customers' PRI to third parties has persisted "through 04/28/2022," after the relevant pre-July 31, 2016 time period. SAC ¶ 2; *see also* Ex. A. Second, *Nashel* failed to address the plaintiffs' allegations–similar to those made by Plaintiff here in ¶ 1 of the SAC–that she saw an "uptick" in or "barrage" of "junk mail" in her mailbox that coincided with NYM's disclosures of her PRI to third parties during the relevant period. Moreover, every other court that presided over similar PPPA actions arising from substantially the same allegations as those made by Plaintiff here, has held that these allegations adequately stated a claim under the PPPA. *See, e.g.*, *Horton*, 380 F. Supp. 3d at 682 ("Given that GameStop possessed the *Game Informer* subscription information and that NextMark purported to sell that information, the implication that GameStop disclosed the information to NextMark or other data-mining companies passes the threshold of plausibility").

7

Joseph I. Marchese
Philip L. Fraietta
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, New York 10019
Tel: 646.837.7150
jmarchese@bursor.com
pfraietta@bursor.com

Frank S. Hedin
Arun G. Ravindran
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
fhedin@hedinhall.com
aravindran@hedinhall.com

*Counsel for Plaintiff and the Putative Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2023, I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

/s/ E. Powell Miller
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com