# EXHIBIT 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY BOZUNG,

    Plaintiff,

v.

    Case No. 1:22-cv-304

    Hon. Hala Y. Jarbou

CHRISTIANBOOK, LLC,

    Defendant.
_____/

## **OPINION**

This is a putative class action asserting violations of Michigan's Preservation of Personal Privacy Act (PPPA), Mich. Comp. Laws § 445.1711 (1989) (amended 2016) et seq. Before the Court is Defendant's Rule 12(b)(6) motion to dismiss the complaint. For the reasons herein, the Court will grant the motion.

### **I. BACKGROUND**

Defendant Christianbook, LLC is a Delaware company with its principal place of business in Massachusetts. It sells various "Christian themed products" online, including books and videos. (Def.'s Br. 1, ECF No. 19; Am. Compl. ¶¶ 12, 59, ECF No. 11.) Plaintiff Timothy Bozung is a Michigan resident who purchased a video, *The Drop Box*, from Defendant's predecessor, Christian Book Distributors Catalog, LLC. (Am. Compl. ¶ 11.) Bozung alleges that Christianbook (or its predecessor) later disclosed his "Private Reading, Listening, and Viewing Information" to a third party, in violation of the PPPA. (*Id.*) In other words, Christianbook disclosed information that identifies Bozung as a purchaser of *The Drop Box* video. (*Id.* ¶ 62.) Bozung alleges that, following Christianbook's disclosure, he received a "barrage of unwanted junk mail." (*Id.* ¶ 1.)

Until the PPPA was amended in July 2016, it prohibited "a person . . . engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings" from "disclos[ing] to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer." Mich. Comp. Laws § 445.1712 (1989). That version of the PPPA also entitled the customer to recover the following for a violation of the statute: "[a]ctual damages, . . . damages for emotional distress, or $5,000.00, whichever is greater," as well as "[c]osts and reasonable attorney fees." Mich. Comp. Laws § 445.1715 (1989). The amended version of the PPPA in effect today no longer provides for $5,000 in statutory damages; it requires plaintiffs to prove actual damages in order to recover under the statute. *See* Mich. Comp. Laws § 445.1715 (2016).

Bozung's claim relies on the earlier version of the PPPA. He alleges that Christianbook disclosed his information "during the relevant pre-July 30, 2016 time period[.]" (Am. Compl. ¶ 11.) In support of his claim, Bozung's complaint provides a screenshot of a "datacard" for sale by a list broker, NextMark, LLC. (*Id.* ¶ 2.) NextMark's datacard advertises the "Christianbook Catalog Buyers Mailing List" for sale "with counts through February 28, 2022." (*Id.*) Bozung also alleges that the "same" datacard with the "same rates," but with "a slightly different title," was advertised online "during the relevant pre-July 31, 2016, time period." (*Id.* ¶ 4.)[1] Bozung offers an expired link to a website that purportedly advertised this datacard in 2016. (*Id.* ¶ 4 n.3.)

---

[1] Bozung sometimes refers to the relevant time period as "pre-July *30*, 2016" and at other times refers to it as "pre-July *31*, 2016." (*See* Am. Compl. ¶¶ 11, 12.) The precise date makes no difference to the Court's analysis.

2

Bozung seeks statutory damages of $5,000 for each violation of the PPPA, and he intends to represent a class of other Michigan residents whose information was disclosed by Christianbook prior to July 31, 2016.

Christianbook moves to dismiss the complaint, arguing that it is untimely and fails to state a claim.

## II. LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff to make a "short and plain statement of the claim showing that the pleader is entitled to relief." The statement must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "[t]he plausibility standard . . . is not akin to a probability requirement . . . it asks for more than a sheer possibility" that the alleged misconduct occurred. *Id*. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). "[A] statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008).

When considering a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017). However, the Court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, or "formulaic recitations of the elements of a cause of action," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Courts are generally bound to consider only the complaint when resolving a motion to dismiss, but the Court may also consider "exhibits attached to the complaint, public records, items

appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

### III. ANALYSIS

Christianbook makes two primary arguments in its motion to dismiss. First, it argues that Bozung's complaint fails to state sufficient factual matter to give rise to a plausible PPPA claim. Second, Christianbook argues that a three-year statute of limitations applies to PPPA claims, meaning that Bozung's claim is untimely. A brief discussion of subject matter jurisdiction is warranted before addressing Christianbook's arguments for dismissal.

**A. Subject Matter Jurisdiction**

After Bozung filed his complaint, the Court ordered him to show cause why the Court should not dismiss the case for lack of subject matter jurisdiction. (7/8/2022 Order, ECF No. 14.) Bozung invokes the Court's diversity jurisdiction, which typically applies only when the parties are citizens of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1). Christianbook is a limited liability company. Ordinarily, the citizenship of a limited liability company is the citizenship of each of its members. *See Delay v. Rosenthal Collings Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). Bozung's complaint alleged Christianbook's citizenship by identifying Christianbook's principal place of business and state of incorporation, rather than the citizenship of each member of the limited liability corporation.

However, Bozung complied with the Court's order to show cause, noting that a different standard applies to class actions. For class actions, the diversity jurisdiction statute requires that "[a]ny member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(d)(2)(A). The statute also provides that "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under

4

whose laws it is organized." 28 U.S.C. § 1332(d)(10). A limited liability company is a type of unincorporated entity. *See Delay*, 585 F.3d at 1005. Accordingly, the citizenship provision in § 1332(d)(10) for unincorporated entities in class actions applies to LLCs. Bozung has therefore satisfied the diversity of citizenship requirement by alleging that he is a citizen of Michigan and that Christianbook is a citizen of Massachusetts, where it has its principal place of business, and of Delaware, the state under which it was organized.

For class actions, the diversity jurisdiction statute also requires that the amount in controversy exceed "$5,000,000, exclusive of interest and costs[.]" 28 U.S.C. § 1332(d)(2). Bozung alleges that the potential class has "thousands" of members, each of which would be entitled to at least $5,000 in statutory damages. (Am. Compl. ¶ 52.) With more than a thousand class members entitled to $5,000 each, the amount in controversy exceeds $5,000,000. Therefore, the Court is satisfied that it has subject matter jurisdiction over this case.

**B. Statute of Limitations for PPPA Claims**

Christianbook argues that Bozung's claim is untimely. It argues that the three-year statute of limitations in Mich. Comp. Laws § 600.5805(2) (for injury to a person or property) applies to PPPA claims, as opposed to the six-year statute of limitations in Mich. Comp. Laws § 600.5813 (the catch-all limitations period for personal actions). Under a three-year limitations period, Bozung's claim would be untimely. In short, Christianbook argues (1) that the three-year statute of limitations should apply because Bozung seeks to recover for injury to a person, and (2) that the privacy right enshrined in the PPPA is a common-law tort instead of a statutory one.

The Court has already considered arguments like those raised by Christianbook and has rejected them. In *Krassick v. Archaeological Institute of America*, 2022 WL 2071730 (W.D. Mich. June 9, 2022), this Court held that the six-year limitations period applies to PPPA claims. *Id.* at *5. The Court is not persuaded that it should reach a different result here.

5

As to Christianbook's first argument, the Court noted in *Krassick* that the Michigan Supreme Court "defined 'injury to person or property' by reference to traditional, common-law torts, rather than by reference to the type of losses suffered or the remedy sought." *Id.* at *4. Because a violation of the right to privacy protected by the PPPA is not a traditional, common-law tort, then § 600.5805 does not apply.

As to the second argument, although the privacy right created by the PPPA is "similar in kind to rights protected by the common-law tort of invasion of privacy, the *right to privacy in one's reading materials* is nonetheless a creation of statute; it did not exist under common law." *Krassick*, 2022 WL 2071730, at *3 (emphasis added). Consequently, the appropriate statute of limitations is found in § 600.5813, which applies to statutory causes of action where the underlying statute does not contain its own limitations period. *Id.* Other courts examining this issue have reached the same conclusion. *See, e.g.*, *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 675 (E.D. Mich. 2022); *Nashel v. N.Y. Times Co.*, No. 2:22-cv-10633, 2022 WL 6775657, at *4 (E.D. Mich. Oct. 11, 2022).

Christianbook cites cases that apply the three-year statute of limitations in § 600.5805(2) to "common-law invasion of privacy claims akin to [Bozung]'s PPPA claim." (Def.'s Br. 21 n.12, ECF No. 19.) Those cases are distinguishable because they all involve common-law torts rather than a statutory claim like the one at issue here. Thus, the six-year limitations period applies.

In addition, the Michigan Supreme Court tolled all Michigan statutes of limitations for 102 days during the COVID-19 pandemic in 2020. *See Carter v. DTN Mgmt. Co.*, No. 360772, 2023 WL 439760, at *3 & n.2 (Mich. Ct. App. Jan. 26, 2023) (discussing the Michigan Supreme Court's tolling orders and noting that they excluded the counting of days starting on March 10, 2020, until

6

June 20, 2020).[2]  That means the limitations period for Bozung's claim expired, at the latest, on November 9, 2022, which is six years and 102 days after July 30, 2016.  Because Bozung filed this action on March 31, 2022, his claim is timely on its face.

### C. Failure to State a Claim

Next, Christianbook argues that Bozung has failed to plead sufficient factual allegations, taken as true, to state a claim upon which relief can be granted.  The Court agrees.  Even when construing the allegations in the light most favorable to Bozung, they are not sufficient to cross the "line between possibility and plausibility." *Twombly*, 550 U.S. at 546.

Generally, to plead a viable claim under the prior version of the PPPA, Bozung must allege (1) that Christianbook possessed a "record or information" concerning the transaction of materials between Christianbook and Bozung, and (2) that Christianbook disclosed this information to a third party before July 30, 2016.  *See* Mich. Comp. Laws § 445.1712 (1989).  Christianbook challenges the sufficiency of the complaint as it relates to both of those elements.

#### 1. Timing of the Disclosure

First, Christianbook argues that Bozung fails to provide sufficient factual allegations to support a plausible inference that Christianbook disclosed his information when he claims it did.  In his complaint, Bozung alleges that Christianbook disclosed his information "during the pre-July 30, 2016 time period[.]"  (Am. Compl. ¶ 61.)  Similarly, he alleges that he purchased *The Drop Box* video "during the relevant pre-July 30, 2016 time period."  (*Id.* ¶ 11.)  As to timing, these allegations are fairly vague.  In his briefing, however, Bozung clarifies that he is referring to a time period from December 21, 2015, to July 30, 2016, ostensibly because the statute of limitations

---

[2] Bozung calculates the number of days tolled as 101, but June 20, 2020, is 102 days after March 10, 2020.

7

prevents him from asserting a claim that accrued before December 21, 2015. (*See* Def.'s Resp. Br. 17, ECF No. 24.)

The primary factual support for Bozung's assertion that Christianbook violated the PPPA is an image of NextMark's datacard from 2022, six years *after* the relevant time period. The image itself does not indicate that NextMark advertised the sale of customer information from 2016. In fact, it suggests otherwise. The datacard advertised information about Christianbook catalog "buyers" from "0-12 MO." and from "13-24 MO." (Am. Compl. ¶ 2.) And it indicates that this data is current "through 02/28/2022." (*Id.*) Notably, the total number of records for buyers from "0-12 MO." and from "13-24 MO." is nearly the same as the number in the "TOTAL UNIVERSE" of records, which suggests that NextMark's list only contains information about customers who made purchases in the 24 months before February 2022. It does not mention buyers from 2016 or earlier. Indeed, common sense suggests there would be less value in outdated information from years earlier.

Even assuming that NextMark's datacard advertised the sale of information about all Christianbook customers, including those from 2015 and 2016, Bozung's allegations require the Court to infer that, because *NextMark offered that information* for sale in 2022, *Christianbook disclosed it* to a third party sometime during the eight-month period from December 2015 to July 2016. While that may be *possible*, it is far from *plausible*. It is far more likely that Christianbook disclosed the data possessed by NextMark more recently. Without more facts, the half-decade time gap between NextMark's 2022 datacard and the alleged violation makes Bozung's allegations too speculative to infer that Christianbook disclosed Bozung's information before July 31, 2016.

A similar concern arose in *Nashel*. There, the plaintiff alleged PPPA violations by the defendant in 2016 based, in part, on the existence of two NextMark datacards, one from 2007 and

8

one from 2008.  *See Nashel*, 2022 WL 6775657, at *1.  The plaintiff also relied on the defendant's privacy policy from 2015 and a research study from 2020.  The research study implicated the defendant in a marketing strategy that included the disclosure of email lists.  Despite these facts, the court concluded that the allegations were not sufficient to state claim.  In particular, reliance on the datacards was problematic because they predated the relevant time period by eight and nine years, respectively.  *Id.* at *5.  Here, NextMark's datacard postdates the relevant time period by six years.

Bozung attempts to remedy the time gap by alleging that the "same 'datacard,' with the same rates shown above, was also publicly advertised by Defendant during the relevant pre-July 31, 2016 time period, with a slightly different title." (Am. Compl. ¶ 4.)  Bozung provides a link to the alleged datacard, but the link is broken. (*Id.*)  He alleges, without any apparent basis for doing so, that this link "was accessible during the relevant pre-July 31, 2016 time period[.]" (*Id.* ¶ 4 n.3.)  Of course, it makes no sense that a datacard from 2016 was the "same" as the one from 2022.  The latter is dated February 28, 2022, and would have contained different information than one from 2016.  Nor does it make sense that "Defendant" would have advertised such a card.  Bozung does not allege that Christianbook is a list broker like NextMark.  In short, the reader of Bozung's complaint is left to speculate about what information was advertised in the card from 2016.  Bozung's skeletal allegations do not permit a reasonable inference that a datacard like the one available in 2022 was also available in 2016.  His allegations on the matter amount to "'naked assertion[s]' devoid of 'further factual enhancement'" that do not suffice to state a claim.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Further, the Court notes that Bozung contends that all his allegations in the complaint are "based upon information and belief, except as to allegations specifically pertaining to himself and

9

his counsel, which are based on personal knowledge." (Am. Compl., PageID.582.) Bozung does not allege that he had personal knowledge of what a datacard showed in 2016, and it is not clear from the complaint how he would have possessed that knowledge. It is also not clear what facts lead him to conclude that Christianbook (or a list broker) advertised the sale of Christianbook's customer information in 2016. Thus, he ostensibly *believes* that this information was available for sale in 2016. But allegations based solely on belief "are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency." *16630 Southfield Ltd. P'ship*, 727 F.3d at 506. Likewise, they are not sufficient here.

Bozung attempts to buttress his allegations with facts obtained through discovery. (*See* ECF No. 31, PageID.1288-1289.) However, Christianbook's motion tests the sufficiency of his complaint. When assessing the sufficiency of a complaint, the Court generally cannot resort to matters outside of the pleadings without converting the motion into one for summary judgment. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). Accordingly, Bozung's information is not properly before the Court.

Bozung also relies upon a decision in *Briscoe v. NTVB Media Inc.*, No. 4:22-cv-10352 (E.D. Mich. Mar. 3, 2023), in which a magistrate judge concluded that a NextMark datacard from 2022—similar to the one here—was sufficient to infer that NextMark possessed the defendant's customer data from prior to July 31, 2016. (*See* ECF No. 48-1, PageID.1560-1561.) The Court disagrees with that conclusion for reasons discussed above.

In summary, Bozung's well-pleaded allegations do not suffice to create a plausible inference that Christianbook disclosed his information during the relevant time period.

10

## 2. Type of Information Disclosed

Christianbook argues that Bozing faces another problem. It argues that Bozung has not sufficiently alleged that the *type* of information purportedly disclosed by Christianbook was protected by the PPPA.

The prior version of the PPPA protected the "record or information concerning the purchase, lease, rental, or borrowing of *those materials* by a customer that indicates the identity of the customer." Mich. Comp. Laws § 445.1712 (1989) (emphasis added). By "those materials," the statute was referring to "books or other written materials, sound recordings, or video recordings." *Id.* The statute did not further define "information," but the statute's reference to "information concerning . . . *those materials*" indicates that the legislature intended to protect information about the particular books, recordings, or other materials selected by the customer. The caption to the PPPA supports this interpretation, stating that the PPPA intended "to preserve personal privacy with respect to the purchase, rental, or borrowing of *certain materials*[.]" 1988 Mich. Pub. Act No. 378 (emphasis added). Similarly, a 1989 Michigan House legislative analysis of the PPPA states that "[i]nformation – *such as selections made* – on a particular customer" would be protected under the statute. (Ex. C to Am. Compl., ECF No. 11-4.) The legislative analysis also references the public disclosure of a list of videotapes rented by Judge Robert Bork's wife and notes that "[m]any in Michigan also believe that *one's choice in videos, records, and books* is nobody's business but one's own[.]" (*Id.*, PageID.619 (emphasis added).) And in *Wheaton v. Apple Inc.*, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019), a district court examining the prior version of the PPPA concluded that a PPPA violation "only occurs when a customer's . . . *selection* is disclosed in connection with their personally identifying information." *Id.* at *4 (emphasis added); *see also Nashel*, 2022 WL 6775657, at *4 ("[T]he PPPA protects against a particular kind of invasion—the dissemination of one's *reading materials*, name, and address without consent."

(emphasis added)). Thus, in order to be liable under the PPPA, the defendant must have disclosed information identifying both the customer *and* the particular materials that the customer selected for purchase or rental.

In this case, NextMark's datacard states that it offered a "mailing list." As Bozung argues, it is reasonable to infer that such a list included customer names and mailing addresses. (*See* Pl.'s Resp. Br. 13, ECF No. 24.) But the next question is whether NextMark possessed data that also identified the specific materials that each customer purchased. Bozung attempts to address that issue by relying on his allegation that NextMark's mailing list "contains the Private Reading, Listening, and Viewing Information" of Christianbook's customers (Am. Compl. ¶ 2), but the complaint makes clear that this allegation is based on NextMark's datacard. (*See id.*) No other allegations in the complaint support any relevant inferences about the contents of the data in NextMark's possession. Consequently, unless the datacard itself supports Bozung's allegation, his allegation is simply a conclusion; it is not a well-pleaded allegation of fact.

Here, the datacard refers to different "segments" of customer data, three of which are described as containing lists of "BOOK BUYERS," "CHILDREN'S PRODUCT BUYERS," and "GIFTS & HOME PRODUCT BUYERS," respectively. (Am. Compl. ¶ 2.) The datacard also advertises the sale of lists containing "$25+ BUYERS," "$50+ BUYERS," and "$75+ BUYERS." (*Id.*) These descriptors provide the strongest indication that NextMark's database contained some information about the products purchased by Christianbook's customers. Although these descriptions identify only categories of products and what appear to be the total amounts of money spent by particular customers, it is plausible to infer that NextMark was able to provide this level of detail because its database contained the individual product transactions between Christianbook and its customers. In other words, it is plausible that NextMark possessed data about the particular

Case 2:22-cv-10834-MFL-KGA ECF No. 25-1, PageID.1761 Filed 03/06/23 Page 13 of 15

product selections by Christianbook's customers. Thus, Christianbook's argument is not persuasive.

### 3. Christianbook's Involvement in the Disclosure

Christianbook also challenges the sufficiency of Bozung's allegations regarding its involvement in the disclosure of Bozung's information. It argues that NextMark's offer to sell information about Christianbook's customers does not mean that *Christianbook* disclosed this information. That may be true, but Christianbook is almost certainly the one who initially gathered the information about its customer transactions, including the identity of its customers and the nature of their purchases. Because NextMark is now offering to sell that kind of information, it is reasonable to infer that Christianbook disclosed its information to a third party and that NextMark obtained its information because of that disclosure. *See Horton v. GameStop Corp.*, 380 F. Supp. 3d 679, 682 (W.D. Mich. 2018) ("Given that GameStop possessed the *Game Informer* subscription information and that NextMark purported to sell that information, the implication that GameStop disclosed the information to NextMark or other data-mining companies passes the threshold of plausibility.").

In short, Bozung has sufficiently alleged that Christianbook disclosed the product selections of its customers to a third party. However, Bozung fails to allege, beyond a mere possibility, that Christianbook's conduct occurred during the relevant time period. Accordingly, Bozung has failed to state a viable PPPA claim.

### IV. CONCLUSION

For the reasons discussed above, Bozung's complaint is timely. However, even when construing the complaint in the light most favorable to Bozung, he has failed to plead sufficient factual matter to support a plausible claim that Christianbook violated Bozung's rights under the

PPPA before July 31, 2016. Accordingly, the Court will grant Christianbook's motion and dismiss the complaint.

The Court notes that Bozung asks the Court to give him leave to amend his complaint, in the event the Court decides that his allegations are not sufficient. However, Bozung has already amended his complaint once in response to a similar motion to dismiss; it is not clear what additional allegations would save his claim. Furthermore, the Court generally does not consider a request to amend a complaint without a proposed amended complaint. *See* W.D. Mich. LCivR 5.7(f). Consequently, the Court will enter a judgment dismissing the case.

Christianbook asks the Court to dismiss the complaint with prejudice. At this stage, however, the Court cannot say that no amendment would be warranted, or that no amendment could save the complaint. Accordingly, the Court's dismissal will be without prejudice.

An order and judgment will enter in accordance with this Opinion.

Dated: March 6, 2023                    /s/ Hala Y. Jarbou
                                                  HALA Y. JARBOU
                                                  CHIEF UNITED STATES DISTRICT JUDGE