# Exhibit B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JEFFREY SCHREIBER,

    Plaintiff,

v.

Case No. 2:22-cv-188

Hon. Hala Y. Jarbou

MAYO FOUNDATION FOR MEDICAL
EDUCATION AND RESEARCH,

    Defendant.
_____/

## OPINION

This is a putative class action asserting violations of Michigan's Preservation of Personal Privacy Act (PPPA), Mich. Comp. Laws § 445.1711 et seq. (1989). Before the Court is Defendant's Rule 12(b)(6) motion to dismiss the amended complaint. For the reasons herein, the Court will deny the motion.

### I. BACKGROUND

According to the amended complaint, Defendant Mayo Foundation for Medical Education and Research publishes books and other literature, including the *Mayo Clinic Health Letter* magazine. Plaintiff Jeffrey Schreiber is a Michigan resident who subscribed to this magazine before July 31, 2016. (Am. Compl. ¶ 18, ECF No. 19.) Schreiber alleges that Mayo later disclosed his "Private Reading Information" to third parties, in violation of the PPPA. (*Id.* ¶ 13.) In other words, sometime before July 31, 2016, Mayo allegedly disclosed his name, address, and the fact that he subscribed to *Mayo Clinic Health Letter* without his knowledge or consent. (*Id.* ¶ 17.) After Mayo's disclosures, he allegedly received a "barrage of unwanted junk mail." (*Id.* ¶ 1.)

Until the PPPA was amended in July 2016, it prohibited "a person . . . engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings" from "disclos[ing] to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer." Mich. Comp. Laws § 445.1712 (1989). That version of the PPPA also entitled the customer to recover the following for a violation of the statute: "[a]ctual damages, . . . damages for emotional distress, or $5,000.00, whichever is greater," as well as "[c]osts and reasonable attorney fees." Mich. Comp. Laws § 445.1715 (1989). The amended version of the PPPA in effect today no longer allows for $5,000 in statutory damages; it requires plaintiffs to prove the amount of their actual damages. *See* Mich. Comp. Laws § 445.1715 (2016).

Schreiber's claim relies on the earlier version of the PPPA. He alleges that Mayo disclosed his information to "list brokers" and "data aggregators" "during the relevant pre-July 31, 2016 time period," when that version was still in effect. (Am. Compl. ¶¶ 1, 11.) In support of his claim, Schreiber's amended complaint provides a screenshot of a "data card" marketed by list broker NextMark, LLC. (*Id.* ¶ 2.) NextMark's data card advertised the sale of information from a "Mayo Clinic Health Letter Mailing List" with subscriber "counts through 07/19/2022," including approximately 450,000 "active US [subscribers]." (*Id.* ¶ 3.)

Schreiber also alleges that a "substantially similar" data card with the "same or similar rates" was advertised online "as far back as the beginning of 2005 and . . . on a continuous basis between 2005 and the present, including throughout the entire pre-July 31, 2016, time period[.]" (*Id.*) For example, a data card available online as of November 23, 2006, also advertised information from the "Mayo Clinic Health Letter." (*Id.* ¶ 4.) That data card advertised subscriber "counts through 10/31/2006," including almost 600,000 "active U.S. subscribers." (*Id.*)

2

In addition, an archived page from the website of RMI Direct Marketing, a list broker and data manager, states that Mayo "has been 'an RMI client since 2005,'" increasing Mayo's "multichannel marketing efforts" and testing its "mature list rental file[.]" (*Id.* ¶ 5.) RMI's current website advertises the sale of data from a list of over 600,000 subscribers to *Mayo Clinic Health Letter*. (*Id.* ¶ 7.)

Schreiber seeks statutory damages of $5,000 for each violation of the PPPA, and he intends to represent a class of other Michigan residents whose subscription information Mayo disclosed to other parties prior to July 31, 2016, without their knowledge or consent.

Mayo moves to dismiss the amended complaint, arguing that it fails to state a claim.

## II. LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff to make a "short and plain statement of the claim showing that the pleader is entitled to relief." The statement must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "[t]he plausibility standard . . . is not akin to a probability requirement . . . it asks for more than a sheer possibility" that the alleged misconduct occurred. *Id*. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). "[A] statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008).

When considering a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017). The Court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678,

3

or "formulaic recitations of the elements of a cause of action," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Court is generally bound to consider only the complaint when resolving a motion to dismiss, though the Court may also consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

### III. ANALYSIS

#### A. Subject Matter Jurisdiction

Before addressing merits of Mayo's motion, the Court will discuss its subject matter jurisdiction. For a putative class action like this one, the diversity jurisdiction statute requires that "any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(d)(2)(A). Here, Schreiber alleges that he is a resident and citizen of Michigan. He also alleges that Mayo is a citizen of Minnesota, where it is incorporated and where it has its principal place of business. (Am. Compl. ¶ 19.) Thus, the citizenship requirement has been met.

For class actions, the diversity jurisdiction statute also requires that the amount in controversy exceed "$5,000,000, exclusive of interest and costs[.]" 28 U.S.C. § 1332(d)(2). Schreiber alleges that the potential class has "thousands" of members, each of which would be entitled to at least $5,000 in statutory damages. (Am. Compl. ¶ 59.) With more than a thousand class members entitled to $5,000 each, the amount in controversy exceeds $5,000,000. Therefore, the Court is satisfied that it has subject matter jurisdiction over this case.

#### B. Failure to State a Claim

Mayo contends that Schreiber's complaint fails to state a claim. Generally, to plead a viable claim under the prior version of the PPPA, Schreiber must allege (1) that Mayo possessed

4

a "record or information" concerning Schreiber's purchase of reading materials from Mayo, and (2) that Mayo disclosed this information to a third party before July 30, 2016, without his consent. *See* Mich. Comp. Laws §§ 445.1712, 445.1713 (1989). There is an exception to the consent requirement where "the disclosure is for the exclusive purpose of marketing goods and services directly to the consumer" and the disclosing party "inform[s] the customer by written notice that the customer may remove his or her name at any time[.]" *Id.* § 445.1713.

### 1. Timing of Disclosures

First, Mayo argues that Schreiber fails to provide sufficient factual allegations to support a plausible inference that Mayo disclosed his information when he claims it did. In his amended complaint, Schreiber alleges that Mayo disclosed his information "during the pre-July 31, 2016 time period[.]" (Am. Compl. ¶ 1.) Similarly, he alleges that he subscribed to *Mayo Clinic Health Letter* "prior to July 31, 2016." (*Id.* ¶ 18.) As to timing, these allegations are fairly vague. Elsewhere, however, he clarifies that he is referring to a time period from June 18, 2016, to July 30, 2016, ostensibly because the six-year statute of limitations prevents him from asserting a claim that accrued before June 18, 2016. (*Id.* ¶ 1 n.1.)

As factual support for Schreiber's assertion that Mayo violated the PPPA, he provides images of data cards from 2006 and 2022, ten years before and six years after the relevant time period. The data cards indicate that their respective lists are current through 2006 and 2022, respectively, but they do not expressly advertise the sale of any information from 2016. Thus, Schreiber's allegations require the Court to infer that, because third parties offered Mayo's subscriber information for sale in 2006 and 2022, Mayo disclosed that information to a third party sometime during the six-week period from June 18 to July 30, 2016. Without more, the time gaps between the data cards and the alleged violation make Schreiber's claim somewhat tenuous.

5

A similar concern arose in *Nashel v. N.Y. Times Co.*, No. 2:22-cv-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022). There, the plaintiff alleged PPPA violations by the defendant in 2016 based, in part, on the existence of two NextMark data cards, one from 2007 and one from 2008. *See id.* at *1. The plaintiff also relied on the defendant's privacy policy from 2015 and a research study from 2020. The research study implicated the defendant in a marketing strategy that included the disclosure of email lists. Despite these facts, the court concluded that the allegations were not sufficient to state a claim. In particular, reliance on the data cards was problematic because they predated the relevant time period by eight and nine years, respectively. *Id.* at *5. Similarly, the data cards here are removed from the relevant time period by several years.

But in contrast to data cards in *Nashel*, the data cards here date from before *and after* the relevant time period, suggesting continuity of conduct by Mayo from 2006 to the present. In addition, the data cards indicate that their information is current as of 2006 and 2022, respectively. These facts suggest that the data brokers regularly updated the subscriber list before and after the relevant time period. Considered alongside RMI's mention of its long-term relationship with Mayo, as well as a web page from its current website advertising such information, the facts are sufficient to plausibly infer regular disclosures of Mayo's subscriber information from 2006 to the present, including disclosures in 2016.

Mayo faults the complaint for not identifying the specific date of Schreiber's initial subscription to the publication or the precise date that it purportedly disclosed Schreiber's information. That level of specificity is not necessary. Schreiber's allegations are more than sufficient to provide "fair notice" of the grounds for his claim, which is what Rule 8 requires here. *See Twombly*, 550 U.S. at 555.

6

### 2. Causation

Mayo argues that Schreiber faces another problem. It argues that he has not sufficiently alleged that Mayo is the one who disclosed his information. In other words, even if Next Mark or another third party sold information about subscribers to *Mayo Clinic Health Letter*, Mayo argues that such facts do not support a plausible inference that Mayo is the one that improperly disclosed this information to a third party. However, information about the identities of subscribers to Mayo's publication likely would have originated from Mayo. Consequently, if list brokers possessed that information, it is plausible to infer that Mayo was the original source. *See Horton v. GameStop Corp.*, 380 F. Supp. 3d 679, 682 (W.D. Mich. 2018) ("Given that GameStop possessed the *Game Informer* subscription information and that NextMark purported to sell that information, the implication that GameStop disclosed the information to NextMark or other data-mining companies passes the threshold of plausibility.").

### 3. Schreiber's Information

Finally, Mayo argues that the facts alleged are not sufficient to infer that Schreiber's own information was the subject of disclosure. The Court disagrees. If Mayo regularly disclosed information about thousands of its subscribers, as the data cards and other allegations suggest, it is plausible to infer that Schreiber's information was included in those disclosures.

In short, Mayo's arguments are not persuasive. Schreiber's allegations are sufficient to state a plausible claim under the PPPA.

### IV. CONCLUSION

For the reasons discussed above, Schreiber has pleaded sufficient factual matter to support a plausible claim that Mayo violated Schreiber's rights under the PPPA during the relevant time

7

period before July 31, 2016. Accordingly, the Court will deny Mayo's motion to dismiss the complaint.

An order will enter in accordance with this Opinion.

Dated: July 13, 2023  /s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE