# EXHIBIT 1

2023 WL 3766734
Only the Westlaw citation is currently available.
Court of Appeals of Michigan.

Dean COMPAGNER and Lorie Compagner, Plaintiffs-Appellees,

v.

Angela BURCH, PA-C, Timothy Rutkowski, M.D., Jennifer Anderson, PA-C, LH Partners
Sub, doing business as Lakeshore Health Partners, and Joel Veldhouse, M.D., Defendants,

and

Edward Maas, M.D., and Advanced Radiology Services PC, Defendants-Appellants,

and

Holland Community Hospital, doing business as Holland Hospital, Defendant-Appellee.

No. 359699
|
June 1, 2023, 9:00 a.m.

**Synopsis**
**Background:** Patient brought action against radiologist and hospital for medical malpractice related to review of patient's angiogram images and cancerous tumor in patient's lung. The Circuit Court, Ottawa County, denied defendants' motion for summary disposition and subsequently denied defendants' motion for reconsideration. Defendants appealed by leave granted.

**Holdings:** The Court of Appeals, Boonstra, J., held that:

Supreme Court's administrative orders that imposed exclusion period on filing deadlines during COVID-19 state of emergency applied to patient, tolling statute of repose for patient's claim of medical malpractice, but

Supreme Court's administrative order that imposed exclusion period on filing deadlines during COVID-19 state of emergency was invalid as not authorized by the constitution.

Affirmed.

K. F. Kelly, J., filed opinion concurring in part and dissenting in part.

**Procedural Posture(s):** On Appeal; Motion for Summary Disposition.

Ottawa Circuit Court, LC No. 21-006524-NH

Before: K. F. Kelly, P.J., and Boonstra and Redford, JJ.

**Opinion**

Boonstra, J.

*1 Defendants appeal by leave granted [1] the trial court's order denying defendants' motion for summary disposition under MCR 2.116(C)(7). [2] Because we are bound by this Court's decision in *Carter v DTN Mgt. Co.*, ––– Mich App ––––, ––––; ––– N.W.2d ––––, 2023 WL 439760 (2023) (Docket No. 360772), we affirm. However, for the reasons we will describe in this

opinion, we disagree with *Carter*'s determination that the Michigan Supreme Court had the constitutional authority to issue its Administrative Order (AO) No. 2020-3, 505 Mich cxxvii (2020) (AO 2020-3), [3] and but for *Carter* would hold that our Supreme Court did not have the constitutional authority to issue AO 2020-3 [4] and that plaintiffs' complaint was therefore untimely filed (after the expiration of the applicable statute of repose), and would reverse and remand for entry of summary disposition in favor of defendants. See MCR 7.215(J). We therefore call for the convening of a special panel under MCR 7.215(J)(3) to consider the conflict between our rationale and that of *Carter* relative to the constitutional validity of AO 2020-3. [5]

 **\*2**  We note in that regard that our Supreme Court recently had occasion to consider this Court's 2-1 order denying leave to appeal in *Browning v Buko*, unpublished order of the Court of Appeals, entered August 2, 2021 (Docket No. 356874), (JANSEN, J., dissenting), in which the defendants in a medical malpractice action argued that the plaintiff's claim was barred by the applicable statute of repose. The Supreme Court denied leave to appeal. However, Justice VIVIANO (joined by Justice ZAHRA), dissented and would have remanded to the Court of Appeals for consideration of whether various Supreme Court AOs were "invalid because they were an unconstitutional exercise of legislative power." *Browning v Buko*, ⸺ Mich ⸺, ⸺; 979 N.W.2d 196, 197, 201 (2022) (VIVIANO, J., dissenting) (concluding that the defendants "raise a solid argument that we lacked any legal basis for tolling the statutes and that doing so usurped the Legislature's power"). Contrary to *Carter*, we conclude that AO 2020-3 (and related AOs) were an unconstitutional exercise of legislative power and were therefore invalid.


## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On November 3, 2014, following an episode of vertigo, plaintiff Dean Compagner (Compagner) underwent a CT (computed tomography) angiogram of his head and neck at Holland Community Hospital. A component of the CT angiogram was an initial topographic (scout) image that, according to plaintiffs, extended to the chest. Plaintiffs contend that the scout image revealed a large opacity in the lower left side of the chest, but that defendant Edward Maas, M.D., [6] the radiologist who reviewed the angiogram images, made no mention of any radiographic abnormality in his report to the physicians who had ordered the angiogram.

On June 30, 2020, Dean underwent chest x-rays at Lakeshore Health Partners, and a cancerous tumor was discovered. In July 2020, Dean underwent surgery to remove the tumor. Additional procedures needed to be performed following the surgery. Dean was discharged in August 2020 but readmitted in October 2020 because of complications stemming from the surgery and subsequent recovery. He was advised that he would likely need a feeding tube for the rest of his life. He stopped working because of the physical limitations caused by many years of tumor growth and surgical procedures.

On December 4, 2020, plaintiffs served defendants with a notice of intent (NOI) to sue for medical malpractice. On June 9, 2021, plaintiffs filed a complaint in the Ottawa Circuit Court. Defendants subsequently moved for summary disposition under MCR 2.116(C)(7), arguing that plaintiffs' complaint was barred by the applicable six-year statute of repose. Plaintiffs argued in response that their complaint was timely because the statute of repose had been extended by AO 2020-3 and Administrative Order No. 2020-18, 505 Mich clviii (2020) (AO 2020-18). After a hearing on defendants' motion, the trial court entered an order denying summary disposition under MCR 2.116(C)(7), holding that plaintiffs' action was timely filed and not barred by the applicable statute of repose. [7] The trial court subsequently denied defendants' motion for reconsideration. This appeal followed. At oral argument we requested that the parties file supplemental briefs addressing recent pertinent caselaw; we entered an order authorizing the parties to submit supplemental briefing, [8] and the parties have done so.


## II. STANDARD OF REVIEW

**\*3** This Court reviews de novo a trial court's decision on a motion for summary disposition. *Ass'n of Home Help Care Agencies v DHHS*, 334 Mich App 674, 684, 965 N.W.2d 707 (2020). We also review de novo questions of constitutional law. *Id.* at 685, 965 N.W.2d 707. This Court likewise reviews de novo questions of law, such as whether a claim is barred by a statute of limitations, as well as the proper interpretation and application of the limitations period. *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 227-228, 859 N.W.2d 723 (2014). We review de novo questions concerning the interpretation and application of statutes. *McLean v McElhaney*, 289 Mich App 592, 596, 798 N.W.2d 29 (2010). "[T]he same legal principles that govern the interpretation of statutes also govern the interpretation of court rules." *Hubbard v Lisa Stier N.P.*, ⸺ Mich App ⸺; ⸺; ⸺ N.W.2d ⸺, 2023 WL 2334954 (2023) (Docket No. 357791), slip op. at 4. "Because our Supreme Court promulgates both court rules and its administrative orders, similar rules of construction should apply." *Id.*

A motion for summary disposition made on the basis that a plaintiff's claim is time-barred by either a statute of limitations or statute of repose is properly brought under MCR 2.116(C)(7). *Burton v Macha*, 303 Mich App 750, 755, 846 N.W.2d 419 (2014). When examining whether a motion for summary disposition brought under MCR 2.116(C)(7) was properly decided, the appellate court considers "all documentary evidence and accept[s] the complaint as factually accurate unless affidavits or other documents presented specifically contradict it." *Shay v Aldrich*, 487 Mich. 648, 656, 790 N.W.2d 629 (2010). "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred in an issue of law for the court." *Dextrom v Wexford Co*, 287 Mich App 406, 429, 789 N.W.2d 211 (2010). "However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate." *Id.*

## III. STATUTE OF REPOSE

Defendants argue that the trial court erroneously denied their motion under MCR 2.116(C)(7), because plaintiffs' complaint was time-barred under the applicable statute of repose. [9] Assuming, for this part of our analysis only, the constitutional validity of AO 2020-3 and AO 2020-18, and following *Carter*'s determination (notwithstanding certain underlying concerns that we will describe) that AO 2020-3 excluded from the computation of time under MCR 1.108(1) the full 102-day period from March 10, 2020 until the June 20, 2020 rescission of AO 2020-3 by AO 2020-18 (the exclusion period)—even with respect to deadlines that fell outside that period—we disagree.

## A. APPLICABLE TIME LIMITATIONS

A medical malpractice claim "accrues at the time of the act or omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." MCL 600.5838a(1). A plaintiff must bring a medical malpractice action within two years of the date the claim accrues, MCL 600.5805(8) and *Haksluoto v Mt Clemens Regional Med. Ctr.*, 500 Mich. 304, 310, 901 N.W.2d 577 (2017), "or within 6 months after the plaintiff discovers or should have discovered the existence of the claim," MCL 600.5838a(2), whichever is later. However, a plaintiff's ability to bring a medical malpractice action is further limited by the statute of repose, which provides that "the claim shall not be commenced later than 6 years after the date of the act or omission that is the basis for the claim." MCL 600.5838a(2); see also *Nortley v Hurst*, 321 Mich App 566, 572, 908 N.W.2d 919 (2017) ("The statute setting the deadlines for bringing a [medical] malpractice claim makes clear that the six-year period of repose caps the time for bringing a claim within six months of discovery.") *Id.*

**\*4** A plaintiff in a medical malpractice action is required to provide the defendants with written notice of intent to file a claim not less than 182 days before commencing the action. MCL 600.2912b(1). "At the time notice is given in compliance with the applicable notice period under section 2912b, if during that period a claim would be barred by the statute of limitations or repose," then "the statute is tolled not longer than the number of days equal to the number of days remaining in the applicable notice period after the date notice is given." MCL 600.5856(c).

B. SUPREME COURT ADMINISTRATIVE ORDERS

On March 23, 2020, our Supreme Court issued an AO 2020-3, "extend[ing] all deadlines pertaining to case initiation and the filing of initial responsive pleadings in civil and probate matters during the state of emergency" that was declared by the Governor on March 10, 2020. [10] AO 2020-3 read, in whole, as follows:

In light of the continuing COVID-19 pandemic and to ensure continued access to courts, the Court orders that:

For all deadlines applicable to the commencement of all civil and probate case-types, including but not limited to the deadline for the initial filing of a pleading under MCR 2.110 or a motion raising a defense or an objection to an initial pleading under MCR 2.116, and any statutory prerequisites to the filing of such a pleading or motion, any day that falls during the state of emergency declared by the Governor related to COVID-19 is not included for purposes of MCR 1.108(1).

This order is intended to extend all deadlines pertaining to case initiation and the filing of initial responsive pleadings in civil and probate matters during the state of emergency declared by the Governor related to COVID-19. Nothing in this order precludes a court from ordering an expedited response to a complaint or motion in order to hear and resolve an emergency matter requiring immediate attention. We continue to encourage courts to conduct hearings remotely using two-way interactive video technology or other remote participation tools whenever possible.

This order in no way prohibits or restricts a litigant from commencing a proceeding whenever the litigant chooses. Courts must have a system in place to allow filings without face-to-face contact to ensure that routine matters, such as filing of estates in probate court and appointment of a personal representative in a decedent's estate, may occur without unnecessary delay and be disposed via electronic or other means. [ 11 ]

On May 1, 2020, our Supreme Court issued an Amendment of Administrative Order 2020-3 (Amended AO 2020-3) by revising the fourth paragraph to add the language noted below in italics:

This order in no way prohibits or restricts a litigant from commencing a proceeding whenever the litigant chooses, *nor does it suspend or toll any time period that must elapse before the commencement of an action or proceeding.* Courts must have a system in place to allow filings without face-to-face contact to ensure that routine matters, such as filing of estates in probate court and appointment of a personal representative in a decedent's estate, may occur without unnecessary delay and be disposed via electronic or other means. [Amended AO-2020-3, 505 Mich cxliv, cxlv.]

On June 12, 2020, our Supreme Court issued AO 2020-18, which rescinded AO 2020-3 effective June 20, 2020, stating:

In Administrative Order No. 2020-3, the Supreme Court issued an order excluding any days that fall during the State of Emergency declared by the Governor related to COVID-19 for purposes of determining the deadline applicable to the commencement of all civil and probate case types under MCR 1.108(1). Effective Saturday, June 20, 2020, that administrative order is rescinded, and the computation of time for those filings shall resume. For time periods that started before Administrative Order No. 2020-3 took effect, the filers shall have the same number of days to submit their filings on June 20, 2020, as they had when the exclusion went into effect on March 23, 2020. For filings with time periods that did not begin to run because of the exclusion period, the filers shall have the full periods for filing beginning on June 20, 2020.

**\*5** *Staff Comment*: Note that although the order regarding computation of days entered on March 23, 2020, it excluded any day that fell during the State of Emergency declared by the Governor related to COVID-19, which order was issued on March 10, 2020. Thus, the practical effect of Administrative Order No. 2020-3 was to enable filers to exclude days beginning

March 10, 2020. This timing is consistent with the executive orders entered by the Governor regarding the tolling of statutes of limitation. [ 12 ]

C. RECENT CASELAW

As this Court noted when requesting supplemental briefing, several recent cases have addressed issues related to the computation of time and tolling of limitations or other time periods related to AO 2020-3 and 2020-18. These cases include *Wenkel v Farm Bureau General Ins Co of Mich*, ⸺ Mich App ⸺; ⸺ N.W.2d ⸺, 2022 WL 17364773 (2022) (Docket No. 358526); *Armijo v Bronson Methodist Hospital*, ⸺ Mich App ⸺; ⸺ N.W.2d ⸺, 2023 WL 324450 (2023) (Docket Nos. 358728, 358729); *Carter*; *Linstrom v Trinity Health-Michigan*, ⸺ Mich App ⸺; ⸺ N.W.2d ⸺, 2023 WL 1482428 (2023) (Docket No. 358487); and *Hubbard v Stier*, ⸺ Mich App ⸺; ⸺ N.W.2d ⸺, 2023 WL 2334954 (2023) (Docket No. 357791). All of these cases except *Wenkel* have applications for leave to appeal pending before the Michigan Supreme Court; *Wenkel's* application was recently denied. See *Wenkel v Farm Bureau General Ins Co of Mich*, ⸺ Mich ⸺; 988 N.W.2d 482 (2023).

In *Wenkel*, a unanimous panel of this Court held, in an action to recover personal injury protection (PIP) benefits [13] under an automobile insurance policy, that the Supreme Court's administrative orders did not toll the one-year-back rule embodied in MCL 500.3145(2). [14] *Wenkel*, ⸺ Mich App at ⸺; ⸺ N.W.2d ⸺ slip op. at 4-5. The Court noted that the one-year-back rule was a "damages-limiting provision," not a "deadline[ ] applicable to the commencement" of a civil action. *Id.* at ⸺; ⸺ N.W.2d ⸺ slip op. at 4 (citations omitted). It further stated:

> **\*6**  We interpret AO 2020-3 as tolling the statute of limitations for the commencement of actions and a concomitant tolling of the filing of responsive pleadings during the state of emergency. [*Id.* at ⸺; ⸺ N.W.2d ⸺ slip op. at 4.]

Shortly after we issued *Wenkel*, another panel of this Court issued *Armijo*, in which we held that the Supreme Court's administrative orders did not toll the 182-day NOI period in a medical malpractice action. [15] *Armijo*, ⸺ Mich App at ⸺; ⸺ N.W.2d ⸺ slip op. at 7. We observed that Amended AO 2020-3 clarified that AO 2020-3 did not "suspend or toll any time period that must elapse before the commencement of an action or proceeding," and that an NOI period is such a time period. *Id.* at ⸺; ⸺ N.W.2d ⸺ slip op. at 6, quoting Amended AO 2020-3. The *Armijo* Court noted that Amended AO 2020-3 reiterated that it "... intended to extend all deadlines pertaining to case initiation ... during the state of emergency ...." *Id.*, quoting Amended AO 2020-3. The Court further held that "[b]ecause [Amended AO 2020-3] clarified that the notice period continued to run and because the administrative orders by their language only applied to deadlines which took place during the state of the emergency," *id.* at ⸺; ⸺ N.W.2d ⸺ slip op. at 7, the plaintiff's claim was time-barred under the facts of that case. Judge RIORDAN fully concurred with the lead opinion in *Armijo*, but wrote separately to explain why "the constitutionality of [AO 2020-3 and AO 2020-18] warrants careful consideration by this Court in a future case." [16] *Armijo*, ⸺ Mich App at ⸺; ⸺ N.W.2d ⸺ slip op. at 2 (opinion by RIORDAN, J., concurring).

A week after our opinion in *Armijo* was issued, another panel of this Court decided *Carter*, a premises liability case. Notwithstanding the above-quoted language of *Wenkel* and *Armijo* to the effect that AO 2020-3 only applied to deadlines for filing case-initiation and responsive pleadings "during the state of emergency," the Court in *Carter* held the opposite, i.e., that the AO's "more broadly excluded *any day* within the state of emergency, '*for purposes of determining the deadline* applicable to the commencement of all civil and probate case types under MCR 1.108(1).' " *Carter*, ⸺ Mich App at ⸺; ⸺ N.W.2d

—— slip op. at 4, quoting AO 2020-18.[17] *Carter* further held that the AOs were constitutional, thus deciding the issue that was reserved for decision in *Armijo. Id* ——; —— N.W.2d —— slip op. at 6.

**\*7** The same panel that decided *Carter* then decided *Linstrom* a week later. In *Linstrom*, the Court applied *Carter*'s holding (that the AOs excluded all days within the state of emergency even when a deadline occurred outside the exclusion period) in the context of a medical malpractice action, and again opined that its conclusion was consistent with *Armijo. Linstrom,* —— Mich App at ——; —— N.W.2d —— slip op. at 7-9. Most recently, another panel of this Court decided *Hubbard*, in which the Court held, consistent with *Armijo* and the clarifying language of Amended AO 2020-3, that the AO's did not toll an NOI waiting period. *Hubbard*, —— Mich App at ——; —— N.W.2d —— slip op. at 6 (stating that "a mandatory NOI provision sets a clock ticking, not unlike a kitchen timer, that must elapse before litigation may be commenced").

### D. ANALYSIS

There is no dispute that the act or omission that is the basis for plaintiffs' medical malpractice action—relating to the review of CT angiogram images—occurred on November 3, 2014. Therefore, absent any tolling of the six-year statutory period of repose, plaintiffs' medical malpractice action could not have been commenced after November 3, 2020. MCL 600.5838a(2). Plaintiffs filed their complaint on June 9, 2021.[18]

There is also no dispute that the exclusion period defined by AO 2020-3 and AO 2020-18 was 102 days, from March 10, 2020 to June 20, 2020. However, defendants argue that the exclusion period does not factor into the determination of whether plaintiffs' complaint was timely filed because AO 2020-3 only tolled deadlines that expired *during* the exclusion period. That is, defendants contend that because the November 3, 2020 filing deadline (under the statute of repose), fell outside the exclusion period defined by AO 2020-3 and AO 2020-18, that deadline was unaffected by the Supreme Court's AOs. Defendants also argue that a statute of repose does not establish a deadline by which an action must be commenced; rather, defendants contend that a statute of repose establishes a date by which a claim is extinguished, and thus is akin to the one-year-back rule or the "ticking clock" of an NOI period. Defendants therefore argue that, under *Wenkel* and *Hubbard*, the AOs do not apply.

Taking the latter argument first, we disagree and hold that a statute of repose is a deadline by which an action must be commenced. Separate and apart from the applicable statute of limitations or any extension of it by the discovery rule, it establishes an outside deadline by which an action must be filed. Unlike an NOI period, it does not establish a period of time that must elapse before an action is filed. And unlike the one-year-back rule, it is not a damages-limiting provision. Because a statute of repose establishes a deadline for the filing of an action, the AOs by their terms apply, and defendants' reliance on *Wenkel* and *Hubbard* is inapposite.

The more difficult question relates to whether the AOs only apply to deadlines that fall within the exclusion period. That difficulty arises in part because of the muddied nature of the caselaw, with *Wenkel* and *Armijo* seemingly holding one thing and *Carter* holding another. As noted, this Court in *Wenkel* and *Armijo* interpreted the AOs as applying only to deadlines (for filing case-initiation or responsive pleadings) "during the state of emergency." *Wenkel,* —— Mich App at ——; —— N.W.2d —— slip op. at 4; *Armijo,* —— Mich App at ——; —— N.W.2d —— slip op. at 6-7. Nonetheless, the Court in *Carter* held to the contrary, relying in part on the its interpretation of AO 2020-18 (which rescinded AO 2020-3):

**\*8** AO 2020-18 establishes two categories of parties—one whose filings periods began to run before AO 2020-3 took effect on March 23, 2020, and one whose filing periods began to run on or after March 23, 2020. Plaintiff falls in the first category, and she therefore has "the same number of days to submit [her] filings on June 20, 2020, as [she] had when the exclusion went into effect on March 23, 2020." There is no language in AO 2020-18 limiting the first category to those whose filing deadline fell within the state of emergency. The second category identified by the Supreme Court also undermines defendant's interpretation of the administrative orders. That is, the second category concerns those whose time period did not begin to run because of AO 2020-3 and therefore could not have expired during the state of emergency. This demonstrates that all

litigants whose limitations periods had not expired prior to the adoption of AO 2020-3 were entitled to the exclusion of days under AO 2020-3. [*Carter*, ⸺ Mich App at ⸺; ⸺ N.W.2d ⸺ slip op. at 4.] [ 19 ]

We are troubled both by the arguably inconsistent manner in which the controlling, published caselaw has developed and by the fact that AO 2020-18—which *rescinded* AO 2020-3—employed language that appears to have facilitated an interpretation of AO 2020-3 (by this Court in *Carter*) that is inconsistent with the very language of AO 2020-3 itself (and with the earlier, published caselaw interpreting it). Arguably, AO 2020-18 and its interpretation by this Court in *Carter* effectively transformed an order—AO 2020-3—that by its terms indicated that it was intended to apply to deadlines "during the state of emergency" into one that would continue to apply to deadlines that fell well outside the state of emergency. [20]

Nonetheless, the state of the law is what it is, and we appear to be bound by *Carter* on this issue. Therefore, applying *Carter* to the facts of this case, we note that plaintiffs' filing period began to run before AO 2020-3 took effect; they thus are in the first category of parties to which AO 2020-18 refers. Consequently, under *Carter*, plaintiffs had "the same number of days to submit [their] filings on June 20, 2020 as [they] had when the exclusion went into effect on March 23, 2020." [21] *Id.*, slip op. at 4, quoting AO 2020-18. *Carter* specifically rejected the proposition that the exclusion period was limited to "those whose filing deadline fell within the state of emergency." *Id.* Accordingly, in light of *Carter*, we reject defendant's argument on that basis. MCR 7.215(J)(1). Excluding, under *Carter*, the 102 days of the exclusion period from the applicable statute of repose, and further applying the tolling of the statute of repose by the service of plaintiffs' NOI, plaintiffs' complaint was timely filed.


## IV. CONSTITUTIONAL VALIDITY OF ADMINISTRATIVE ORDERS

Defendants argue in the alternative that the Michigan Supreme Court did not possess the authority to issue AO 2020-3 and AO 2020-18. We agree. We are bound, however, by *Carter's* holding to the contrary. Consequently, we follow *Carter* on this issue, but only because we are required to do so, MCR 7.215(J)(1). But for *Carter*, we would hold that our Supreme Court did not have the constitutional authority to issue AO 2020-3 and AO 2020-18 and that plaintiffs' complaint was therefore untimely filed (after the expiration of the applicable statute of repose), and we would reverse and remand for entry of summary disposition in favor of defendants. Our rationale, and our reasons for disagreeing with *Carter*, follow.

**\*9** Initially, we note that this issue was first raised by defendants in their motion for reconsideration. When "an issue is first presented in a motion for reconsideration, it is not properly preserved." *Vushaj v Farm Bureau Gen. Ins Co of Mich.*, 284 Mich App 513, 519, 773 N.W.2d 758 (2009). But reviewing courts have the discretion to review such unpreserved issues in civil cases if "review would prevent manifest injustice, if review is necessary for proper resolution of the case, or if the issue involves a question of law and the facts necessary for determination have been presented," or if "declining to do so would result in a miscarriage of justice." *In re Conservatorship of Murray*, 336 Mich App 234, 240, 970 N.W.2d 372 (2021) (citations omitted). We conclude that this is an appropriate case in which to exercise our discretion. [22]

**\*10** We further note that the Court in *Carter*, ⸺ Mich App at ⸺; ⸺ N.W.2d ⸺ slip op. at 6, expressed (before proceeding to decide the constitutional issue) that it was "questionable whether this Court has the power to declare unconstitutional administrative orders of the Supreme Court." We conclude, to the contrary, that it is our duty to decide controlling legal questions that arise in appeals over which we have jurisdiction, including in this case the constitutional validity of the AOs. See MCR 7.203(A), (B); see also *Tingley v Kortz*, 262 Mich App 583, 588, 688 N.W.2d 291 (2004) (noting this Court's discretion to review controlling legal issues even if not raised by the parties on appeal); see also *Chicago & Grand Trunk R Co v Wellman*, 143 U.S. 339, 345, 12 S Ct 400, 36 L Ed 176 (1892) ("Whenever, in pursuance of an honest and actual antagonistic assertion of rights by one individual against another, there is presented a question involving the validity of any act of any legislature, State or Federal, and the decision necessarily rests on the competency of the legislature to so enact, the court must, in the exercise of its solemn duties, determine whether the act be constitutional or not; but such an exercise of power is the ultimate and supreme function of courts."). Moreover, were this Court to conclude otherwise, it could leave intact—and

effectively unreviewable—a decision of a lower court. And one might fairly wonder how a litigant might then preserve an issue (were we to decline to decide it) for consideration by our Supreme Court. See *People v Washington*, 508 Mich. 107, 129, 972 N.W.2d 767 (2021) (noting that "our jurisdictional rules plainly establish that the circuit court has original jurisdiction and the Court of Appeals has appellate jurisdiction"); MCR 7.303(B)(1); MCR 7.305; *Smith v Musgrove*, 372 Mich. 329, 337, 125 N.W.2d 869 (1964) (noting that reversible error must generally be an error made by the lower court). Regardless of what our decision might be, and just as with any other legal issue that we might decide, it is within the purview of our Supreme Court to then decide whether to grant an application for leave to appeal from our decision, MCR 7.305, and, were it to do so, to decide the issue in the exercise of its own legal judgment.

With regard to the substantive merits of the issue, we begin, of course, with basic principles underlying the separation of powers. Just as our federal government is constitutionally divided into three separate and co-equal branches of government,[23] so too is the government of the state of Michigan. See Const. 1963, art. 3, § 2 ("The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution."). Thus, "the legislative power of the State of Michigan is vested in a senate and a house of representatives," Const. 1963, art. 4, § 1, "the executive power is vested in the governor," Const. 1963, art. 5, § 1, and "the judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish ...," Const. 1963, art. 6, § 1.

These expressions are not merely structural niceties. Rather, they are fundamental to ensuring our very liberties.[24] It is therefore critical that we address the exercise of authority by one branch of government over matters that fall within the constitutional purview of another branch.[25] As our Supreme Court itself has recognized, "this Court cannot revise, amend, deconstruct, or ignore [the Legislature's] product and still be true to our responsibilities that give our branch only the judicial power." *In re Complaint of Rovas Against SBC Michigan*, 482 Mich. 90, 98, 754 N.W.2d 259 (2008) (citation and internal quotations omitted).

**\*11** It is within that constitutional context that we observe that it is within the constitutional purview of our Supreme Court to "by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state." Mich. Const. Art. 6 § 5. In furtherance of that authority, our Supreme Court adopted the Michigan Court Rules of 1985, see MCR 1.101 and staff comment to 1985 adoption, which became effective on March 1, 1985, MCR 1.102. "The Michigan Court Rules govern practice and procedure in all courts established by the constitution and laws of the State of Michigan." MCR 1.103.

It is within the constitutional purview of the Legislature, however, as the people's duly-elected representatives in the policy-making branch of government,[26] to enact the substantive law of the state. Indeed, whereas the judiciary's domain extends to matters of "practice and procedure," Mich. Const. Art 6 § 5, it is beyond debate that the "enactment of substantive law is "a valid exercise of the Legislature's public policy-making prerogative." *McDougall v Schanz*, 461 Mich. 15, 18, 597 N.W.2d 148 (1999). See also, *McDougall*, 461 Mich. at 52 n 18, 597 N.W.2d 148 (CAVANAGH, J., dissenting) (citing 1 Official Record, Constitutional Convention 1961, pp. 1291-1293, as demonstrating that there is "no dispute that the powers of the Supreme Court did not (and do not) extend to making substantive law") and 461 Mich. at 56 n 24, 597 N.W.2d 148 (CAVANAGH, J., dissenting) ("substantive law is the domain of the Legislature"). See also *People v Cornell*, 466 Mich. 335, 353, 646 N.W.2d 127 (2002) ("matters of substantive law are left to the Legislature").

While *McDougall* demonstrated that drawing the line between substantive law (a legislative prerogative) and procedural rules (a judicial prerogative) can be difficult in the context of the rules of evidence,[27] the same cannot be said in the context of statutes of limitation or repose, which fall squarely within the exclusive ambit of the Legislature. The Legislature thus has adopted the Revised Judicature Act, MCL 600.101 et seq., which established specific limitations periods, discovery periods, and periods of repose applicable to the filing of civil actions, as well as related conditions for the tolling of those periods.[28] See *Haksluoto*, 500 Mich. at 311-312, 901 N.W.2d 577 ("[T]he relevant sections of the [RJA] comprehensively establish limitations periods, times of accrual, and tolling for civil cases."); *Nielsen v Barnett*, 440 Mich. 1, 8-9, 485 N.W.2d 666 (1992) ("By enacting a

statute of limitations, the Legislature determines the reasonable period of time given to a plaintiff to pursue a claim. The policy reasons behind statutes of limitations include: the prompt recovery of damages, penalizing plaintiffs who are not industrious in pursuing claims, security against stale demands, relieving defendants' fear of litigation, prevention of fraudulent claims, and a remedy for general inconveniences resulting from delay ....") (citations omitted).

**\*12** Our Supreme Court has expressly held that "[s]tatutes regarding periods of limitations are substantive in nature." *Gladych v New Family Homes, Inc*, 468 Mich. 594, 600, 664 N.W.2d 705 (2003). [29] Further, "after *McDougall*, it is clear that, to the extent [a statute] enacts additional requirements regarding the tolling of the statute of limitations, the statute would supersede the court rule." *Id*. at 600-601, 664 N.W.2d 705. Those substantive matters of public policy, as set forth in the RJA, therefore fall solely and indisputably within the purview of the Legislature, not the judiciary.

That brings us to the context of the case before us, and to the intersection of a substantive legislative enactment (of a statute of repose and related tolling provisions) and a judicial adoption of a court rule regarding the computation of time. Defendants argue that our Supreme Court's issuance of AO 2020-3 effected a modification of statutes of limitation and repose and thus was an unconstitutional intrusion of judicial power into the legislative realm. Plaintiffs counter that AO 2020-3 did not alter statutes of limitation or repose, but merely altered the method of computing time for purposes of filing case-initiating or responsive pleadings under MCR 1.108(1). We agree with defendants, and thus conclude that AO 2020-3 was invalid and not constitutionally authorized, and that it therefore did not apply to toll statutes of limitation or repose.

There is no dispute in this case—and, as noted, the caselaw in any event conclusively establishes—that the Legislature's enactments regarding the statute of repose and related tolling conditions are matters exclusively within the constitutional province of the Legislature. [30] The pertinent question, therefore, is whether AO 2020-3 addressed matters that are purely within the Supreme Court's constitutional purview, i.e., addressing the "practice and procedure in all courts of this state," Mich. Const. Art. 6 § 5, or whether it unconstitutionally intruded into the legislative sphere.

**\*13** We note in this regard that plaintiffs argue that AO 2020-3 was "not a tolling provision" and "has nothing to do with tolling," but rather that it merely "amends the rules used to calculate when the statute of limitations or repose will run." We appreciate why plaintiffs feel compelled to attempt to draw that distinction; otherwise, plaintiffs would run headlong into a constitutional buzz-saw: the Legislature's substantive-law, policy-making enactments include the establishment of the conditions for tolling the statutes of limitation or repose. MCL 600.5856; *Haksluoto*, 500 Mich. at 311-312, 901 N.W.2d 577 ("[T]he relevant sections of the [RJA] comprehensively establish limitations periods, times of accrual, and tolling for civil cases."). Therefore, it becomes necessary to try to recast the effect of AO 2020-3 from that of "tolling" to merely "amend[ing] the rules used to calculate when the statute of limitations or repose will run."

Respectfully, what plaintiffs offer is at best a distinction without a difference—linguistic artfulness that ignores reality and creates an exception that would swallow the rule. It is also contrary to the very verbiage employed by the Governor, the Supreme Court's staff, and even the Supreme Court itself in crafting the EOs and AOs that are at issue. See, e.g., EO 2020-58 ("Consistent with [AO 2020-3], all deadlines applicable to the commencement of all civil and probate actions and proceedings ... are suspended as of March 10, 2020 and *shall be tolled* until the end of the declared states of disaster and emergency.") (emphasis added); Amended AO 2020-3 ("This order in no way prohibits or restricts a litigant from commencing a proceeding whenever the litigant chooses, *nor does it suspend or toll* any time period that must elapse before the commencement of an action or proceeding.") (emphasis added) [31]; AO 2020-18, Staff Comment ("Thus, the practical effect of Administrative Order No. 2020-3 was to enable filers to exclude days beginning March 10, 2020. This timing is consistent with the executive orders entered by the Governor regarding the *tolling of statutes of limitation*.") (emphasis added).

Plaintiffs further argue, citing *Brown v Porter*, 13 Mich App 6, 163 N.W.2d 709 (1968), [32] that this Court has already recognized that MCR 1.108(1) applies to statutes of limitation. We take no substantive issue with that assertion, at least insofar as *Brown*

considered the issue. [33] But we cannot abide plaintiffs' unsupported extrapolation of *Brown* to argue that it is therefore somehow "axiomatic" that the Supreme Court had the authority to issue AO 2020-3.

A close inspection of MCR 1.108 reveals the fallacy of plaintiffs' position. MCR 1.108(1) states in full:

In computing a period of time prescribed or allowed by these rules, by court order, or by statute, the following rules apply:

 **\*14**  (1) The day of the act, event, or default after which the designated period of time begins to run is not included. The last day of the period is included, unless it is a Saturday, Sunday, legal holiday, or day on which the court is closed pursuant to court order; in that event the period runs until the end of the next day that is not a Saturday, Sunday, legal holiday, or day on which the court is closed pursuant to court order.

For purposes of computing time, MCR 1.108(1) thus:

• excludes the "day of the act, event, or default"; and

• includes the "last day of the period"; unless

• the "last day of the period is a Saturday, Sunday, legal holiday, or day on which the court is closed pursuant to court order."

The first two computational rules are entirely unremarkable. Indeed, they simply embody the long-standing common law of time calculation. See, *People v Woolfolk*, 304 Mich App 450, 460, 848 N.W.2d 169 (2014), aff'd, 497 Mich. 23, 857 N.W.2d 524 (2014) ("Where the common law prevails, the general rule for the computation of time is to exclude the first and include the last day.") (citation omitted). [34]

The third computational rule is only slightly more remarkable. It simply provides that when the courts are closed—such that court filings cannot be made—the days of court closure (such as weekends and holidays) are not counted. Indeed, that was the full extent of this Court's holding in *Brown. Brown*, 13 Mich App at 10, 163 N.W.2d 709.

The plain, simple, and undeniable fact, however, is that courts largely remained open during the state of emergency declared in 2020, albeit certainly with adjustments and disruptions. Indeed, while the Supreme Court's AO 2020-1 (which was issued on March 15, 2020) authorized Michigan trial courts to implement emergency measures to protect the public and court personnel, trial courts in Michigan (including the Ottawa Circuit Court where this case was filed) generally continued to accept court filings. [35] See State Court Administrative Office, Lessons Learned Committee, *Michigan Trial Courts: Lessons Learned from the Pandemic of 2020-2021*, available at https://www.courts.michigan.gov/4afc1e/siteassets/covid/lessons-learned/final-report-lessons-learned-findings-best-practices-and-recommendations-111921.pdf (last accessed May 26, 2023), p. 15 (noting that "[o]f the courts surveyed, 70 percent accommodated some form of e-mail or fax filing, 20 percent utilized e-filing ... and 90 percent continued to use limited public access for filing, including a drop box, scheduled appointments, or limited hours"); see also 20th Judicial Circuit and Ottawa County Probate Courts, *Annual Report 2020*, available at www.miottawa.org/courts (last accessed May 16, 2023) at p. 3 (stating that Ottawa County courts "quickly pivoted" to heightened Covid procedures in 2020 "while maintaining current dockets and achieving compliance with most case processing time guidelines" and reporting new and reopened case filings throughout 2020). And AO 2020-1 further directed trial courts to "maximize the use of technology to facilitate electronic filing and service to reduce the need for in-person filing and service." The Ottawa Circuit Court was among the courts that successfully did so; indeed, "[t]he Circuit Court and the Ottawa County Clerk/Register's Office were early adopters of efiling technology and subsequently were selected as one of five pilot counties for the Michigan Supreme Court efiling project. Throughout 2020, court and clerk personnel continued to work with the State Court Administrative Office and ImageSoft, Inc. to establish a fully functional efiling portal, providing attorneys and litigants with the opportunity to remotely file documents in established cases." *Id.* at p. 18. [36]

**\*15**  Although plaintiffs posit that the Supreme Court's authority to issue AO 2020-3 axiomatically flowed from the limited, procedural time-computation tweaking that it adopted in MCR 1.108(1), nothing could be further from the truth. The minor, procedural effects of MCR 1.108(1) are minimal in nature, insignificant in temporal duration, designed purely to ensure that filings are not due when the courts are closed, and can properly be characterized as falling within the "practice and procedure" bailiwick of the Supreme Court. Const. 1963, art. 6, § 5. The effects of AO 2020-3, by contrast, are vast, indefinite in duration, purporting to apply throughout the entirety of a state of emergency period that was itself wholly undefined, potentially limitless, repeatedly extended, and bounded by nothing beyond the Governor's sole discretion (at least until such time as the Supreme Court itself declared her authority to be invalid and unconstitutional and her EOs to be without any basis in law). AO 2020-3 was of an entirely different scope and nature than is MCR 1.108(1), had the effect of drastically altering the legislatively-enacted statutes of limitation and repose (and related tolling provisions), and it accordingly impermissibly and unconstitutionally intruded on the Legislature's sole and exclusive authority to determine the substantive law of the state of Michigan.

*Carter* fares no better. Respectfully, its entire substantive analysis of this issue was as follows:

By its own terms, AO 2020-3 was modifying the computation of days under MCR 1.108 for purposes of determining filing deadlines, which is plainly a procedural matter. Further, even the normal application of MCR 1.108(1) may result in more time than permitted by the statute of limitations. That is, if the last day of the limitations period is a day on which the court is closed, the period runs until the next day that the court is open. See MCR 1.108(1). The law of counting time favors this approach, i.e., granting more rather than less than time to file than permitted by statute, to ensure that the parties receive the entire amount of time for filing that they are entitled to. See *Haksluoto v Mt. Clemens Regional Med. Ctr.*, 500 Mich. 304, 314-320, 901 N.W.2d 577 (2017). That is precisely what the Supreme Court was trying to accomplish with AO 2020-3, which was issued when there were court closings because of the COVID-19 pandemic.

Further, the Court was also clearly concerned with limiting in-person interactions and protecting court staff and the public from COVID-19. See AO 2020-3 ("Courts must have a system in place to allow filings without face-to-face contact ...."). It is therefore inaccurate to frame this issue as a dichotomous choice between substantive and procedural law. In addition to its authority over procedural rules, the Supreme Court has superintending control over all state courts. See Const. 1963, art. 6, § 4; *Lapeer County Clerk v Lapeer Circuit Judges*, 465 Mich. 559, 569, 640 N.W.2d 567 (2002). [ 37 ]  Thus, the Supreme Court had authority to manage the operations of Michigan courts amidst a global pandemic. And by excluding days from the computation of time under MCR 1.108, AO 2020-3 undoubtedly lessened the amount of in-person interactions at courts during the early stages of the pandemic. For these reasons, we conclude that the Supreme Court had constitutional authority to issue AO 2020-3.

**\*16**  Little more needs to be said. [38]  While the early days of the pandemic certainly were trying and filled with uncertainty, presenting challenges that had not been experienced in this nation in nearly a century, and while the Supreme Court's intentions were undoubtedly laudable, in retrospect its issuance of AO 2020-3 was plainly unconstitutional. [39]  Should this issue reach the Supreme Court, we respectfully suggest that it should acknowledge as much and similarly conclude. [40]  For all of the reasons already stated, *Carter* was wrongly decided; the Supreme Court did not have the constitutional authority to issue AO 2020-3 (or the related AOs). Plaintiffs' complaint was therefore untimely filed (after the expiration of the applicable statute of repose) and, but for *Carter*, we would reverse and remand for entry of summary disposition in favor of defendants. [41]

**\*17**  Affirmed, as required under *Carter*. We declare a conflict with *Carter* relative to the constitutional validity of the Supreme Court's AOs. MCR 7.215(J)(2). This case having raised issues that were at the time (pre-*Carter*) issues of first impression, no costs may be taxed by any party. See MCR 7.219(A).

K. F. Kelly, P.J. (concurring in part and dissenting in part).

While I agree with the majority's holding that *Carter v DNT Mgt. Co.*, ⸺ Mich App ⸺; ⸺ N.W.2d ⸺, 2023 WL 439760 (2023) (Docket No. 360772), controls the outcome of this case, and therefore concur in the majority's decision to affirm the trial court's order denying defendants' motion for summary disposition, I disagree with the majority's conclusion that the Michigan Supreme Court's Administrative Order ("AO") No. 2020-3, 505 Mich cxxvii (2020) ("AO 2020-3"), was an unconstitutional use of legislative power. Therefore, I respectfully dissent from the majority's conclusion that AO 2020-3 was unconstitutional or that a conflict should be called with *Carter* regarding the constitutional validity of AO 2020-3.

## I. BACKGROUND

The global outbreak of the coronavirus ("COVID-19") was "one of the most threatening public-health crises of modern times." [1] *In re Certified Questions from the United States Dist. Court, Western Dist. of Mich., Southern Div.*, 506 Mich. 332, 337, 958 N.W.2d 1 (2020). In response to the pandemic, on March 10, 2023, Governor Gretchen Whitmer issued Executive Order No. 2020-04, which declared a state of emergency within Michigan. Facing these directives, the Michigan Supreme Court subsequently issued AO 2020-3 on March 23, 2020, stating:

In light of the continuing COVID-19 pandemic and to ensure continued access to courts, the Court orders that:

For all deadlines applicable to the commencement of all civil and probate case types, including but not limited to the deadline for the initial filing of a pleading under MCR 2.110 or a motion raising a defense or an objection to an initial pleading under MCR 2.116, and any statutory prerequisites to the filing of such a pleading or motion, any day that falls during the state of emergency declared by the Governor related to COVID-19 *is not included for purposes of MCR 1.108(1)*.

This order is intended to extend all deadlines pertaining to case initiation and the filing of initial responsive pleadings in civil and probate matters during the state of emergency declared by the Governor related to COVID-19. Nothing in this order precludes a court from ordering an expedited response to a complaint or motion in order to hear and resolve an emergency matter requiring immediate attention. We continue to encourage courts to conduct hearings remotely using two-way interactive video technology or other remote participation tools whenever possible.

This order in no way prohibits or restricts a litigant from commencing a proceeding whenever the litigant chooses. *Courts must have a system in place to allow filings without face-to-face contact to ensure that routine matters, such as filing of estates in probate court and appointment of a personal representative in a decedent's estate, may occur without unnecessary delay and be disposed via electronic or other means.* [2] [Emphasis added.]

**\*18** The Supreme Court's decision to issue AO 2020-3 was plainly designed to limit, to the greatest extent possible, face-to-face contact between people within the courts during the outbreak while still ensuring litigants had access to the courts and judicial system. As we now know, COVID-19 is transmitted most efficiently when individuals come into close contact with each other. See Centers for Disease Control and Prevention, *About COVID-19* <https://www.cdc.gov/coronavirus/2019-ncov/your-health/about-covid-19.html> (last accessed May 17, 2023) ("COVID-19 spreads when an infected person breathes out droplets and very small particles that contain the virus."). Moreover, "only 24 percent [of surveyed courts] had a documented emergency plan or continuity of operations plan in place prior to the pandemic." State Court Administrative Office, *Lessons Learned Committee, Michigan Trial Courts: Lessons Learned from the Pandemic of 2020-2021* <https://www.courts.michigan.gov/4a4803/siteassets/covid/covid-19/lessonslearned.pdf> (last accessed May 17, 2023), p. 4. Faced with these unprecedented challenges and questions, each court had to consider issues

such as how long the shutdown would last; how long hearings and trials should be adjourned; how the court should handle deadlines previously set in a proceeding but expiring during the shutdown; whether statutory filing deadlines would be extended; and whether court efforts to substantially comply with

various mandated procedures under statute or Michigan Court Rules would be considered acceptable to SCAO and the Court as protecting procedural rights of parties during the shutdown. [*Id.* at 10.]

It was against this backdrop of confusion and lack of preparation that AO 2020-3 was issued.

AO 2020-3 was effective for 102 days. On June 12, 2020, the Michigan Supreme Court rescinded AO 2020-3, effective June 20, 2020, stating in AO 2020-18:

> In Administrative Order No. 2020-3, the Supreme Court issued an order excluding any days that fall during the State of Emergency declared by the Governor related to COVID-19 for purposes of determining the deadline applicable to the commencement of all civil and probate case types *under MCR 1.108(1)*. Effective Saturday, June 20, 2020, that administrative order is rescinded, and the computation of time for those filings shall resume. For time periods that started before Administrative Order No. 2020-3 took effect, the filers shall have the same number of days to submit their filings on June 20, 2020, as they had when the exclusion went into effect on March 23, 2020. For filings with time periods that did not begin to run because of the exclusion period, the filers shall have the full periods for filing beginning on June 20, 2020. [Emphasis added.]

Turning to the case at bar, plaintiffs' cause of action for medical malpractice accrued when the review of plaintiff Dean Compagner's angiogram occurred on November 3, 2014. But for AO 2020-3, the claim would have expired on November 3, 2020, under the statute of repose. See MCL 600.5838a(2) (stating that a medical malpractice claim "shall not be commenced later than 6 years after the date of the act or omission that is the basis for the claim"). Plaintiffs, however, did not serve defendants with their notice of intent to sue until December 4, 2020. Thus, absent AO 2020-3, plaintiffs' claim would be barred under MCL 600.5838a(2).

For its part, the trial court disagreed with defendants' arguments that plaintiffs' claim extinguished under the statute of repose. Accordingly, the trial court denied defendants' motion for summary disposition under MCR 2.116(C)(7), as well as defendants' motion for reconsideration, and this appeal followed.

## II. ANALYSIS

The majority concludes that *Carter* incorrectly held that AO 2020-3 was constitutional. According to the majority, "[b]ut for *Carter*, we would hold that our Supreme Court did not have the constitutional authority to issue AO 2020-3 and AO 2020-18 and that plaintiffs' complaint was therefore untimely filed (after the expiration of the applicable statute of repose) ...." This is so, the majority posits, because enactments of laws such as statutes of limitations and statutes of repose "fall squarely within the exclusive ambit of the Legislature." The infirmity with *Carter*, according to the majority, was the *Carter* Court's conclusion that AO 2020-3 was not a statute of limitations but rather was a modification to the method of counting days under MCR 1.108. See *Carter*, slip op. at 6.

**\*19** In *Carter*, the Court made the unremarkable observation that while the Michigan Supreme Court is constitutionally permitted to "establish, modify, amend, and simplify the practice and procedure in all courts of this state," the Supreme Court may not "issue orders or enact court rules that establish, abrogate, or modify the substantive law." *Id.* at 5 (quotation marks and citations omitted). The issue, therefore, for the Court in *Carter* was whether AO 2020-3 was a modification or amendment to

the state courts' practice and procedure or whether it was an abrogation or modification to substantive law. Concluding that AO 2020-3 fell within the former category, the Court stated:

> By its own terms, AO 2020-3 was modifying the computation of days under MCR 1.108 for purposes of determining filing deadlines, which is plainly a procedural matter. Further, even the normal application of MCR 1.108(1) may result in more time than permitted by the statute of limitations. That is, if the last day of the limitations period is a day on which the court is closed, the period runs until the next day that the court is open. See MCR 1.108(1). The law of counting time favors this approach, i.e., granting more rather than less time than [sic] time to file than permitted by statute, to ensure that the parties receive the entire amount of time for filing that they are entitled to. See *Haksluoto v Mt Clemens Regional Med. Ctr.*, 500 Mich. 304, 314-320, 901 N.W.2d 577 (2017). That is precisely what the Supreme Court was trying to accomplish with AO 2020-3, which was issued when there were court closings because of the COVID-19 pandemic. [*Id.* at 6.]

I agree with this holding in *Carter*.[3] Just as this Court proceeds with the well-established presumption that acts of the Legislature are constitutional, see *Keenan v Dawson*, 275 Mich App 671, 680, 739 N.W.2d 681 (2007), the same must be said for the Michigan Supreme Court's orders. The explicit language of AO 2020-3 makes it clear that the order modified the computation of days under MCR 1.108(1). I therefore begin with the presumption that AO 2020-3 means what it says and was, therefore, a constitutional exercise of its power to "establish, modify, amend, and simplify the practice and procedure in all courts of this state." Const. 1963, art. 6, § 5.

**\*20** This presumption cannot, of course, end the inquiry. While the practical effect of AO 2020-3, at its farthest limits, gave litigants an additional 102 days to file their claims, we only know this with the benefit of hindsight. This raises the fundamental issue with the majority's reasoning: it is backward-looking, examining the effect of AO 2020-3 from the benefit of two years of experience and hindsight. However, at the time AO 2020-3 was issued in March 2020, no one knew the breadth of the impact that COVID-19 would have on our court system. Many presumed the pandemic would run its course in a matter of days or weeks. Moreover, and perhaps more importantly, the courts across the state were simply unprepared to immediately facilitate faceless, electronic filings or remote hearings. While the majority observes that Ottawa County was a leader in the move toward electronic filings, the Michigan Supreme Court was, presumably, concerned not only with Ottawa County, but every county and court system within the state. It is also noteworthy that the majority carefully avoids making the sweeping assertion that *every* court was open to the public during the state of emergency, merely stating that "courts *largely* remained open during the state of emergency" and that trial courts "*generally* continued to accept court filings." (Emphasis added.) In other words, what of the courts that were not open, or that, for some period of time, could not accept court filings? I must presume that the Supreme Court, when issuing AO 2020-3, was considering those corner cases when crafting the order.

Contrary to the majority, I would conclude that AO 2020-3 was a proper exercise of the Michigan Supreme Court's constitutional power. The ability for litigants to access the courts was at issue, and the Court had a responsibility to ensure access. But even if I were to agree that AO 2020-3 was unconstitutional—it was not—I also disagree with the majority's remedy should *Carter* be overruled. According to the majority, "but for *Carter*, we would reverse and remand for entry of summary disposition in favor of defendants." Doing so would act as a great injustice to the lawyers and litigants around the state legitimately acting in reliance on orders issued by the Supreme Court in a time of chaos and uncertainty. In other words, under the majority's reasoning, AO 2020-3 should have been identified by every lawyer as unconstitutional and, as a result, would be obligated to not act in reliance on it. I cannot countenance a decision that would, in effect, say lawyers were perhaps constitutionally ineffective by relying on orders issued by the highest court in this state, whose responsibility it is to administer the state's court system.

Moreover, *Carter* is fully briefed before the Michigan Supreme Court on a pending application for leave to appeal. The same is true for *Armijo v Bronson Methodist Hosp.*, —— Mich App ——; —— N.W.2d ——, 2023 WL 324450 (2023) (Docket Nos. 358728, 358729). Thus, the issues raised by the majority are ripe for review by that Court and, if it wishes to declare AO 2020-3 unconstitutional, it is primed to do so. Accordingly, for this Court to declare a conflict with *Carter* at this juncture is unnecessary and would amount to little more than an advisory opinion on the matter.

Therefore, I concur with the majority's decision to affirm the order of the trial court denying defendant's motion for summary disposition, but dissent from the conclusion that AO 2020-3 was unconstitutional or that a conflict panel should be called.

**All Citations**

--- N.W.2d ----, 2023 WL 3766734

**Footnotes**

1       *Compagner v Angela Burch PA-C*, unpublished order of the Court of Appeals, entered July 1, 2022 (Docket No. 359699).

2       Defendants Angela Burch, PA-C; Timothy Rutkowski, M.D.; Jennifer Anderson, PA-C; Joel Veldhouse, M.D.; and LH Partners Sub d/b/a Lakeshore Health Partners are not parties to this appeal. Further, defendant Holland Community Hospital, although styling itself as an appellee, has advanced arguments on appeal in opposition to plaintiffs' arguments and in accord with the defendant-appellants' arguments. In this opinion, we will use the collective "defendants" to refer to defendant-appellants Edward Maas, M.D. and Advanced Radiology Services PC, as well as defendant-appellee Holland Community Hospital.

3       The Supreme Court issued AO 2020-3 after the Governor issued Executive Order (EO) No. 2020-4 on March 10, 2020 declaring a state of emergency in response to the COVID-19 pandemic.

4       To be clear, our references in this opinion to the constitutional validity of AO 2020-3 (and related AOs) are intended and should be understood to relate solely to the effects of the AOs on the applicable statutes of limitation and repose. Our opinion does not relate to other aspects of the AOs, the validity of which has not been challenged, e.g., encouraging courts to conduct hearings remotely and directing courts to "have a system in place to allow filings without face-to-face contact." AO 2020-3.

5       Our partially dissenting colleague suggests that because there is a pending application for leave to appeal before the Michigan Supreme Court in *Carter*, declaring a conflict with *Carter* is "unnecessary and would amount to little more than an advisory opinion on the matter." We respectfully disagree. To the contrary, we believe that our Supreme Court, in considering that application (and other pending applications), would benefit from having before it the alternate views expressed in *Carter* and in this case, and from having a conflict panel of the Court of Appeals weigh in as well.

6       Dr. Maas was an employee of Advanced Radiology Services PC who performed radiology services at Holland Community Hospital.

7       The trial court concluded that, after excluding 102 days from the statute of repose according to AO 2020-3 and AO 2020-18, and additional tolling resulting from the service of plaintiffs' NOI, see MCL 600.5856, plaintiffs had until August 14, 2021 to timely file their complaint. Without the time period added by the AOs, the statute of repose would have ended on November 3, 2020, a time 136 days after the emergency period addressed by the AOs had expired.

8    *Compagner v Angela Burch PA-C*, unpublished order of the Court of Appeals, entered March 16, 2023 (Docket No. 359699).

9    Unlike a statute of limitations, which generally begins running when a cause of action accrues, a statute of repose "is measured from some other particular event, such as the date of the last culpable act or omission of the defendant." *Frank v Linkner*, 500 Mich. 133, 142, 894 N.W.2d 574 (2017) (citation and internal quotation marks omitted).

10   Although issued on March 23, 2020, the parties agree that the exclusion period under AO 2020-3 began on March 10, 2020 because EO 2020-4 had declared that the state of emergency began on that date.

11   On April 23, 2020, after the Supreme Court had issued AO 2020-3, the Governor issued EO 2020-58, which provided that, "Consistent with [AO 2020-3], all deadlines applicable to the commencement of all civil and probate actions and proceedings ... are suspended as of March 10, 2020 and shall be tolled until the end of the declared states of disaster and emergency."

12   Simultaneously with the issuance of AO 2020-18, the Governor issued EO 2020-122, which similarly rescinded EO 2020-58 effective June 20, 2020. The Governor continued the COVID-19 state of emergency—through a series of EOs —through October 27, 2020. On October 2, 2020, the Supreme Court struck down the Governor's authority under the Emergency Management Act of 1976 (EMA) to renew her declaration of a state of emergency or state of disaster based on the COVID-19 pandemic after April 30, 2020, and it further struck down her authority under the Emergency Powers of the Governor Act of 1945, MCR 10.31 et seq. (EPGA), concluding that the EPGA was unconstitutional because it purported to delegate to the executive branch the legislative powers of state government. See *In re Certified Questions from the United States District Court, Western District of Michigan, Southern Division*, 506 Mich. 332, 958 N.W.2d 1 (2020). Regardless, because AO 2020-3 and EO 2020-58 were both rescinded (by the Supreme Court and the Governor, respectively) effective June 20, 2020, it is undisputed that the exclusion period at issue is the 102 days from March 10, 2020 to June 20, 2020.

13   As our Supreme Court noted in *Esurance Property & Casualty Ins. Co v Michigan Assigned Claims Plan*, 507 Mich. 498, 503 n 1, 968 N.W.2d 482 (2021) (citation and internal quotation marks omitted), "What are commonly called 'PIP benefits' are actually personal protection insurance (PPI) benefits by statute. MCL 500.3142. However, lawyers and others call these benefits PIP benefits to distinguish them from property protection insurance benefits."

14   The one-year back rule "is designed to limit the amount of benefits recoverable under the no-fault act, MCL 500.3101 et seq., to those losses occurring no more than one year before an action is brought." *Wenkel*, ——— Mich App at ———; ——— N.W.2d ——— slip op. at 4 (citation and internal quotation marks omitted).

15   As noted, under MCL 600.2912b(1), a medical malpractice plaintiff must give written notice of intent to sue at least 182 days before filing suit. Upon the giving of such notice, the statutes of limitations or repose are tolled if they would otherwise expire during the NOI period. MCL 600.5856(c).

16   Because the *Armijo* Court decided the case on narrower, non-constitutional grounds, the lead opinion opted not to address the issue of the constitutionality of the AOs. *Armijo*, ——— Mich App at ———; ——— N.W.2d ——— slip op. at 6.

17   The Court in *Carter*, while citing *Wenkel*, did not address the above-quoted language from *Wenkel*, but did state with regard to *Armijo*, "[t]o the extent *Armijo* indicated that the AOs applied only to limitations periods that expired during the state of emergency, those statements are nonbinding dicta ...." *Carter*, ——— Mich App at ———; ——— N.W.2d ——— slip op. at 5. A credible argument could be made that the panel in *Carter* should have followed *Armijo* and declared a conflict under MCR 7.215(J). See *Griswold Properties, L.L.C. v Lexington Ins. Co*, 276 Mich App 551, 563, 741 N.W.2d 549 (2007) (opinion by special conflicts panel) ("[A]n issue that is intentionally addressed and decided is not dictum if the issue is germane to the controversy in the case, even if the issue was not necessarily decisive of the controversy in the case."); see also *Carr v City of Lansing*, 259 Mich App 376, 384, 674 N.W.2d 168 (2003) ("[W]hen a court of last resort intentionally takes up, discusses and decides a question germane to, though not necessarily decisive of, the controversy,

such decision is not a dictum but is a judicial act of the court which it will thereafter recognize as a binding decision.") (internal quotation marks omitted); *People v Robar*, 321 Mich App 106, 117, 910 N.W.2d 328 (2017) (same).

18    Had plaintiffs filed their NOI on or before November 3, 2020, they would have had the 182-day NOI tolling period added, MCL 600.2912b(1), and could have filed their complaint as late as May 4, 2021; a time period 318 days after the end of the emergency period addressed by the AOs.

19    We note that *Carter* also quoted what it deemed to be the "pertinent part" of AO 2020-3, i.e., the language that referred to "all deadlines" and to the exclusion of "any day that falls during the state of emergency" from the computation of time for purposes of MCR 1.108(1). *Carter*, ––– Mich App at ––––, ––– N.W.2d ––––. However, *Carter* did not address the language of AO 2020-3 that stated that it was "intended to extend all deadlines ... *during the state of emergency.*" AO 2020-3 (emphasis added).

20    Indeed, Holland Community Hospital (citing to MCL 600.5851(7)) posits that, under *Carter*, "courts will be addressing this COVID tolling issue for the next decade given [that] infant medical malpractice plaintiffs have until their tenth birthday to file."

21    Again, as noted, the exclusion period actually began on March 10, 2020.

22    We note that this Court has at other times applied the plain-error standard of review to unpreserved issues in civil cases. See, e.g., *Demski v Petlick*, 309 Mich App 404, 426-427, 873 N.W.2d 596 (2015). This Court has also noted that although our Supreme Court has held that we must review unpreserved errors in criminal cases for plain error affecting the defendant's substantial rights, it has not established a similar rule for civil cases in which an issue is raised for the first time on reconsideration or on appeal. *In re Conservatorship of Murray*, 336 Mich App at 240, 970 N.W.2d 372. We conclude that our analysis would not change regardless of whether the issue is considered under our discretionary standard of review or whether our review is for plain error affecting substantial rights. However, we note the differing approaches to this issue in the hope that our Supreme Court might offer its guidance on the matter.

23    See U.S. Const., arts I-III.

24    See, e.g., *Michigan Alliance for Retired Americans v Secretary of State*, 334 Mich App 238, 264-265, 964 N.W.2d 816 (2020) (BOONSTRA, J., concurring) ("The genius of our Founding Fathers in establishing a system of three separate and co-equal branches of government was in recognizing that it is the checks and balances of such a system that serve to preserve our liberty. As [ ] recently observed in *Slis v State of Michigan*, 332 Mich App 312, 378, 956 N.W.2d 569 (2020) (BOONSTRA, J., concurring), preservation of liberty 'is why legislatures enact laws, and why it is up to the executive to sign them (or not). And it is why the judiciary defers to the legislature on matters of public policy.' Without question, such a system creates certain inefficiencies in government.... But those inefficiencies are there by design; they are the natural and intended consequence of our system of checks and balances. And those inefficiencies are therefore the price we willingly pay so that we may live under the banner of freedom in the United States of America." And, we might add, to live in the state of Michigan.

25    We observe that "[s]ometimes it is the executive branch that engages in governmental overreach.... And sometimes the legislature is perhaps unwittingly complicit in executive overreach. See *In re Certified Questions*[, *supra*] (holding that the [EPGA] 'is an unlawful delegation of legislative power to the executive branch in violation of the Michigan Constitution,' and accordingly that 'the executive orders issued by the Governor in response to the COVID-19 pandemic now lack any basis under Michigan law')." *Michigan Alliance*, 334 Mich App at 265, 964 N.W.2d 816 (BOONSTRA, J., concurring). But "judicial overreach is just as pernicious as executive overreach." *Id.* at 264, 964 N.W.2d 816.

26    See *People v Harris*, 499 Mich. 332, 332, 358, 885 N.W.2d 832 (2016) ("[I]n our democracy, a legislature is free to make inefficacious or even unwise policy choices. The correction of these policy choices is not a judicial function as long as the legislative choices do not offend the constitution. Instead, the correction must be left to the people and the

tools of democracy: the ballot box, initiative, referendum, or constitutional amendment.") (quotation marks and citation omitted).

27    *McDougall* addressed "whether MCL 600.2169 ..., which provides strict requirements for the admission of expert testimony in medical malpractice cases brought against specialists, impermissibly infringes [the Supreme] Court's exclusive authority under Const. 1963, art. 6, § 5, to promulgate rules governing practice and procedure in Michigan courts." *McDougall*, 461 Mich. at 18, 597 N.W.2d 148. MCL 600.2169 included more stringent expert-qualification requirements than did Michigan Rule of Evidence 702. The Court held that the statute and the rule conflicted, that the statute was a legislative enactment of substantive law, and that the statute did not impermissibly infringe on the Court's constitutional rule-making authority over "practice and procedure." *Id.* at 37, 597 N.W.2d 148.

28    These include, in the medical malpractice context: (1) a two-year statute of limitations, MCL 600.5805(8); (2) a six-month "discovery" period, MCL 600.5838a(2); (3) a six-year statute of repose, *id.*; and (4) conditions for tolling the statutes of limitation or repose, MCL 600.5856.

29    The Supreme Court in *Gladych* expressly overruled an earlier decision, *Buscaino v Rhodes*, 385 Mich. 474, 480-483, 189 N.W.2d 202 (1971), which had held that statutes of limitations generally were considered to be procedural and that the court rules controlled over statutory tolling requirements. The Court in *Gladych* explained that "the inherent flaw in the *Buscaino* analysis lies in the fact that *Buscaino* was not concerned with the plain language of the statute" and that *Buscaino* adopted a strained statutory interpretation in order to avoid an apparent conflict with a court rule. *Gladych*, 468 Mich at 599-600, 664 N.W.2d 705. Moreover, *Buscaino* came before the clarification-by-consensus in *McDougall* that statutory enactments regarding matters of public policy are substantive in nature and that they control over a procedural court rule. See *id.* at 600, 664 N.W.2d 705 ("This Court has since clarified the distinction between statutes regarding matters of "practice and procedure" and those regarding substantive law in *McDougall* .... If the statute concerns a matter that is purely procedural and pertains only to the administration of the courts, the court rule would control.... If, however, the statute concerns a principle of public policy, having as its basis something other than court administration ... the [court] rule should yield.") (citations and internal quotation marks omitted).

30    Indeed, plaintiffs expressly acknowledge that "The legislative branch has the power to enact substantive laws.... This includes enacting statutes of limitation, statutes of repose, and tolling statutes."

31    By adding the language clarifying that AO 2020-3 did *not* suspend or toll time periods that must elapse before filing suit, Amended AO 2020-3 implicitly acknowledged (as had the Governor) that AO 2020-3 *did* toll other affected time periods.

32    Decisions of this Court issued before November 1, 1990 are not binding on future panels of this Court, although they may be considered for their persuasive effect. See MCR 7.215(J)(1); see also *In re Stillwell Trust*, 299 Mich App 289, 299 n 1, 829 N.W.2d 353 (2012).

33    The Court in *Brown* actually considered a predecessor court rule, GCR 1963,108.6, the text of which largely corresponded to that found in present-day MCR 1.108(1). The parties in *Brown* were involved in an automobile accident on December 25, 1962. A three-year statute of limitations applied to the plaintiffs' personal injury claim, meaning that the statute of limitations would expire on December 25, 1965. That date, of course, was Christmas Day. The following day was a Sunday. The courts were closed on both of those days. Plaintiffs filed suit the next day, Monday, December 27, 1965. *Brown* held, applying GCR 1963,108.6, that the filing was timely.

34    The Court in *Woolfolk* contrasted the common law of time calculation with the common law of age calculation. *Woolfolk*, 304 Mich App at 460-475, 848 N.W.2d 169.

35    Plaintiffs do not contend otherwise or provide any support for concluding that the Ottawa Circuit Court was closed at any time during the exclusion period, or that there was any inability to make court filings during that time. Plaintiffs simply generally assert that "[d]uring the State of Emergency and the Governor's stay at home orders, the lives and businesses of Michigan citizens were substantially disrupted. The Courts and various businesses were closed. People

were avoiding hospitals and physicians [sic] offices. The ability to conduct any business was extraordinarily difficult and substantially delayed."

36     Our partially dissenting colleague asks, "what of the courts that were not open, or that, for some period of time, could not accept court filings," and then "presumes" that our "Supreme Court, when issuing AO 2020-3, was considering those corner cases when crafting the order." To be clear, we are not suggesting that the Supreme Court could not have suspended days from the computation of time under MCR 1.108(1) if and where courts actually were closed under court order, or that our Supreme Court could not have itself ordered that all courts be closed. But it did neither. And AO 2020-3 by its terms was in no way limited to "corner cases" in which courts were closed or unable to accept court filings. Instead, it effectively extended statutes of limitation and repose for all litigants in all courts, regardless of the circumstances.

37     We note that *Carter's* reference to the Supreme Court's power of superintending control is misplaced. The Supreme Court's power of superintending control over lower courts is the power to direct that court's actions in certain limited circumstances. "Superintending control is an extraordinary remedy generally limited to determining whether a lower court exceeded its jurisdiction, acted in a manner inconsistent with its jurisdiction, or failed to proceed according to law." *In re Credit Acceptance Corp*, 273 Mich App 594, 598, 733 N.W.2d 65 (2007). Although superintending control "is the proper vehicle to challenge the general practices of an inferior court," *In re Lafayette Towers*, 200 Mich App 269, 272, 503 N.W.2d 740 (1993), "[f]or superintending control to lie, the plaintiff must establish that the defendant has failed to perform a clear legal duty and that plaintiff is otherwise without an adequate legal remedy." *Credit Acceptance Corp*, 273 Mich App at 598, 733 N.W.2d 65. The AOs at issue were not issued in response to a legal challenge to a lower court's general practices, or after a finding that the courts had failed to perform a clear legal duty.

38     We note that plaintiffs do not argue, nor did the Court in *Carter*, that the doctrine of equitable tolling applies. Therefore, we will not address the issue in depth. We merely note (and abbreviate) Justice VIVIANO's sound analysis in *Browning*:

> [O]ur court rules and orders cannot trump a statute of limitations. And since nothing in the relevant statutory framework allows for the tolling that occurred here, the only potential grounds for the tolling order is under our equitable powers. But equitable tolling has been largely discredited. We have noted that the equitable power "has traditionally been reserved for 'unusual circumstances ....' " "Equitable tolling is typically available only if the claimant was prevented in some extraordinary way from exercising his or her rights." A pandemic during which the courts remain open to receive filings would not fit that bill and, unsurprisingly, it does not appear that our broad tolling orders have any historical precedent.

* * *

> In light of this caselaw, it appears that equitable tolling is justified in these circumstances only for court closures or the inaccessibility of courts. Our administrative orders went well beyond that because they were not limited to situations in which the courts were closed. [*Browning*, ––– Mich at ––––; 979 N.W.2d at 198-201 (VIVIANO, J., dissenting) (footnotes omitted).]

39     Our partially dissenting colleague states we are looking at this issue in "hindsight." Looking at things in hindsight is the nature of appellate review. That being said, we understand, respect and appreciate the enormously challenging issues that faced every person, organization and governmental body in the earliest of days of the COVID-19 pandemic. We fully appreciate the extraordinary nature of the times and the difficulty of the circumstances. But that does not excuse us from our obligation to correctly answer the question recently posed by Justice GORSUCH in *Nat'l Federation of Independent Business v Dep't of Labor*, ––– U.S. ––––, ––––, 142 S Ct 661, 670, 211 L Ed 2d 448 (2022) (GORSUCH, J, concurring) ("The question before us is not how to respond to the pandemic, but who holds the power to do so.... [W]e do not impugn the intentions [but] ... only discharge our duty to enforce the law's demands when it comes to the question who may govern the lives of ... Americans. Respecting those demands may be trying in times of stress. But if this Court were to abide them only in more tranquil conditions, declarations of emergencies would never end and the liberties our Constitution's separation of powers seeks to preserve would amount to little."). In this case, we are called

on to determine in retrospect what effect should be given to the 102-day exclusion period and whether the Supreme Court had the constitutional authority to issue the AOs.

40    As Justice VIVIANO noted in *Browning*, "Time and reflection—which we did not have in abundance when the orders were issued—may reveal that we were wrong. Our initial orders were issued at a point when it was unclear whether and to what extent courts might close. Even so, as Justice Felix Frankfurter once said, "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." " *Browning*, ____ Mich at ____; 979 N.W.2d at 197 (VIVIANO, J., dissenting), citing *Henslee v Union Planters Nat'l Bank & Trust Co*, 335 U.S. 595, 600, 69 S Ct 290, 93 L.Ed. 259 (1949) (FRANKFURTER, J., dissenting).

41    We respectfully suggest that our partially dissenting colleague overreads our opinion as somehow calling into question the judgment of lawyers and litigants who acted in reliance on our Supreme Court's AOs. We do nothing of the sort, but merely exercise our judgment, as we are called to do in this case, regarding the constitutional authority of the Supreme Court to issue the AOs.

1     In Michigan alone, more than 3 million people have contracted the virus, resulting in over 40,000 deaths. Michigan Department of Health and Human Services, *Michigan Coronavirus Data* <https://www.michigan.gov/coronavirus/stats> (last accessed May 17, 2023).

2     As noted by the majority, AO 2020-3 was subsequently amended by the Michigan Supreme Court, in which the last paragraph was amended to state:

> This order in no way prohibits or restricts a litigant from commencing a proceeding whenever the litigant chooses, *nor does it suspend or toll any time period that must elapse before the commencement of an action or proceeding.* Courts must have a system in place to allow filings without face-to-face contact to ensure that routine matters, such as filing of estates in probate court and appointment of a personal representative in a decedent's estate, may occur without unnecessary delay and be disposed via electronic or other means. [Amended AO-2020-3, 505 Mich cxliv, cxlv (emphasis added).]

3     While I agree with *Carter*'s conclusion that AO 2020-3 was a proper exercise of the Michigan Supreme Court's authority to establish the procedure and practice in the state's courts, which is dispositive of the issue, I do not join *Carter*'s pronouncement that "it is questionable whether this Court has the power to declare unconstitutional administrative orders of the Supreme Court." *Carter*, slip op. at 6. To that end, I agree with the majority's position "that it is our duty to decide controlling legal questions that arise in appeals over which we have jurisdiction, including in this case the constitutional validity of the AOs."

I also agree with the majority's footnote criticizing the *Carter* Court's reliance on superintending control as "misplaced." Superintending control is "the proper method to challenge the general practices of an inferior court." *In re Credit Acceptance Corp*, 273 Mich App 594, 598, 733 N.W.2d 65 (2007). "For superintending control to lie, the plaintiff must establish that the defendant has failed to perform a clear legal duty and that plaintiff is otherwise without an adequate legal remedy." *Id.* While COVID-19 presented unprecedented challenges for the lower courts, there is no evidence the courts failed to perform their duties, thus giving rise to superintending control.

Lastly, like the majority, I take issue with the *Carter* court's holding that "all litigants whose limitations periods had not expired prior to the adoption of AO 2020-3 were entitled to the *exclusion of days* under AO 2020-3." *Carter*, ____ Mich App at ____; ____ N.W.2d ____ slip op. at 4 (emphasis added). That is to say, I do not interpret AO 2020-3 as *excluding* days from limitations periods, but rather I interpret the order as *suspending* those days such that once the order expired, litigants whose deadlines would have otherwise expired could still file their pleadings the following day.

---

End of Document                                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.