IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| ARLEEN KOSAK, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) | Case No. 2:22-cv-11850-MFL-EAS |
| | ) | |
| v. | ) | Hon. Matthew F. Leitman |
| | ) | |
| NEW YORK MEDIA HOLDINGS, LLC. | ) | ORAL ARGUMENT |
| Defendant. | ) | REQUESTED |
| | ) | |
| | ) | |

**DEFENDANT NEW YORK MEDIA HOLDINGS, LLC'S
MOTION TO DISMISS AMENDED COMPLAINT
FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendant New York Media Holdings, LLC ("NYMH") respectfully moves this Court to dismiss Plaintiff's Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) because this Court does not have subject matter jurisdiction over this action.

Dated: March 15, 2024

Respectfully submitted,

/s/ *Kristen C. Rodriguez*
DENTONS US LLP
Kristen C. Rodriguez
Deborah H. Renner
1221 Avenue of the Americas
New York, New York 10020-1089
Tel: (212) 398-5793
kisten.rodriguez@dentons.com
deborah.renner@dentons.com

CLARK HILL PLC
Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
220 Park Street, Suite 200
Birmingham, Michigan 48009
Tel: (248) 530-6336
pkupelian@clarkhill.com
cschley@clarkhill.com

Counsel for Defendant
New York Media Holdings, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| ARLEEN KOSAK, | ) | |
| individually and on behalf of all others | ) | |
| similarly situated, | ) | |
| Plaintiff, | ) | Case No. 2:22-cv-11850-MFL-EAS |
| | ) | |
| v. | ) | Hon. Matthew F. Leitman |
| | ) | |
| NEW YORK MEDIA HOLDINGS, LLC. | ) | ORAL ARGUMENT |
| Defendant. | ) | REQUESTED |
| | ) | |
| | ) | |

**BRIEF IN SUPPORT OF DEFENDANT NEW YORK
MEDIA HOLDINGS, LLC'S  MOTION TO DISMISS AMENDED
<u>COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION</u>**

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED.........................................................1

STATEMENT OF CONTROLLING OR MOST APPROPRIATE
AUTHORITY ...............................................................................................2

INTRODUCTION .........................................................................................3

STATEMENT OF FACTS ............................................................................6

I.    The Amended Complaint...................................................................6

      A.    Plaintiff's Class Size Allegations...........................................6

      B.    Plaintiff's Alleged Class Period. ...........................................6

II.   Even Assuming Plaintiff's Class Period, There Are Fewer Than 250
      Subscribers in the Class...................................................................7

LEGAL STANDARD...................................................................................8

ARGUMENT ...............................................................................................10

I.    The Amended Complaint Does Not Meet the Amount in Controversy
      Requirement for CAFA. ................................................................10

      A.    Only Directs Need to Be Included in the Class Size Calculation. ......11

      B.    Independent Third-Party Data Corroborates Darwin's Class Size
            Number. ..............................................................................13

      C.    Further Historic Data Confirms Darwin's Class Size Number...........14

II.   Plaintiff's Individual Case Belongs in State Court. ......................15

CONCLUSION ...........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blockbuster, Inc. v. Galeno*,
  472 F.3d 53 (2d Cir. 2006) ............................................................ 8-9

*In re Braddy*,
  195 B.R. 365 (Bankr. E.D. Mich. 1996)............................................12

*Cartwright v. Garner*,
  751 F.3d 752 (6th Cir. 2014) .............................................................10

*Coulter-Owens v. Time Inc.*,
  695 F. App'x 117 (6th Cir. 2017) ........................................2, 5, 12, 13

*Crump v. Lafler*,
  657 F.3d 393 (6th Cir. 2011) .............................................................12

*EEOC v. Hosanna–Tabor Evangelical Lutheran Church & Sch.*,
  597 F.3d 769 (6th Cir. 2010), *rev'd on other grounds*, 565 U.S.
  171, 132 S.Ct. 694, 181 L.Ed.2d 650 (2012)........................................8

*Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*,
  491 F.3d 320 (6th Cir. 2007) ..............................................................9

*Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*,
  807 F.3d 806 (6th Cir. 2015) .............................................................10

*Horton v. Dow Jones*,
  804 Fed. App'x 81 (2d Cir. 2020) ......................................................15

*Hufford v. Maxim, Inc.*
  19-cv-04452 ........................................................................................13

*Ibarra v. Manheim Invs.*,
  775 F.3d 1193, 1199 (9th Cir. 2015) ...................................................9

*Mustric v. Huntington Nat'l Bank*,
  No. 2:18-cv-1279, 2019 WL 1472095 (S.D. Ohio Apr. 3, 2019) ......10

*Rodriguez v. Hirshberg Acceptance Corp.*,
    341 Mich. App. 349, 991 N.W.2d 217 (2022)....................................................15

*Roll v. Upper Peninsula Power Co.*,
    No. 2:22-CV-224, 2023 WL 2730217 (W.D. Mich. Jan. 6, 2023)................9, 11

*Schreiber v. Mayo Foundation*,
    22-cv-00188 ..........................................................................................5, 13

*Smith v. Nationwide Prop. & Cas. Ins. Co.*,
    505 F.3d 401 (6th Cir. 2007) ...........................................................................8, 9

**Statutes**

28 United States Code
    § 1332(a) ...............................................................................................................3
    § 1332(d).......................................................................................................*passim*

Michigan Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-
    445.1715 (1989).............................................................................................*passim*

**Rules and Regulations**

Federal Rule of Civil Procedure Rule 12(b)(1) ....................................................8, 9

Michigan Court Rule 3.501(A)(5) ....................................................................8, 15

## STATEMENT OF ISSUES PRESENTED

1. Whether the amount in controversy in this action satisfies the over $5 million minimum set by the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), giving this Court subject matter jurisdiction over this putative class action.

   Answer: No.

2. Whether this action should be dismissed because there are no jurisdictional grounds to keep it in federal court.

   Answer: Yes.

## STATEMENT OF CONTROLLING OR
## MOST APPROPRIATE AUTHORITY

The controlling or most appropriate authority for this motion includes:

1. Federal Rule of Civil Procedure 12(b)(1).

2. Class Action Fairness Act, 28 U.S.C. § 1332(d).

3. Michigan Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-445.1715 (1989).

4. *Coulter-Owens v. Time Inc.*, 695 F. App'x 117 (6th Cir. 2017).

## INTRODUCTION

This case does not belong in federal court because the amount in controversy is too small under any measure to confer this Court with subject matter jurisdiction. Plaintiff Arleen Kosak alleges that Defendant New York Media Holdings, LLC ("NYMH" or "Defendant")[1] wrongfully disclosed her Private Reading Information ("PRI") and that of other Michigan subscribers to *New York* magazine in violation of the pre-July 31, 2016 version of Michigan's Preservation of Personal Privacy Act, M.C.L. § 445.1711, *et seq.* (the "PPPA"). The pre-July 31, 2016 version of the PPPA provided for $5,000 in statutory damages per customer. Plaintiff's individual claim alone is thus worth $5,000, which unquestionably is insufficient by itself to confer federal subject matter jurisdiction. *See* 28 U.S.C. § 1332(a) (requiring over $75,000 in controversy for federal subject matter jurisdiction). It is Plaintiff's burden to show that her case belongs in federal court. Plaintiff only makes a conclusory and information and belief allegation that her case is properly brought under the Class Action Fairness Act ("CAFA"). Amended Compl. ¶¶ 11, 50.  But the combined claims of the putative Michigan class do not meet CAFA's over $5 million amount in controversy requirement either. *See* 28 U.S.C. § 1332(d). Given the New York-

---

[1] Defendant previously moved to dismiss the Amended Complaint and opposed Plaintiff's motion to amend the already Amended Complaint. ECF 16, 18. Defendant reserves the right to renew its motion to dismiss and its opposition to Plaintiff's motion to amend should the instant motion fail.

focused nature of *New York* magazine and the limited timeframe at issue, unsurprisingly, there were very few Michigan subscribers to *New York* magazine during the alleged relevant period of time in 2016 – so few, that even at $5,000 per subscriber, the Amended Complaint does not come close to meeting CAFA's amount in controversy requirement.

With the PPPA's pre-2016 statutory damage provision of $5,000 per consumer, the putative class must have at least 1,001 members to exceed CAFA's $5 million threshold and be heard in this Court. It does not. Assuming that Plaintiff's alleged relevant time period is correct, a violation of the pre-amendment version of PPPA is limited to alleged disclosures of PRI that occurred between May 2, 2016 and July 30, 2016 (the "Class Period").[2] Evidence provided by third parties submitted here demonstrates that the size of this potential class falls far short of 1001. The number of Michigan subscribers to *New York* Magazine who had an active subscription during the Class Period and purchased their subscription directly from the publisher was 248, according to Darwin CX ("Darwin"), the entity which maintains *New York* magazine's subscriber history. *See* Declaration of Jeremy Vest, dated March 8, 2024 ("Vest Dec."). This number equates to just over $1.2 million in

---

[2] *See* ECF 19, Reply to Defendant's Opposition to Plaintiff's Motion for Leave to Amend to File a Second Amended Complaint, at PageId.1719-1720. Defendant does not concede that this action is timely or that the Class Period is correct. *See* ECF 18, Defendant's Opposition to Plaintiff's Motion to Amend, at PageId.1689-1697.

statutory damages, the only type of damages sought in the Amended Complaint, which is falls short of CAFA's over $5 million amount in controversy requirement.

Plaintiff likely will quibble with the fact that the declaration from Darwin considers only "direct" subscribers in this calculation, *i.e.*, those who purchased their subscriptions directly from the publisher ("Directs"), and not subscribers who purchased their subscriptions through third-party subscription agents ("Indirects"). But the only case addressing this issue holds that the PPPA applies to Directs, not Indirects. *Coulter-Owens v. Time Inc*., 695 F. App'x 117 (6th Cir. 2017). Indeed, Plaintiff's counsel themselves confine their class definitions to include exclusively Directs when settling other PPPA actions. *See, e.g.*, *Schreiber v. Mayo Foundation*, 22-cv-00188 HYJ-RSK (W.D. Mich.) ECF 68, ¶ 9.

Plaintiff may argue that Darwin's calculation is not reliable. However, a contemporaneous independent audit of subscribers in February 2016 by Alliance for AuditedMedia ("AuditedMedia"), shows total circulation numbers, *i.e.*, combined Directs and Indirects, is consistent with Darwin's calculation of total circulation in February 2016. *See* Declaration of Chad Jaennette, dated March 11, 2024 (the "Jaennette Dec."); *compare* Vest Dec. ¶ 7.

Finally, Plaintiff will likely contend that Darwin's calculation should not have been circumscribed to "active" subscribers. However, even accounting for "inactive subscribers" by looking at data as far back as 2011 does not bring the total number

of subscribers even close to 1001. *See* Vest Dec. ¶ 8. Again, Plaintiff cannot rely on this argument to bulk up her number and satisfy her burden.

While Plaintiff may bring her individual case in state court, this Court lacks subject matter jurisdiction under CAFA. The case must be dismissed.

## STATEMENT OF FACTS

### I.     The Amended Complaint.

#### A.     Plaintiff's Class Size Allegations.

Plaintiff alleges that she purchased her subscription to *New York* magazine directly from the Defendant and that the Defendant wrongfully disclosed her PRI to third parties. Am. Compl. ¶¶ 9, 58-63. As for her class allegations, she alleges, *but only on information and belief*, that the putative class numbers in the thousands: "On information and belief, members of the Class number in the thousands." *Id.* ¶ 50; *see* ¶ 11. It is this conclusory, information and belief allegation that is at issue here.

#### B.     Plaintiff's Alleged Class Period.

While Defendant maintains that this entire action was filed too late, Plaintiff contends that "any disclosures of Plaintiff's Personal Reading Information (PRI) that occurred between May 2, 2016 and July 30, 2016 (the last date that the unamended version of the PPPA which applies here was in effect) are actionable in this case." *See* ECF 19, Reply to Defendant's Opposition to Plaintiff's Motion for Leave to Amend to File a Second Amended Complaint, at PageId.1719-20. *See also* ECF 18, Defendant's Opposition to Plaintiff's Motion to Amend, at PageId.1689-1697.

## II.   Even Assuming Plaintiff's Class Period, There Are Fewer Than 250 Subscribers in the Class.

According to Darwin, which maintains subscriber history information for *New York* magazine, during the Class Period, there were 248 people who: had an active subscription, had a Michigan address for delivery of an active subscription, and purchased the subscription directly from the publisher. Vest Dec. ¶ 4. At a statutory award of $5,000 in damages, with 248 class members, the amount in controversy would equal just over $1.2 million, less than the over $5 million required for CAFA jurisdiction.

This number of subscribers is corroborated by *New York* magazine's auditor, AuditedMedia. AuditedMedia has historical total circulation data for one issue of *New York* magazine from the first half of 2016, the February 22, 2016 issue.[3] Jaennette Dec. ¶ 4. The total circulation number in Michigan for this issue was 2,525. *See id.* ¶¶ 4, 6, Ex. A, Row 24. (This number excludes newsstand and complimentary issues. *Id.* ¶¶ 7-9, Ex. A. Row 24.) Darwin cross-checked this number against its records and came up with a consistent total circulation number of 2,779 for the month of February, confirming the reliability of Darwin's data. *See* Vest Dec. ¶ 7.

---

[3] Notably, this data, which Plaintiff has repeatedly requested, is before the alleged Class Period.

## LEGAL STANDARD

Significantly, Michigan does not permit plaintiffs to bring class actions for statutory damages in Michigan state court unless the statute explicitly authorizes a class. MCR 3.501(A)(5). The PPPA does not authorize class actions. To circumvent this prohibition, plaintiffs invoke federal jurisdiction through CAFA, as Plaintiff did here. *See* Am. Compl. ¶ 11.

CAFA, passed in 2005, allows for federal jurisdiction over a purported class action when all of the following apply: (1) the amount in controversy exceeds $5 million in the aggregate; (2) at least one putative class member is a citizen of a state different from any defendant; and (3) the putative class exceeds 100 members. 28 U.S.C. §§ 1332(d)(2), (6).

Significant here, the aggregate sum of the amount in controversy must exceed $5 million for Plaintiff to pursue her class action in federal court. *See, e.g., Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 403 (6th Cir. 2007). A party asserting subject matter jurisdiction and opposing a Rule 12(b)(1) motion "bears the burden of proving jurisdiction." *EEOC v. Hosanna–Tabor Evangelical Lutheran Church & Sch.*, 597 F.3d 769, 776 (6th Cir. 2010), *rev'd on other grounds*, 565 U.S. 171, 132 S.Ct. 694, 181 L.Ed.2d 650 (2012). "CAFA did not change the traditional rule that [the party seeking federal court jurisdiction] bears the burden of establishing subject matter jurisdiction." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir.

8

2006). Proper subject matter jurisdiction must be demonstrated by a preponderance of the evidence. *Smith*, 505 F.3d 401, 407 (holding that the defendant seeking to remove the case to federal court failed to carry its burden that the amount of controversy was over $5 million for purposes of CAFA jurisdiction).[4]

Mere speculation and conjecture about the amount in controversy, such as on information and belief, is insufficient. *See, e.g., Roll v. Upper Peninsula Power Co.,* No. 2:22-CV-224, 2023 WL 2730217, at *1 (W.D. Mich. Jan. 6, 2023) ("'threadbare recitation of the amount in controversy element for subject matter jurisdiction under CAFA is insufficient, without more, to establish the Court's subject matter jurisdiction.'") quoting *Petkevicius v. NBTY, Inc*., No. 314cv 02616, 2017 WL 1113295, at *4 (S.D. Cal. Mar. 24, 2017).

Moreover, because the amount in controversy is a jurisdictional question evaluated under Rule 12(b)(1), "no presumptive truthfulness applies to the allegations" of the Complaint. *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co*., 491 F.3d 320, 330 (6th Cir. 2007). The Court "has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts."

---

[4] When it comes to showing that the amount in controversy is met, "[u]nder the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Ibarra v. Manheim Invs*., Inc., 775 F.3d 1193, 1199 (9th Cir. 2015). Here, of course, the pleading is threadbare on subject matter jurisdiction, so the evidence is not balanced.

*Id.* The court "can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co*., 807 F.3d 806, 810 (6th Cir. 2015) (quoting *Carrier Corp. v. Outokumpu Oy*j, 673 F.3d 430, 440 (6th Cir. 2012)). *See Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014) ("In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case.").

## ARGUMENT

### I.   The Amended Complaint Does Not Meet the Amount in Controversy Requirement for CAFA.

The Amended Complaint, which pleads over $5 million in controversy in a conclusory manner and on information and belief, does not sufficiently allege the required amount in controversy. "The Sixth Circuit has previously held that Plaintiff's complaint must 'explicitly specif[y] the amount of monetary damages sought or sets forth facts from which an amount in controversy in excess of $5,000,000 can be ascertained.'" *Mustric v. Huntington Nat'l Bank*, No. 2:18-cv-1279, 2019 WL 1472095, at *3 (S.D. Ohio Apr. 3, 2019), quoting *Grasier v. Visionworks, Inc*., 819 F.3d 277, 284 (6th Cir. 2016). The Amended Complaint fails to allege subject matter jurisdiction with specificity or set forth facts from which

subject matter jurisdiction can be ascertained. Plaintiff's conclusory, information and belief pleading does not suffice to confer jurisdiction in federal court. *See, e.g., Roll* 2023 WL 2730217, at *1.

Here, Defendant has evidence, as set forth in the accompanying Vest Declaration, that there were 248 Michigan subscribers during the Class Period based on the following parameters: active subscription, Michigan address for delivery of an active subscription, and purchased the subscription directly from the publisher. Vest Dec. ¶ 4. Based on this evidence, the amount in controversy is about $1.2 million, not the over $5 million needed for CAFA jurisdiction. *Id.*

## A.     Only Directs Need to Be Included in the Class Size Calculation.

Under the PPPA and Sixth Circuit law interpreting it, only Directs (those who purchased directly from the publisher) can be included in a PPPA class. The pre-2016 version of PPPA provided that:

> Except as provided in section 3 or as otherwise provided by law, a person, or an employee or agent of the person, engaged in the business of selling at retail ... written materials ... shall not disclose to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer.

Mich. Comp. Laws § 445.1712, Sec. 2 (footnote omitted). Under the only case addressing the issue of Directs versus Indirects, which is an unpublished Sixth

Circuit decision,[5] *Coulter-Owens v. Time Inc.,* 695 F. App'x 117, 123-24 (6th Cir. 2017*)*, purchases made through a third-party subscription agent [*i.e.*, "Indirects"] are not "at retail" and therefore are not covered by the PPPA. *See* PPPA § 445.1712 (forbidding a person "engaged in the business of selling at retail . . . written materials" from disclosing a "record or information concerning the purchase" other than to the customer, subject to several exceptions). Affirming the district court's decision, the Sixth Circuit held that the sale to the customer in that case was not "at retail" because of the intervening sale from the publisher to the subscription agent:

> There were two types of sales here: Time's sale to the subscription agent and the subscription agent's sale to Coulter-Owens. Because Coulter-Owens is the end consumer, the sale to her was necessarily 'at retail'; the sale from Time to the subscription agent here was not 'at retail' under the facts of this case. The district court was correct that the PPPA does not govern this sale….

*Coulter-Owens*, 695 F. App'x at 124.

Accordingly, Indirects—subscribers who bought subscriptions indirectly through a third-party subscription agent—must be excluded from the putative class. Indeed, Plaintiff's counsel themselves have excluded Indirects from their settlement

---

[5] "Unpublished decisions in the Sixth Circuit are not binding precedent on subsequent panels…but their reasoning may be instructive or helpful." *Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011) (internal citations and quotations omitted). *See also In re Braddy*, 195 B.R. 365, 371 (Bankr. E.D. Mich. 1996) ("[A]lthough not binding, unreported Sixth Circuit decisions can be cited if persuasive.") (collecting cases). This is all the more true here in view of the Sixth Circuit's reasoned opinion.

classes. *See, e.g., Hufford v. Maxim, Inc.* 19-cv-04452 ALC-RWL (S.D.N.Y.) ECF 63, Ex A. ¶1.32 ("all Persons with a Michigan street address **who subscribed directly** to Maxim for receipt of a Maxim magazine to be delivered to a Michigan street address between May 15, 2016 and July 30, 2016); *Schreiber v. Mayo Foundation,* 22-cv-00188 HYJ-RSK (W.D. Mich.) ECF 68, ¶ 9 ("all Michigan **direct purchasers** of Mayo Clinic Health Letter whose information was included on the following lists…") (emphases added).

### B. Independent Third-Party Data Corroborates Darwin's Class Size Number.

Plaintiff no doubt will argue that Darwin's data is not reliable. However, the reliability of *New York* magazine's data is bolstered by an independent audit from 2016 that shows similar Michigan subscriber numbers. AuditedMedia, a not-for-profit organization that conducts audit research, contemporaneously analyzed the February 22, 2016 issue of *New York* magazine, broken down by state, as part of its regular auditing practices. Jaennette Decl. ¶ 4. Excluding complimentary copies and newsstand sales (for which, of course, the publisher would have no PRI for the purchaser), it found that there were 2,525 total "paid subscriptions" with Michigan addresses. *Id.*, ¶ 6-9, Ex. A, Row 24. This number is a total circulation number. It does not break down subscriptions by Directs and Indirects. *Id.* ¶ 5.

To compare its results to the AuditedMedia results, Darwin analyzed the total Michigan subscriber data for the February 1-28, 2016 period, which it considered

the best way to approximate the total Michigan subscriber base for the February 22, 2016 issue. Vest Decl. ¶ 6. It found 2,779 Direct and Indirect subscribers in Michigan active during February 2016, which is just slightly higher than AuditedMedia's 2,525 number, thus corroborating the reliability of Darwin's data. *See id.* ¶ 7.

Moreover, Darwin found 201 of those 2,779 subscribers to be Directs, or about 8%.  Vest Dec. ¶¶ 6, 7. This percentage comports with the percentage of Directs for the Class Period –which was around 7% (248 Directs out of a total of 3,468 Directs and Indirects). *See* Vest Decl. ¶ 5. This comparative data further underscores the reliability of Darwin's data.

## C.    Further Historic Data Confirms Darwin's Class Size Number.

Plaintiff may also argue that Darwin should have not just considered "active" subscribers. But approximating inactive subscribers by taking a look back at Directs from May 2, 2011 to July 30, 2016 only yields 663 subscribers, or just over $3.3 million in controversy, which still falls short of the over $5 million required for CAFA jurisdiction. *See* Vest Decl. ¶ 8.[6]

---

[6] Darwin found that about 14% of the total subscribers during that five-year period were Direct Subscribers. Vest Decl. ¶ 9. Even if that higher percentage of Directs is applied to the total subscribers during the Class Period, there are still not enough class members for federal subject matter jurisdiction – 14% of 3,468 total subscribers during the Class Period is just 486 Directs, less than half of the 1,001 class members needed to meet CAFA's amount in controversy requirement.

## II.   Plaintiff's Individual Case Belongs in State Court.

Plaintiff has not met the jurisdictional requirements to keep this putative class in federal court, and she also cannot bring this case as a class action in state court. Michigan Court Rule 3.501(A)(5) states: "An action for a penalty or minimum amount of recovery without regard to actual damages imposed or authorized by statute may not be maintained as a class action unless the statute specifically authorizes its recovery in a class action." Because the PPPA does not authorize class actions, this case may not be brought as a class action in state court. *See, e.g., Rodriguez v. Hirshberg Acceptance Corp.,* 341 Mich. App. 349, 364, 991 N.W.2d 217, 227 (2022).

Accordingly, this Court should dismiss Plaintiff's remaining individual claim with prejudice for consideration in state court. See *Horton v. Dow Jones*, 804 Fed. App'x 81, 85 (2d Cir. 2020) (affirming trial court's decision to dismiss individual PPPA claim when plaintiff could not pursue a class; federal courts need not "'adjudicate state law claims'" upon a "'finding that a case cannot proceed as a class action'") quoting *F5 Capital v. Pappas*, 856 F.3d 61, 77 n.14 (2d Cir. 2017)).

### CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

15

Date: March 15, 2024                    Respectfully submitted,

                                        /s/ *Kristen C. Rodriguez*
                                        DENTONS US LLP
                                        Kristen C. Rodriguez
                                        Deborah H. Renner
                                        1221 Avenue of the Americas
                                        New York, New York 10020-1089
                                        Tel: (212) 398-5793
                                        kisten.rodriguez@dentons.com
                                        deborah.renner@dentons.com

                                        CLARK HILL PLC
                                        Peter B. Kupelian (P31812)
                                        Carol G. Schley (P51301)
                                        220 Park Street, Suite 200
                                        Birmingham, Michigan 48009
                                        Tel: (248) 530-6336
                                        pkupelian@clarkhill.com
                                        cschley@clarkhill.com

                                        *Counsel for Defendant*
                                        *New York Media Holdings, LLC*

**Certificate of Service**

I hereby certify that on March 15, 2024, a copy of the foregoing document was filed electronically and served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

*/s/ Kristen C. Rodriguez*
Kristen Rodriguez