# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ARLEEN KOSAK, individually and on behalf of all others similarly situated, | Civil Action No.: 2:22-cv-11850-MFL-EAS |
| Plaintiff, | Hon. Matthew F. Leitman |
| v. | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| NEW YORK MEDIA HOLDINGS, LLC, | |
| Defendant. | |

## STATEMENT OF ISSUES PRESENTED

1.      Do the allegations of the FAC adequately establish that CAFA's amount-in-controversy threshold is satisfied?

Plaintiff's Answer: Yes.

2.      Does Defendant fail to show "to a legal certainty" that the amount in controversy does not exceed $5 million?

Plaintiff's Answer: Yes.

## MOST CONTROLLING AUTHORITY

- *Kovacs v. Chesley*, 406 F.3d 393 (6th Cir. 2005)

- *Jones v. Knox Expl. Corp.*, 2 F.3d 181 (6th Cir. 1993)

- *Shelter Mut. Ins. Co. v. Spurlin*, 2021 WL 2142602 (E.D. Ky. May 26, 2021)

- *Marzolf v. JPMorgan Chase Bank N.A.*, 2024 WL 1332003 (E.D. Mich. Mar. 28, 2024)

- *Black v. Crowe, Paradis, & Albren, LLC*, 2014 WL 3965043 (E.D. Ky. Aug. 13, 2014)

- *White v. Loomis Armored US, Inc.*, 729 F. Supp. 2d 897 (E.D. Mich. 2010)

# TABLE OF CONTENTS

**PAGE(S)**

I.   INTRODUCTION ..................................................................................1

II.  LEGAL STANDARD ..........................................................................5

III. ARGUMENT........................................................................................6

    A.   The Allegations of the FAC Adequately Establish that CAFA's Amount-In-Controversy Threshold is Satisfied ....................................6

    B.   Defendant Fails to Show "to a Legal Certainty" That the Amount in Controversy Does Not Exceed $5 Million ...........................................7

IV.  CONCLUSION..................................................................................15

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Affordable Constr. Servs., Inc. v. Auto-Owners Ins. Co.*,
  2020 WL 1955267 (W.D. Tenn. Apr. 23, 2020).................................................14

*Black v. Crowe, Paradis, & Albren, LLC*,
  2014 WL 3965043 (E.D. Ky. Aug. 13, 2014).........................................................9

*Coulter-Owens v. Time Inc.*,
  695 F. App'x 117 (6th Cir. 2017)................................................................. passim

*Galaria v. Nationwide Mut. Ins. Co.*,
  663 F. App'x 384 (6th Cir. 2016)........................................................................10

*Gottsleben v. Informa Media, Inc.*,
  2023 WL 4397226 (W.D. Mich. July 7, 2023) ...............................................1, 7

*Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*,
  565 F. Supp. 2d 779 (E.D. Ky. 2008)..................................................................15

*Hawthorne-Burdine v. Oakland Univ.*,
  158 F. Supp. 3d 586 (E.D. Mich. 2016), *aff'd*, 2016 WL 11854487
  (6th Cir. Nov. 3, 2016) .......................................................................................15

*Jones v. Knox Expl. Corp.*,
  2 F.3d 181 (6th Cir. 1993) ....................................................................................6

*Kovacs v. Chesley*,
  406 F.3d 393 (6th Cir. 2005) ............................................................ 6, 9, 10, 15

*Marzolf v. JPMorgan Chase Bank N.A.*,
  2024 WL 1332003 (E.D. Mich. Mar. 28, 2024)........................................ 1, 5, 7

*Pratt v. KSE Sportsman Media, Inc.*,
  586 F. Supp. 3d 666 (E.D. Mich. 2022) .............................................................13

*Shelter Mut. Ins. Co. v. Spurlin*,
  2021 WL 2142602 (E.D. Ky. May 26, 2021)....................................................5, 7

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*,
  303 U.S. 283 (1938) ..............................................................................................6

*White v. Loomis Armored US, Inc.*,
  729 F. Supp. 2d 897 (E.D. Mich. 2010) .............................................................14

## Statutes

Class Action Fairness Act, 28 U.S.C. § 1332(d) .......................................................1

Michigan PPPA § 5(a) ...............................................................................................7

iv

Plaintiff Arlene Kosak submits this response in opposition to the motion to dismiss (ECF No. 37 (the "Motion" or "Mot.")) filed by Defendant New York Media Holdings LLC.

## I. INTRODUCTION

Defendant moves to dismiss this case on the ground that the amount in controversy does not exceed $5 million, rendering the Court without subject-matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). The Motion fails for several reasons.

<u>First</u>, as the Motion acknowledges (Mot. at 3, PageID.1995), the version of the PPPA in question (the version in existence until July 30, 2016) entitles a customer whose subscription purchase information was disclosed to a third party prior to July 31, 2016 to statutory damages of $5,000. Thus, the operative First Amended Complaint (ECF No. 6 (the "FAC")) – which pleads a putative class comprised of "thousands" of members, each of whom seeks that same $5,000 statutory damage award – on its face plausibly establishes that more than $5 million is at stake in this case. *See, e.g.*, *Marzolf v. JPMorgan Chase Bank N.A.*, 2024 WL 1332003, at *1 (E.D. Mich. Mar. 28, 2024) ("Generally, the plaintiff's claim in the pleading, if made in good faith, is the amount in controversy."); *Gottsleben v. Informa Media, Inc.*, 2023 WL 4397226, at *2 (W.D. Mich. July 7, 2023) ("Gottsleben alleges that the potential class has 'thousands' of members, each of which would be entitled to at

least $5,000 in statutory damages. With more than a thousand class members entitled to $5,000 each, the amount in controversy exceeds $5,000,000. Therefore, the Court is satisfied that it has subject matter jurisdiction over this case.") (internal citations omitted).

<u>Second</u>, the evidence submitted by Defendant in support of the Motion confirms that the aggregate sum of statutory damages at stake in this case far exceeds $5 million. The putative class pled in the FAC is comprised of all persons who had such information disclosed by Defendant to a third party during the relevant pre-July 31, 2016 time period. The declarations and accompanying exhibit that Defendant has submitted in support of the Motion establish that *New York* magazine had 3,468[1] active subscribers with Michigan addresses during such time period – all of whom, the FAC alleges, would have had their subscription-purchase information disclosed to third parties during that time period. Thus, the materials submitted by Defendant in support of the Motion themselves demonstrate that the amount in controversy is at the very least $17,340,000 ($5,000 multiplied by 3,468), nearly three times the $5

---

[1]    *See* Declaration of Jeremy Vest, ECF No. 37-2, PageID.2013 (providing Defendant's estimate of its total subscriber count during the time period relevant here), and Declaration of Chad Jaennette, ECF No. 37-1 & Exhibit A to the Jaenette Declaration, ECF No. 37-3 (providing an analysis of February 2016). Later in the Vest Decl., examining a period going back to May 2, 2011, Defendant concedes that an estimate of 4,603 subscribers may be accurate for the relevant time period, as Plaintiff has pled that former subscribers are class members here, as the attached data card establishes that Defendant disclosed "expired" subscribers as well. *See* FAC ¶ 2 & Ex. A to FAC.

million threshold needed to confer jurisdiction pursuant to CAFA.

Defendant argues that the Court should compute the amount of class-wide statutory damages in controversy by including only active Michigan subscribers who purchased a subscription by paying money _directly_ to Defendant (and excluding Michigan subscribers who purchased a subscription by paying money to a subscription agent). This argument fails for several reasons. For one thing, whether an "indirect" purchaser (as that term is used in _Coulter-Owens_) has a claim under the statute is a merit question that has no bearing on the Court's subject-matter jurisdiction; indeed, the class definition in the FAC includes all subscribers, without distinguishing between "direct" or "indirect" subscribers, and it is that definition (not Defendant's preferred definition) that controls for purposes of assessing whether the aggregate amount in controversy exceeds CAFA's $5 million threshold. Additionally, Defendant's argument rests entirely on the unpublished, non-binding decision in _Coulter-Owens v. Time Inc._, 695 F. App'x 117 (6th Cir. 2017), the reasoning of which is unpersuasive and should not be adopted by the Court here. But even if _Coulter-Owens_'s reasoning were adopted by this Court – and it should not be – and even if the direct vs. indirect question were jurisdictional – and it is not – _Coulter-Owens_'s conclusion that indirect purchasers lacked actionable claims under the statute turned on case-specific facts concerning the unique relationship between the defendant in that case and its subscription agents and subscriber plaintiffs. In this

case, the declaration submitted by Defendant in support of the Motion fails to demonstrate that the same factual circumstances (concerning the relationships between Defendant and its subscription agents and between Defendant and the Plaintiff and class members) existed here. There is thus no basis to exclude persons from the proposed class who Defendant says bought subscriptions "indirectly" (whatever that even means) in determining whether the aggregate amount in controversy in this case exceeds CAFA's $5 million threshold.

Third, even if the Court somehow finds that the "indirect" subscribers Defendant refers to in the Motion paid money for their subscriptions to third parties rather than to Defendant (and there are no facts establishing this in the record), and then on that basis only considers the remaining "direct" subscribers, CAFA's amount-in-controversy requirement is still satisfied in light of the FAC's allegations and attached data card establishing that Defendant disclosed "expired" subscribers as well as "active" subscribers during the relevant time period, and disclosed each subscriber's information multiple times during the class period.

Finally, the Motion fails to recognize that the PPPA entitles a prevailing plaintiff to reasonable attorneys' fees and costs. Plaintiffs' counsel have litigated over 100 PPPA cases in federal courts nationwide. Based on their significant experience litigating PPPA actions similar to the instant matter, Plaintiffs' counsel conservatively estimate that they would need to expend approximately $3 to $5

million in attorneys' fees and at least $100,000 in costs to obtain a class-wide judgment against Defendant at trial, and millions more if the judgment were to be appealed before becoming final. In determining whether CAFA's jurisdictional minimum has been met, the estimated attorneys' fee and cost figures provided by Plaintiffs' counsel must be added to the class-wide statutory damages at stake. Thus, even if only the number of persons who the Motion estimates purchased subscriptions "directly" from Defendant during the relevant time period were used to calculate the class-wide statutory damages in controversy, and even if the Court were to assume that only one disclosure of each such subscriber's information occurred during the relevant time period, the total aggregate amount in controversy – inclusive of both the class-wide statutory damages at stake and the estimated attorneys' fees and costs that Plaintiff's counsel would incur to prevail at trial – is nonetheless likely to exceed $5 million.

The Court has subject-matter jurisdiction, and the Motion should be denied.

## II.   LEGAL STANDARD

"The burden of satisfying the amount in controversy requirement is not particularly onerous." *Shelter Mut. Ins. Co. v. Spurlin*, 2021 WL 2142602, at *2 (E.D. Ky. May 26, 2021). "Generally, the plaintiff's claim in the pleading, if made in good faith, is the amount in controversy." *Marzolf*, 2024 WL 1332003, at *1. "If a claim of the required jurisdictional amount is apparently made in good faith, that

5

claim controls unless it appears 'to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Jones v. Knox Expl. Corp.*, 2 F.3d 181, 182 (6th Cir. 1993) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). "The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction." *Kovacs v. Chesley*, 406 F.3d 393, 395 (6th Cir. 2005) (citation omitted). Furthermore, "[i]n the amount in controversy context, 'most courts have found a legal certainty that more than the jurisdictional amount could not be recovered only where the applicable state law barred the *type of damages* sought by the plaintiff.'" *Id*. at 396 (emphasis in *Kovacs*) (citation omitted).

## III.   ARGUMENT

### A.   The Allegations of the FAC Adequately Establish that CAFA's Amount-In-Controversy Threshold is Satisfied

Defendant argues that the FAC "only makes a conclusory and information and belief allegation that her case is properly brought under . . . CAFA." (Mot. at 3, PageID.1995.) The argument is without merit. The FAC adequately alleges facts establishing that the amount in controversy in the aggregate exceeds $5 million.

The FAC defines the putative class as "all Michigan residents who, at any point during the relevant pre-July 31, 2016 period, had their Private Reading Information disclosed to third parties by NYMH." FAC ¶ 49. The FAC alleges that

6

"members of the Class number in the thousands." FAC ¶ 50. And the statute entitles each member of the class to $5,000 per violation. PPPA § 5(a).

Thus, assuming there are only 2,000 class members (the minimum number that could be described as "thousands"), and assuming just one violation suffered by each, the amount in controversy is $10 million in the aggregate, adequately conferring subject-matter jurisdiction pursuant to CAFA. *See supra*, *e.g.*, *Marzolf*, 2024 WL 1332003, at *1 ("Generally, the plaintiff's claim in the pleading, if made in good faith, is the amount in controversy."); *see also, e.g.*, *Gottsleben*, 2023 WL 4397226, at *2 ("Gottsleben alleges that the potential class has 'thousands' of members, each of which would be entitled to at least $5,000 in statutory damages. With more than a thousand class members entitled to $5,000 each, the amount in controversy exceeds $5,000,000. Therefore, the Court is satisfied that it has subject matter jurisdiction over this case.").

## B.    Defendant Fails to Show "to a Legal Certainty" That the Amount in Controversy Does Not Exceed $5 Million

Because the FAC adequately establishes the Court's subject-matter jurisdiction pursuant to CAFA, Defendant must show "to a legal certainty" that the amount recoverable does not meet the jurisdictional threshold. *Spurlin*, 2021 WL 2142602, at *2 ("[D]ismissal based on the amount in controversy is improper unless it appears to a legal certainty that the plaintiff's claim does not meet the jurisdictional threshold.") (citation omitted). "Put another way, for a case to be dismissed based

on amount-in-controversy grounds, it must "appear that the plaintiff's assertion of the amount in controversy was made in bad faith." *Id*. (citation omitted).

The evidence submitted by Defendant in support of the Motion fails to show "to a legal certainty" that the amount in controversy is not met in this case, or that Plaintiff has acted in bad faith in any way. Quite the opposite, in fact. Based on Defendant's estimate of 3,468 for the number of persons who had active subscriptions to *New York* magazine during the class period (*see* Vest Decl. ¶ 5, PageID.2013) – all of whom the FAC alleges had their information disclosed to third parties during the class period and are thus members of the class defined in the FAC (*see* FAC ¶ 49 (class definition) & FAC ¶¶ 41, 46-49, 65, 71 (alleging disclosures of entire database of subscribers' information during class period)) – simple math confirms that the amount in controversy is satisfied: 3,468 x $5,000 equals $17,340,000, well above the $5 million threshold. Thus, the materials accompanying the Motion corroborate Plaintiff's allegations in the FAC, both in terms of the number of class members and the aggregate amount in controversy, and the Court need go no further in the analysis to deny the Motion.[2]

---

[2]    As discussed further below, Plaintiff has alleged that the information of former subscribers may still be part of Defendant's database of subscribers, and Defendant's own numbers demonstrate that, including former subscribers, there may be a minimum of 4,603 subscribers. *See* Vest Decl., ECF No. 37-2, PageID.2014.

Citing to an unpublished, non-binding decision in *Coulter-Owens v. Time Inc.,* 695 F. App'x 117 (6th Cir. 2017), Defendant argues that the Court should compute the amount of class-wide statutory damages in controversy by including only active Michigan subscribers who purchased a subscription by paying money *directly* to Defendant (and excluding Michigan subscribers who purchased a subscription by paying money to a subscription agent). (Mot. at 11-13, PageID.2003-05.) This argument fails for several reasons.

As a threshold matter, the class definition in the FAC includes all subscribers, without distinguishing between "direct" or "indirect" subscribers – and it is that definition (not Defendant's preferred definition) that controls for purposes of assessing whether the aggregate amount in controversy exceeds CAFA's $5 million threshold. *See, e.g.*, *Black v. Crowe, Paradis, & Albren, LLC*, 2014 WL 3965043, at *2 (E.D. Ky. Aug. 13, 2014) (citing *Kovacs*, 406 F.3d at 396 (6th Cir. 2005)) ("The central problem with [Defendant]'s position is that it impermissibly relies on an affirmative defense that constricts the class size beyond what is alleged in the [FAC]" and this attempt "to reduce the size of the alleged class falls outside the scope of the Court's jurisdictional inquiry. Whereas a court considering a summary judgment motion could examine defenses" – but "a court considering a dismissal for failure to meet the amount in controversy requirement cannot. . . .The class definition does not restrict the class to only those who were [certain types of] clients" and, as such,

9

"[t]he Court will not look past the plaintiff's own description of the class—relying on the *potential* application of a [defense]—in order to assess whether the amount in controversy has been met.") (quotations omitted).

Nor could the presence of any so-called "indirect" purchasers in the proposed class definition have any bearing on the Court's subject-matter jurisdiction. In *Coulter-Owens*, the Sixth Circuit affirmed the district court's dismissal of the plaintiff's claim on the merits because she did not pay the defendant directly for her subscription. *Coulter-Owens*, 695 F. App'x at 124 ("The district court was correct that the PPPA does not govern this sale."). But importantly, the Sixth Circuit previously found, in the same opinion, that the plaintiff had Article III standing and the court had subject-matter jurisdiction, even though the claim ultimately failed on the merits. *See Coulter-Owens*, 695 F. App'x at 121 (finding that disclosure of private information is a cognizable injury in fact for purposes of Article III standing). Thus, whether an "indirect" purchaser (as that term is used in *Coulter-Owens*) has a claim under the statute is a merit question that has no bearing on the Court's subject-matter jurisdiction. *See, e.g.*, *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 391 (6th Cir. 2016) (citation omitted) ("The question whether Plaintiffs have a cause of action is a merits issue that is analytically distinct from the question whether a federal court has subject-matter jurisdiction."); *see also Kovacs*, 406 F.3d at 397 (6th Cir. 2005) ("where as in this case state law at least arguably permits the type of

damages claimed, the amount in controversy requirement will be satisfied even if it is unlikely that the plaintiff can recover an amount exceeding the jurisdictional requirement").

Even if this Court adopted the reasoning of *Coulter-Owens* – and it should not – and even if the direct vs. indirect question were jurisdictional – and it is not – *Coulter-Owens*'s conclusion that indirect purchasers lacked actionable claims under the statute turned on case-specific facts concerning the unique relationship between the defendant in that case and its subscription agents and subscriber plaintiffs, including the fact that the plaintiff and all other subscribers in that case paid money to third parties (not to the defendant) for their subscriptions. *Coulter-Owens*, 695 F. App'x at 123-24 (discussing fact-specific nature of the class there). In this case, the declaration submitted by Defendant in support of the Motion fails to demonstrate that the same factual circumstances (concerning the relationships between Defendant and its subscription agents and between Defendant and the Plaintiff and class members) existed here, including that the persons Defendant refers to as "indirect" subscribers paid money to third parties for their subscriptions (rather than, possibly, those persons being referred by third parties to the Defendant and then paying money for their subscriptions directly to the Defendant, in which case *Coulter-Owens* would be inapposite). Simply put: the Court should decline Defendant's invitation to decide the merits of the underlying claim for relief in the

11

context of answering the threshold question of whether CAFA's amount in controversy requirement is satisfied for purposes of determining whether it has jurisdiction. There is simply no basis to exclude persons from the proposed class who Defendant says bought subscriptions "indirectly" (whatever that may ultimately be found to mean) in determining whether the aggregate amount in controversy in this case exceeds CAFA's $5 million threshold.

Moreover, even if the Court somehow finds that the "indirect" subscribers Defendant refers to in the Motion paid money for their subscriptions to third parties rather than to Defendant (and there are no facts establishing this in the record), and then on that basis only considers the remaining "direct" subscribers, CAFA's amount-in-controversy requirement is still satisfied in light of the FAC's allegations and attached data card establishing that Defendant disclosed "expired" subscribers as well as "active" subscribers during the relevant time period, and disclosed each subscriber's information multiple times during the class period. Specifically, Defendant estimates that there were at least 663 direct purchasers who were either active or expired during the relevant time period. (Vest Decl. ¶ 9, PageID.2014.)[3] All such subscribers fall within the class definition because the data card reflected in paragraph 2 of the FAC reflects that Defendant's disclosures of subscription-

---

[3]     Again, this paragraph concedes that that total class members, including "expired" subscribers, would provide a total of 4,603 class members.

purchase information was not limited to records of active subscribers' purchases, but also included expired subscribers' purchase records as well. *See* FAC ¶ 2 & Ex. A to FAC. And the FAC also alleges that Defendant disclosed its entire database of all of its subscribers' purchase records to **numerous third parties** during the relevant time period. *See, e.g.*, FAC ¶¶ 5, 6, 9, 48, 49, 63. Multiple disclosures would entitle each of the subscribers whose information was disclosed (including the "active" "direct" purchaser subscribers) to multiple $5,000 statutory damage awards. *See Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 670 (E.D. Mich. 2022) (noting that "original version of the PPPA contain[s] a "$5,000-per-**incident** statutory damages provision") (emphasis added); *Coulter-Owens*, 695 F. App'x at 119 (same). Thus, at just two disclosures for each of the 663 direct purchasers who were either active or expired during the relevant time period, the result would be at least 1,326 total disclosures, worth a total of $6,630,000 in statutory damages under the statute. Accordingly, even if only the number of "direct" subscribers who Defendant estimates were either active or expired during the class period is considered, the amount of class-wide statutory damages in controversy in this case still exceeds the jurisdictional minimum.

Finally, even if the Court were to (i) only consider "direct" subscribers who were "active" during the class period in calculating the class-wide statutory damages at stake, (ii) accept at face value Defendant's estimate of the number of such

13

subscribers during the class period (248) (*see* Vest Decl. ¶ 4, PageID.2012), (iii) and assume only one disclosure of each "direct" subscriber's subscription purchase records, Plaintiff still gets over the $5 million threshold when her counsel's estimated attorneys' fees and expenses are added to the total class-wide statutory damages at stake. In determining whether CAFA's jurisdictional requirements are satisfied, courts "can also consider [a plaintiff's] request for attorney's fees in determining the amount in controversy." *Affordable Constr. Servs., Inc. v. Auto-Owners Ins. Co.*, 2020 WL 1955267, at *3 (W.D. Tenn. Apr. 23, 2020). Indeed, "[w]here a state statute provides for award of statutory damages and recovery of attorney's fees," – as is the case here with respect to the PPPA, *see* PPPA § 5(b) – "such damages and fees can be considered in determining whether the jurisdictional amount has been met." *White v. Loomis Armored US, Inc.*, 729 F. Supp. 2d 897, 903 (E.D. Mich. 2010). As set forth in the declaration of Philip L. Fraietta ("Fraietta Decl."), attached hereto as **Exhibit A**, Plaintiff's counsel conservatively estimate that they would expend approximately $3 to $5 million in attorneys' fees and at least $100,000 in costs to obtain a class-wide judgment against Defendant at trial, and millions more if the judgment were to be appealed before becoming final. *See* Fraietta Decl. ¶¶ 4-5. Thus, even if only the number of persons who Defendant estimates purchased subscriptions "directly" from it and were "active" subscribers during the relevant time period were used to calculate the class-wide statutory damages in controversy,

the total aggregate amount in controversy – inclusive of the class-wide statutory damages at stake and the estimated attorneys' fees and costs that Plaintiff's counsel would incur to prevail at trial – is still probably greater than $5 million. *See Kovacs*, 406 F.3d at 397 ("Absolute certainty is not required. It is sufficient if there is a probability that the value of the matter in controversy exceeds the jurisdictional amount."); *see also, e.g.*, *Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 784–85 (E.D. Ky. 2008) (concluding that "the Court has jurisdiction to hear the action" because "it seems that when you combine the underlying damages and costs of [litigation]," the amount in controversy "very well could" meet the jurisdictional minimum).[4]

No matter how you slice it, the amount in controversy in the aggregate most likely exceeds $5 million. The Court has subject-matter jurisdiction, and the Motion should be denied.

## IV.    CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated: April 26, 2024                      Respectfully submitted,

                                          By: */s/ E. Powell Miller*
                                          E. Powell Miller (P39487)

---

[4]    The Motion asks the Court to dismiss the case with prejudice. Mot. at 1, PageID.1987. Any dismissal of this case for lack of subject-matter jurisdiction, however, must be without prejudice. *See Hawthorne-Burdine v. Oakland Univ.*, 158 F. Supp. 3d 586, 596 (E.D. Mich. 2016), *aff'd*, 2016 WL 11854487 (6th Cir. Nov. 3, 2016).

**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248.841.2200
epm@millerlawpc.com

Frank S. Hedin
Arun G. Ravindran
**HEDIN LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
fhedin@hedinllp.com
aravindran@hedinllp.com

Joseph I. Marchese (P85862)
Philip L. Fraietta (P85228)
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: 646.837.7150
jmarchese@bursor.com
pfraietta@bursor.com

*Counsel for Plaintiff and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 26, 2024, I electronically filed the foregoing document(s) using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

/s/ E. Powell Miller
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com